UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CLINIQUE LA PRAIRIE, S.A.,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　: Civil Action No.: 104903/07
　　　　　　　　　Plaintiff,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　: **DECLARATION OF**
　　　-against-　　　　　　　　　　　　　　　　: **LYNNE FLORIO**
　　　　　　　　　　　　　　　　　　　　　　　　:
THE RITZ-CARLTON HOTEL COMPANY, LLC,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendant.　　　　　　　　　　:
------------------------------------------------------------------X

STATE OF NEW YORK

COUNTY OF NEW YORK

　　　Lynne Florio, declares as follows, pursuant to 28 U.S.C § 1746:

　　　1.　　I am the President of proposed intervenor La Prairie, Inc. ("La Prairie"); I have been employed in this capacity since 1993. From 1989 to 1993, I was General Manager of International Operations for La Prairie. I make this declaration in support of La Prairie's motion for an order allowing La Prairie to intervene in this action as a defendant, and staying this action and all proceedings herein pending final determination of arbitration in Switzerland between plaintiff Clinique La Prairie, S.A. ("CLP") and La Prairie.

　　　2.　　For many years, CLP has owned and operated a medical health clinic at Montreux, Switzerland.

　　　3.　　In 1982, CLP sold substantially all of its La Prairie business, including the name "La Prairie," to La Prairie pursuant to an Asset Acquisition Agreement and related agreements, dated December 3, 1982.

　　　4.　　Under the 1982 Agreement, CLP reserved for itself the right to use the mark "Clinique La Prairie" in connection with its medical and health clinics, and food stuffs, dietary foods, and food supplements. La Prairie purchased the right to use the name "La Prairie" for

beauty and cosmetic products and services. Thereafter, CLP continued operating its health clinics in Switzerland, while La Prairie developed, produced, marketed, and distributed La Prairie beauty products, and operated and licensed cosmetic and beauty spas.

5. La Prairie's products are currently sold at high-end department stores and specialty shops, duty-free outlets, cruise ships, hotels and spas, around the world. Such products are manufactured solely by La Prairie.

6. Despite the limited rights reserved to CLP under the 1982 agreement, CLP complained that La Prairie had exceeded its rights with respect to the "La Prairie" name. In 1995, following a decade of disagreement, the parties negotiated and executed a settlement agreement to clarify their respective rights and resolve their differences concerning, among other things, their respective rights to use the La Prairie mark (the "1995 Agreement"). (A translation of this agreement from the original German is attached hereto as Exhibit A.) Under paragraph 7 of the 1995 Agreement, the provisions of the 1982 agreements dealing with the continuing rights of the parties are annulled, their respective rights having been redefined in the 1995 Agreement.

7. Paragraph 10.2 of the 1995 Agreement requires that any dispute under the 1995 Agreement must be resolved by arbitration in Zurich, Switzerland. It provides, as follows:

> "Any controversy arising from this agreement on which the parties are unable to come to an amicable solution shall be settled by arbitration in accordance with the Zurich code of civil procedure. The number of arbitrators shall be three and the seat of the arbitration shall be Zurich."

8. The 1995 Agreement did not end the parties' differences. Soon after it was executed, CLP began seeking to expand its "Clinique La Prairie" brand into the United States in violation of the 1995 Agreement.

9. Thus, even though La Prairie has a trademark registration for "beauty salon services" in the United States (U.S. Trademark Registration No. 1,665,540), in 1997, CLP

attempted to register the mark "Clinique La Prairie" with the U.S. Patent and Trademark Office ("PTO") for beauty spa services in the United States. La Prairie submitted a letter of protest to CLP's application. Esteé Lauder, which owns the beauty line "Clinique," opposed it. CLP abandoned its application.

10.     In 2005, CLP again attempted to register the "Clinique La Prairie Montreux" mark for beauty spa services in the United States. The PTO rejected the application, finding that CLP's proposed mark was too similar to Clinique's mark, and La Prairie's mark "La Prairie."

11.     Simultaneously with its attempts to expand its own brand in the United States, CLP sought to quash La Prairie's tremendous growth around the world. On November 21, 2005, CLP sent a cease and desist letter to La Prairie complaining about the use of the "La Prairie" name at, among other places, the spa at the Ritz-Carlton Hotel, Central Park South, New York, New York. CLP recognized that the spa at the Ritz-Carlton Hotel had been licensed by La Prairie. It stated that the 1995 Agreement, which "explains clearly the rights and obligations of each party[,]" governs whether La Prairie has the contractual right to maintain or license beauty spas in New York and around the world. (A translation of this letter from the original German is attached as Exhibit B).

12.     On December 7, 2005, La Prairie responded by letter, stating that CLP's complaints were baseless and contravened by the plain terms of the 1995 Agreement. (A translation of this letter from the original German is attached as Exhibit C).

13.     On April 11, 2007, CLP filed the present lawsuit in New York State Supreme Court, New York County, only against La Prairie's licensee, Ritz-Carlton. Although CLP clearly recognized that its basic dispute was with La Prairie and that the 1995 Agreement would govern the legality of La Prairie's license to Ritz-Carlton as well as Ritz-Carlton's right to use

17565367\V-4

the name La Prairie, it did not name La Prairie as a party, and it ignored the arbitration clause in the 1995 Agreement.

14. It is vital that La Prairie be permitted to intervene in this action because its rights will be directly and substantially affected by the outcome. The basic question for the Court to adjudicate is the scope of CLP's and La Prairie's rights under the 1995 Agreement, matters about which Ritz-Carlton has little knowledge. The resolution of this basic issue will determine the propriety of La Prairie's license to Ritz-Carlton as well as La Prairie's operations around the world. Such issues cannot be resolved in the absence of La Prairie, which should therefore be permitted to intervene as a defendant.

15. Moreover, the basic question herein of the rights of CLP and La Prairie, the parties to the 1995 Agreement, must be determined by arbitration in Zurich, Switzerland, in accordance with paragraph 10.2 of that Agreement. Accordingly, the Court should stay this action and all proceedings herein pending the final outcome of that arbitration.

16. On May 25, 2007, CLP initiated an arbitration in Switzerland against La Prairie. The arbitration was commenced by CLP's writing to La Prairie and naming its designated arbitrator, which, I am informed, constitutes an initiation of arbitration under Swiss law.

17. It is the intention of La Prairie to vigorously contest this arbitration, to ask the arbitrators to determine all matters between CLP and La Prairie, and to definitively declare the rights of the parties under the 1995 Agreement.

18. Accordingly, it is respectfully requested that the Court allow La Prairie to intervene as a defendant herein, and that the Court stay this action and all proceedings herein pending a final determination of the arbitration in Zurich, Switzerland, between CLP and La Prairie.

19. I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York, on June 26, 2007

_____
Lynne Florio

17565367\V-4

# EXHIBIT A

# Agreement

between

Laboratoires La Prairie S.A., 1815 Clarens, [Switzerland],
La Prairie Inc., 10019 New York, NY, [USA]
hereinafter jointly referred to as "LP"

and

Armin Mattli, c/o Clinique La Prairie, 1815 Clarens, [Switzerland]
acting on his own behalf and on behalf of the companies owned by him, in particular
Clinique La Prairie S.A., CH-1815 Clarens, [Switzerland]
CT Holding, CH-2000 Neuchâtel, [Switzerland]
hereinafter referred to as "AM"

## RECITAL

Armin Mattli is the majority shareholder of Clinique La Prairie SA and of CT Holding. Clinique La Prairie SA operates Clinique La Prairie in Montreux. Laboratoires La Prairie SA and La Prairie Inc. are active in the field of manufacturing and distributing cosmetic products under the trademark "La Prairie." La Prairie Inc. purchased this business unit from Armin Mattli in the year 1982. This agreement shall regulate the further cooperation of the parties.

**1. Subject of the agreement**

In particular, this agreement shall regulate the mutual rights of the parties to the following trademarks:

a. "La Prairie" product trademark for cosmetic and related products (current list of LP trademark registrations in **Annex A**);

b. "La Prairie" product trademark for food, dietary products, and food supplements (current list of AM trademark registrations in **Annex B**);

c. "Clinique La Prairie" service trademark for operating medical and health clinics (current list of AM trademark registrations in **Annex C**);

d. "CLP" service trademark for medical and health clinics (current list of AM trademark registrations in **Annex D**);

e. "CLP" product trademark for cosmetic and related products (current list of LP trademark registrations in **Annex E**);

    f.  device mark of the old Clinique La Prairie in the following versions:

 



    for cosmetic and related products (current list of LP trademark registrations in **Annex F**);

    g.  "LP Cosmétique " product trademark for cosmetic and related products (current list of LP trademark registrations in **Annex G**).

## 2. <u>LP trademarks</u>

AM acknowledges LP's ownership in the product trademark "La Prairie" for cosmetic and related products according to Annex A; in the device mark of the old clinic for cosmetic and related products according to Annex F; and in the product trademark LP Cosmétique for cosmetic and related products according to Annex G. LP undertakes the obligation not to use the trademark LP Cosmétique according to Annex G without AM's consent.

## 3. <u>AM trademarks</u>

3.1  LP acknowledges AM's ownership in the product trademark "La Prairie" for food-stuffs, dietary foods, and food supplements in accordance with Annex B as well as of the service trademark "Clinique La Prairie" and "CLP" for the operation of medical and health clinics according to Annexes C and D . AM shall delete "application, administration, and distribution of medical-cosmetic preparations" from the service list of the trademark "CLP".

3.2  LP undertakes the obligation to transfer the "CLP" product trademark for cosmetic and related products according to Annex E to AM. AM undertakes the obligation not to use this trademark for cosmetic products.

## 4. <u>Mutual rights</u>

4.1  Both parties shall make every effort, both individually as well as jointly, to defend and increase the prestige and the value of the La Prairie brand in every way and not to jeopardize it by any means.

4.2 AM confirms LP's perpetual, worldwide, and exclusive right

- to refer to the name of Clinique La Prairie in advertising for cosmetic products sold under the name of La Prairie;

- to point to the fact that living-.cell therapy was developed at the Clinique La Prairie;

- to state that La Prairie products for cosmetic purposes are being used at the Clinique La Prairie; and

- to state that the experience with living-cell therapy at Clinique La Prairie leads to specific know-how for the extraction of cells.

4.3 LP's rights pursuant to para 4.2 apply on condition that

- the information is lawful and corresponds to fact,
-
- the information does not impair the renown of the Clinique La Prairie as a place of therapy and research;
-
- the information does not establish any connection between the clinic La Prairie and beauty products (products of decorative cosmetics such as lipsticks, make-up, eye shadows etc.) nor perfume. In general leaflets where beauty products are not in the foreground, reference to the Clinique La Prairie is admissible.

4.4 Insofar as according to a national or international list of goods and services ownership to one of the trademarks covered by this Agreement both parties happened to be entitled to the trademark, the trademark holder shall grant to the other party an unlimited, worldwide, and exclusive license free of license fee for the area appertaining to the other party.

## 5. Additional obligations

5.1 LP undertakes the obligation to supply to Clinique La Prairie, at the latter's request, La Prairie cosmetic products to be sold to clients of the clinics (but not for further retailing), at the same prices Laboratoires La Prairie S.A. grants its Dutch distributor.

5.2 AM will use La Prairie cosmetic products within the living-cell therapy offered at Clinique La Prairie. LP will supply the products in quantities as in the past.

5.3 LP shall inform AM of any intended assignment of the "La Prairie" trademark to third parties (be it a direct transfer or a transfer of the controlling interest in the registered trademark holder) beforehand.

5.4 AM undertakes the obligation not to change the name of Clinique La Prairie. In case of discontinuing the operation of the Clinique La Prairie, the name and the goodwill of Clinique La Prairie shall be assigned to LP without compensation.

5.5 AM undertakes the obligation to use the trademark "La Prairie" or any similar or derivated trademark only insofar as he holds the rights thereto in accordance with the present agreement (in particular item 3), and in any case only in a manner that shall not diminish the value of the trademark "La Prairie" for LP or of the quality of La Prairie products. Consequently, AM shall not use the trademark "La Prairie" for any products other than food, dietary food or food supplements, nor for other services except the operation of health clinics and shall not oppose the registration nor the use of the trademark La Prairie by LP.

AM's obligations pursuant to the above paragraph shall also apply with regard to any indirect use in the context of the distribution of any cosmetics other than those of LP. Specifically, as the holder of the rights to the name of Dr. Paul Niehans, AM covenants to prevent the use of the latter's name in the marketing of other cosmetics if the activity of Dr. Paul Niehans at Clinique La Prairie were to be mentioned.

5.6 The provisions of this agreement shall not restrict the rights of the parties to sell other products or services, or to be involved in such sales, in any way, provided any direct or indirect reference to "La Prairie" that would be in contradiction to this agreement, or any designation that might be confounded with it, is excluded.

5.7 AM confirms LP's right of first refusal for the shares of Clinique La Prairie S.A., to be exercised on the terms offered by a third party within 60 days after communication of a third party offer.

## 6. Duration

6.1 This agreement is concluded for an indefinite period of time. It may be terminated upon 10 years' notice, but at the earliest with effect at 31 December 2015.

6.2 Termination of this agreement does not affect the parties' rights of ownership to the trademarks acknowledged herein. In case of termination, the parties shall come to an understanding regarding the distribution of ownership rights in the trademarks which belong to both parties according to this agreement, taking into account the circumstances of that time.

6.3 The obligations pursuant to Art. 4.2 and 5.5 shall remain in force even after a possible termination of this agreement.

## 7. Previous agreements

Insofar as they are still in effect, the following agreements shall be annulled by mutual consent:

a. Supply Agreement of 03 December 1982 between Armin Mattli and Laboratoires La Prairie S.A.,

b. Cooperation Agreement of 03 December 1982 between Clinique La Prairie S.A., Armin Mattli, and Aviatrix Corporation,

c.  Trademark agreement of 03 December 1982 between Nichols N.V. and Aviatrix Corporation, and
d.  Guarantee of 03 December 1982 between Armin Mattli and Aviatrix Corporation

## 8. Solidarity and area of application

8.1  Laboratoires La Prairie S.A. and La Prairie Inc. shall be jointly and severally liable for all commitments hereunder.

8.2  Armin Mattli and the corporations listed on page 1 shall be jointly and severally liable for all commitments hereunder.

8.3  This agreement shall be applicable worldwide.

8.4  The rights appertaining to LP under the present agreement may also be asserted by an affiliated company as long as it is controlled by the same entity as LP. This agreement shall also be binding on AM's and LP's successors in title.

## 9. Applicable law

This agreement is governed by Swiss law.

## 10. Litigation

10.1  In case of disagreement, the parties hereto shall try to establish an amicable solution before initiating any legal proceedings. Before initiating any proceedings, the other party shall be notified in writing, indicating an adequate deadline for participating in a meeting or for remedying any complaints.

10.2  Any controversy arising from this agreement on which the parties are unable to come to an amicable solution shall be settled by arbitration in accordance with the Zurich code of civil procedure. The number of arbitrators shall be three and the seat of the arbitration shall be Zurich.

Date: June 2, 1995

Laboratoires La Prairie S.A.              Armin Mattli

(signed by)                                (signed by)
as authorized attorney                     as authorized attorney

La Prairie Inc.

(signed by)
as authorized attorney

# EXHIBIT B

From: +41 44947 83 61        Page: 2/4        Date: 23.11.2005 16:17:24



November 21, 2005

Mr. Thomas-B. Quaas
Executive Board Chairman
Beiersdorf AG
Unnastraße 48
D-20245 Hamburg
Germany

Mr. Dirk Trappmann
CEO Juvena and La Prairie Internacional AG
Industriestrasse 8
CH-8604 Volketswil
Zurich

Mrs. Maike Kiessling
Prof. Steinkraus Research
Laboratories AG
Industriestrasse 8
Ch-8604 Volketswil
Zurich

Dear Messrs. & Madam:

I refer to our contract signed between Armin Mattli, c/o Clinique La Prairie and Laboratoires La Prairie, S.A.

This contract was signed on June 2, 1995 and is binding until 2015. The contract explains clearly the rights and obligations of each party. The rights of AM (Armin Mattli) are clearly marked as he is the only one allowed for the operation of medical and health clinics.

According to the Webster dictionary, the meaning of the word SPA is "a health and fitness establishment" and Laboratoires La Prairie S.A. have registered Spa's in New York, Los Angeles, Cayman Islands and other parts of the world. Because of it, Laboratoires La Prairie S.A. has breached the contract.

Laboratoires La Prairie has utilized the picture of Clinique La Prairie without the authorization of Armin Mattli. Laboratoires La Prairie S.A. has the right to use the name of Clinique La Prairie for the sale of cosmetic products but never for the advertising for Spa treatments.

1

CLINIQUE LA PRAIRIE
MEDICAL & REVITALIZATION CENTER
CH-1815 Clarens-Montreux/Suisse
Tél. 021 989 33 11 · Fax 021 989 33 33
Internet www.laprairie.ch

From: +41 44947 83 61    Page: 3/4    Date: 23.11.2005 16:17:24



You are breaking our agreement in many instances. You displayed the photo of Clinique La Prairie at the reception desk of the Spa's (Picture #1) in New York and in The Cayman Islands.

You also show the photo of Clinique La Prairie at your Spa in Greece (pictures #2 – 6).

In our agreement, you were obliged to use only text which corresponds to the truth. You make intentionally false statements: "The Company which has been in the forefront of the anti-ageing revolution for half of a century". Laboratoires La Prairie has not existed for half of a century (picture #7).

At the Ritz Carlton in New York, you have at the reception desk, the picture of Clinique La Prairie misleading the clients (picture #8).

In the advertisement for the New York Spa, you mention once more the name of Clinique La Prairie (picture # 9).

At the Beverly Hills hotel, you employ the expression "Spa by La Prairie" (picture # 10).

In your Spa in New York, you state that you are associated with Clinique La Prairie (picture # 11).

You also advertise "Spa & Resort/Medical Spa" with the name of La Prairie Spa at the Ritz Carlton Hotel (picture # 12).

In your treatment center in Bangkok, you misuse the photo of Clinique La Prairie to promote different treatments by some Thai girls. (Brochure/picture # 13).

In the Spa's, brochures are handed out that advertise the name and picture of Clinique La Prairie.

You are damaging the reputation of Clinique La Prairie and our international name by given out brochures with lipstick and makeup, which is against our agreement.

Before I take legal action, I would like to propose a peaceful settlement between our parties. You have until December 8th of 2005 to decide if you accept the terms of this passive agreement. The terms are as follows:

1. You send me a statement agreeing that you will not open any other La Prairie Spa in any part of the world.
2. You discontinue using Clinique La Prairie photos and references in the existing Spa's.
3. You stop giving out brochures in your Spa's with our photo and/or name.
4. You stop distributing brochures with color cosmetics of lipstick and makeup.

Should you agree to avoid legal action against your company, please let me know your decision by December 8th, 2005.

2

If you decide not to agree with the above-mentioned steps, I will proceed legally against your company with damages for USD 50MM and you will have to close all of the Spa's that have the name of La Prairie.

Sincerely,

Armin Mattli
Owner & CEO
Clinique La Prairie

3

# EXHIBIT C

By Registered Mail and Telefax

Mr. Armin Mattli
42207 Fisher Island Drive
Miami, FL 33109
USA

Volketswil, December 7, 2005

Dear Mr. Mattli

We refer to your letter of November 21, 2005 which contains the very serious allegation that the presence and the activities of "La Prairie" in spas in different countries around the world constitutes a violation of the agreement signed by Laboratoires La Prairie S.A. and La Prairie Inc. (hereinafter both collectively called "LP") on the one side and yourself, acting also for Clinique La Prairie S.A. and CT Holding (hereinafter collectively called "AM") on the other side, signed on June 2, 1995 (hereinafter called "the Agreement").

With due respect, for the following reasons we do not share your views at all:

1.  Your opening statement that you (AM), based on the Agreement are *"the only one allowed for the operation of medical and health clinics"* is clearly incorrect. In fact the Agreement neither directly nor indirectly contains any such provision.

2.  The Agreement only makes reference to the operation of medical and health clinics (*"Betrieb von medzinischen und Gesundheitskliniken"*) in connection with the listing of the service mark *"Clinique La Prairie"* registered by AM (see Section 1 c of the Agreement) and in Section 3.1 of the Agreement wherein it is stated that LP recognizes the right of AM to operate medical and health clinics under the trademark "Clinique La Prairie". No other statement in the Agreement makes any reference to the operation of medical and health clinics.

    Section 5.6 of the Agreement furthermore states that the Agreement is not intended to limit in any way the rights of the parties to sell products, provide services or to participate in such activities related thereto as long as such activity does not directly or indirectly make a reference to "La Prairie" or to a similar denomination in a way contrary to the Agreement. (*"Die Bestimmungen dieser Vereinbarung sollen die Rechte der Parteien, andere Produkte oder Dienstleistungen zu verkaufen oder daran mitzuwirken, in keiner Weise einschränken, solange eine im Widerspruch mit dieser Vereinbarung stehende direkte oder indirekte Bezugnahme auf „La Prairie" oder damit verwechselbare Bezeichnungen ausgeschlossen ist."*)

    One could therefore even conclude that the Agreement would allow LP to run such an operation itself provided, of course, that no other clause of the Agreement would be violated.

3.  No clause of the Agreement limits in any way LP's right to be present and active in spas.

4.  It is not correct to equate the expression *"health clinic"* (*"Gesundheits-klinik"*) used in the Agreement with the expression *"spa"*, as you suggest in your letter, and thereby to conclude that the sections mentioned under point 2 above also cover spas.

-2-

5. The concept of spa as understood and applied by LP is clearly limited to cosmetic applications. This concept is furthermore focused on the top luxury cosmetic level and does not imply any medical application or treatment. We therefore do not understand why the activities of LP in spas could violate the Agreement.

6. In your letter you also mention and claim that LP has used a picture of *"Clinique La Prairie without the authorization of Armin Mattli"*. The examples documented in your letter, however, are mainly the stylised "picture" of the *"Clinique La Praire"* included in the picture mark. This picture mark, according to Section 1 f of the Agreement undoubtedly belongs to LP, and under Section 2 of the Agreement AM specifically recognizes LP's right to use it for cosmetic and related products.

7. Section 4.2 of the Agreement furthermore stipulates the unlimited worldwide and exclusive right of LP to make reference to the *"Clinique La Prairie"* when advertising cosmetic products. The references mentioned in your letter are clearly references of such nature since they are in essence reference to the sale and application of the La Prairie cosmetic products in the spas you mention.

8. It is true, that the above-mentioned right stipulated in Section 4.2 is only granted under the conditions mentioned in Section 4.3 of the Agreement. These conditions are, however, fulfilled in connection with the references mentioned in your letter:

   a. None of the references you mentioned in your letter are in any way illegal (nicht *"rechtmässig"*) or are in any way not consistent with the facts (nicht *"den Tatsachen entsprechend"*) (see Section 4.3, first subparagraph of the Agreement).

   In particular, in your letter you object to the reference made to the Clinique La Prairie that is documented in picture 11 attached to your letter. We do not see how this reference could be illegal or contrary to the facts.

   b. None of the references mentioned in your letter can in any way reasonably be considered to damage the reputation of the Clinique La Prairie as a medical and research Center, as mentioned in Section 4.3, second subparagraph of the Agreement (*"Voraussetzung, dass die Hinweise das Renommé der Clinique La Prairie als Heil- und Forschungsstätte nicht beeinträchtigen"*).

   You maintain in your letter that LP does *"misuse the photo of Clinique La Prairie to promote different treatments by some Thai girls"*. We flatly disagree with and take offence with the inappropriate and indecent insinuation contained in this accusation.

   c. None of the references mentioned in your letter demonstrate a connection between Clinique La Prairie and the Beauty Products, which under Section 4.3, last subparagraph of the Agreement, would not be allowed. To the contrary, the different pictures attached to your letter showing the content of a La Prairie brochure are undoubtedly an example of a "collective brochure" (*"Sammelprospekt"*), which is specifically allowed under Section 4.3, last subparagraph of the Agreement.

9. In conclusion, we contest the content of your letter and strongly object to your accusation that the examples stated in your letter *"are damaging the reputation of the Clinique La Prairie"* or are *"misleading the clients"*, or are in any other way contrary to the Agreement.

-3-

10. Under these circumstances there is no need for a settlement agreement. Your proposed terms of a *"passive agreement"* are clearly unacceptable for us and it is not something we are willing to discuss further.

11. Please note that should you decide to escalate the dispute and start legal action against LP, as indicated in your letter, LP will vigorously defend and pursue its rights under the Agreement.

12. Your letter once again prompted us to investigate whether AM has been acting in line with the Agreement. This in particular, since we had already at several times noted earlier instances of behaviour by AM, which clearly violated the Agreement. We have now detected that AM is in violation of Section 5.5, first and second subparagraphs of the Agreement, when it distributes and promotes the cosmetic line "Swiss Perfection" with the clear and open reference to the Clinique La Prairie, as for example documented in the enclosed picture of a center where "Swiss Perfection" products are displayed, applied and sold. AM also makes such references to the Clinique La Prairie in connection with AM's activities in the "residensea"-operation.

We hereby reserve all our rights to defend LP's interest against such activities as far as they constitute a violation of the Agreement.

We look forward to discussing matters of mutual interest in the near future and would be very happy to meet with you personally as it was done in the past.

Sincerely yours,

Laboratoires La Prairie S.A

_____        _____
Dirk Trappmann                     Maike Kiessling
CEO                                Director

Enclosures: mentioned