UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CLINIQUE LA PRAIRIE, S.A.,                          :
                                                    :    Civil Action No.:  07 Civ 4038
                         Plaintiff,                 :
                                                    :
     -against-                                      :
                                                    :
THE RITZ-CARLTON HOTEL COMPANY, LLC,                :
                                                    :
                         Defendant.                 :
------------------------------------------------------------------X

## LA PRAIRIE, INC.'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO INTERVENE AND TO STAY

SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 768-6700

## TABLE OF CONTENTS

THE FACTS ........................................................................................................................... 1

ARGUMENT ......................................................................................................................... 5

I.    LA PRAIRIE IS ENTITLED TO INTERVENE AS OF RIGHT ..................................... 5

    A.   Fed. R. Civ. P. 24(a) Permits Intervention As Of Right In These Circumstances .......... 5

       (1)   La Prairie's Motion to Intervene Is Timely ............................................................ 5

       (2)   La Prairie Has A Direct and Substantial Interest In the Subject Matter of This Action That Would Be Impaired By Any Adverse Judgment ................................ 5

       (3)   No Other Party Can Adequately Represent La Prairie in this Litigation ................ 9

II.   LA PRAIRIE IS ENTITLED TO PERMISSIVE INTERVENTION ................................ 9

III.   THIS ACTION SHOULD BE STAYED PENDING ARBITRATION ........................... 10

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Assoc. of Contracting Plumbers of City of New York, Inc. v. Local Union No. 2 United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Indus. of U.S. and Canada*, 841 F.2d 461 (2d Cir. 1988) .............................................. 5

*Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) ........................................ 5, 6

*CBS Inc. v. Snyder*, 136 F.R.D. 364 .................................................................................. 6

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ............................................... 10

*Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir. 1942) .......... 11

*LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256 (2d Cir. 1982) .................... 9

*McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233 (S.D.N.Y. 1989) ................... 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ........... 10

*Perry v. Thomas*, 482 U.S. 483 (1987) ............................................................................ 10

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238 (2d Cir. 2006) ..... 9, 10

*Stinnes Interoil, Inc. v. Intercarbon Bermuda Ltd.*, No. 87 Civ. 1371 (JFK), 1989 WL 11409 (S.D.N.Y. Feb. 8, 1989) .............................................................................. 6

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ......................................................... 10, 11

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ....................................... 9

## FEDERAL STATUTES

9 U.S.C. § 2 ....................................................................................................................... 10

9 U.S.C. § 3 ................................................................................................................. 10, 11

Proposed Intervenor La Prairie, Inc. (f/k/a Aviatrix Corporation) ("La Prairie") submits this memorandum of law in support of its motion: (1) pursuant to Rule 24, Fed. R. of Civ. P., granting it the right to intervene in this action as a defendant; and (2) staying the action and all proceedings herein pending final resolution of arbitration in Zurich, Switzerland, between plaintiff Clinique La Prairie, S.A. ("CLP") and La Prairie.

For more than two decades, CLP and La Prairie have disputed their respective rights to use the name "La Prairie." A 1995 Agreement that contains an arbitration clause, attempted to resolve these issues. It governs these rights.

In the present lawsuit, CLP claims that the Ritz-Carlton Hotel has no right to use the name in connection with its spa at its New York hotel. Despite its knowledge that Ritz-Carlton is operating under a license from La Prairie, CLP filed this action only against Ritz-Carlton, ignoring the arbitration required under the 1995 Agreement.

La Prairie should be permitted to intervene in this action because its rights will be deeply affected by the outcome. After allowing intervention, this Court should stay the action until the conclusion of the arbitration in Zurich, Switzerland, which CLP has commenced against La Prairie. That arbitration will determine the underlying rights of the parties.

## THE FACTS[*]

For many years, CLP has owned and operated a medical health clinic at Montreux, Switzerland.

In 1982, CLP sold substantially all of its La Prairie business, including the name "La Prairie," to La Prairie pursuant to an Asset Acquisition Agreement and related agreements, dated December 3, 1982 ("1982 Agreement").

---

[*] The facts are taken from the declaration of Lynne Florio, president of La Prairie, executed June 26, 2007, and from exhibits annexed to it ("Florio Declaration").

Under the 1982 Agreement, CLP reserved for itself the right to use the mark "Clinique La Prairie" in connection with its medical and health clinics, food stuffs, dietary foods, and food supplements. La Prairie purchased the right to use the name "La Prairie" for beauty and cosmetic products and services. Thereafter, CLP continued operating its health clinics in Switzerland, while La Prairie developed, produced, marketed, and distributed La Prairie beauty products, and operated and licensed cosmetic and beauty spas.

La Prairie's products are currently sold at high-end department stores and specialty shops, duty-free outlets, cruise ships, hotels and spas around the world. Such products are manufactured solely by La Prairie.

Despite the limited rights reserved to CLP under the 1982 Agreement, CLP complained that La Prairie had exceeded its rights with respect to the "La Prairie" name. In 1995, following a decade of disagreement, the parties negotiated and executed a settlement agreement to clarify their respective rights and resolve their differences concerning, among other things, their respective rights to use the La Prairie mark (the "1995 Agreement"). (A translation of this agreement from the original German is attached to the Florio Declaration as Exhibit A.) Under paragraph 7 of the 1995 Agreement, the provisions of the 1982 Agreement dealing with the continuing rights of the parties are annulled, their respective rights having been redefined in the 1995 Agreement.

Paragraph 10.2 of the 1995 Agreement requires that any dispute under the 1995 Agreement must be resolved by arbitration in Zurich, Switzerland. It provides, as follows:

> Any controversy arising from this agreement on which the parties are unable to come to an amicable solution shall be settled by arbitration in accordance with the Zurich code of civil procedure. The number of arbitrators shall be three and the seat of the arbitration shall be Zurich.

The 1995 Agreement did not end the parties' differences. Soon after it was executed, CLP began seeking to expand its "Clinique La Prairie" brand into the United States in violation of the 1995 Agreement.

Thus, even though La Prairie has a trademark registration for "beauty salon services" in the United States (U.S. Trademark Registration No. 1,665,540), in 1997, CLP attempted to register the mark "Clinique La Prairie" with the U.S. Patent and Trademark Office ("PTO") for beauty spa services in the United States. La Prairie submitted a letter of protest to CLP's application. Esteé Lauder, which owns the beauty line "Clinique," opposed it. CLP abandoned its application.

In 2005, CLP again attempted to register the "Clinique La Prairie Montreux" mark for beauty spa services in the United States. The PTO rejected the application, finding that CLP's proposed mark was too similar to Clinique's mark, and La Prairie's mark "La Prairie."

Simultaneously with its attempts to expand its own brand in the United States, CLP sought to quash La Prairie's tremendous growth around the world. On November 21, 2005, CLP sent a cease and desist letter to La Prairie complaining about the use of the "La Prairie" name at, among other places, the spa at the Ritz-Carlton Hotel, Central Park South, New York, New York. CLP recognized that the spa at the Ritz-Carlton Hotel had been licensed by La Prairie. It stated that the 1995 Agreement, which "explains clearly the rights and obligations of each party[,]" governs whether La Prairie has the contractual right to maintain or license beauty spas in New York and around the world. (A translation of this letter from the original German is attached to the Florio Declaration as Exhibit B).

3

On December 7, 2005, La Prairie responded by letter, stating that CLP's complaints were baseless and contravened by the plain terms of the 1995 Agreement. (A translation of this letter from the original German is attached to the Florio Declaration as Exhibit C)

On April 11, 2007, CLP filed the present lawsuit in New York State Supreme Court, New York County, only against La Prairie's licensee, Ritz-Carlton. Although CLP clearly recognized that its basic dispute was with La Prairie and that the 1995 Agreement would govern the legality of La Prairie's license to Ritz-Carlton as well as Ritz-Carlton's right to use the name La Prairie, it did not name La Prairie as a party, and it ignored the arbitration clause in the 1995 Agreement.

It is vital that La Prairie be permitted to intervene in this action because its rights will be directly and substantially affected by the outcome. The basic question for the Court to adjudicate is the scope of CLP's and La Prairie's rights under the 1995 Agreement, matters about which Ritz-Carlton has little knowledge. The resolution of this basic issue will determine the propriety of La Prairie's license to Ritz-Carlton as well as La Prairie's operations around the world. Such issues cannot be resolved in the absence of La Prairie, which should therefore be permitted to intervene as a defendant.

Moreover, this basic dispute between the parties to the 1995 Agreement must be determined by arbitration in Zurich, Switzerland, in accordance with paragraph 10.2 of that Agreement. Accordingly, the Court should stay this action and all proceedings herein pending the final outcome of that arbitration.

On May 25, 2007, CLP initiated an arbitration in Switzerland against La Prairie. The arbitration was commenced by CLP's writing to La Prairie and naming its designated arbitrator.

It is the intention of La Prairie to vigorously contest this arbitration, to ask the arbitrators to determine all matters between CLP and La Prairie, and to definitively declare the rights of the parties under the 1995 Agreement.

## ARGUMENT

I. **LA PRAIRIE IS ENTITLED TO INTERVENE AS OF RIGHT**

    A. **Fed. R. Civ. P. 24(a) Permits Intervention As Of Right In These Circumstances**

To intervene as of right, a movant must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001). "Once the right to intervene is established, the intervenor's status is equivalent to that of a party." *Assoc. of Contracting Plumbers of City of New York, Inc. v. Local Union No. 2 United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Indus. of U.S. and Canada*, 841 F.2d 461, 467 (2d Cir. 1988).

    (1) <u>La Prairie's Motion to Intervene Is Timely</u>

There can be no doubt that La Prairie's application to intervene is timely; it is made at the outset of this case. Given that intervention is sought at the earliest stage of this litigation, La Prairie's intervention will cause little undue delay, hardship, or prejudice to the adjudication of CLP's claims.

    (2) <u>La Prairie Has A Direct and Substantial Interest In the Subject Matter of This Action That Would Be Impaired By Any Adverse Judgment</u>

The second and third elements for intervention as of right can often be established together; if the intervenor has a substantial interest in this action, that interest may be impaired by an adverse adjudication. *See Brennan*, 260 F.3d at 132 (finding that, since a direct and

substantial interest was found, the third element was likewise satisfied.). Clearly, La Prairie's interest is "direct, substantial, and legally protectable" *id.* at 128-29, requiring intervention as of right. In order for CLP to prevail, it must establish that La Prairie's license to Ritz-Carlton conveyed rights that La Prairie did not have under the 1995 Agreement. If such a finding were made, it would very seriously impair La Prairie's worldwide rights in the La Prairie name and probably make it liable to Ritz-Carlton and others.

Moreover, such a determination by this Court would vitiate La Prairie's right to have its differences with CLP under the 1995 Agreement determined in arbitration. A court may permit a party to intervene as of right in order to protect its substantial interest in enforcing an arbitration agreement. *See CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991); *Stinnes Interoil, Inc. v. Intercarbon Bermuda Ltd.*, No. 87 Civ. 1371 (JFK), 1989 WL 11409, at *1 (S.D.N.Y. Feb. 8, 1989) (granting motion to intervene as of right, and then granting intevenor's motion to compel arbitration). In *CBS* the labor union that represented a terminated television sportscaster sought to intervene as of right in a lawsuit and arbitration between the terminated sportscaster and his former television network. The union moved to intervene to compel the arbitration panel (and not the court) to decide the issue of whether the sportscaster's claims were time-barred under its collective bargaining agreement. *Id.* at 365. The court reasoned that the union had a direct and substantial interest in the instant litigation because the parties sought to construe the arbitration provision of its collective bargaining agreement, and any adverse decision would have consequences for the union and its other members. *Id.* at 368.

In this case, La Prairie plainly has a direct, actual, and substantial interest in the subject of this litigation. As in *CBS,* La Prairie has a substantial interest in enforcing the terms of the

6

1995 Agreement, which directly governs this dispute, and which contains a broad and unambiguous arbitration provision.

The underlying dispute in this case concerns the meaning of the 1995 Agreement between CLP and La Prairie, and whether La Prairie had the right to license its "La Prairie" name to a third party; Ritz-Carlton is merely an ancillary party. It is La Prairie who will suffer the real brunt of any adverse decision. If the court were to find that La Prairie had no right to license its "La Prairie" name to Ritz-Carlton, such an adverse construction of the 1995 Agreement would undermine La Prairie's ability to license, endorse or maintain La Prairie spas anywhere in the world. Indeed, it could possibly jeopardize La Prairie's preexisting U.S. trademarks and its right to use the name "La Prairie" in association with any beauty salon service.

CLP has effectively already dragged La Prairie into this litigation by its frequent reference to, and allegations against, La Prairie throughout its Complaint:

- CLP identifies La Prairie as a relevant party in the Complaint. (Compl. ¶ 5).

- CLP alleges that La Prairie acquired ownership in La Prairie products and intellectual property, including the "La Prairie" trademark, pursuant to a series of asset acquisition agreements in 1982. (*Id.* ¶ 20).

- CLP alleges that La Prairie "licensed, agreed to, assigned or endorsed the use of the name 'La Prairie,' for the operation of the spa at Ritz Carlton." (*Id.* ¶ 24).

- CLP alleges that La Prairie's cosmetics are sold at Ritz-Carlton, and that these La Prairie products are impermissibly using the term "cellular" cosmetics treatments. (*Id.* ¶ 35).

- CLP makes allegations concerning La Prairie's product line; such as: "La Prairie is now manufacturing cosmetics without any cellular extract derived from sheep cells. La Prairie's 'cellular' products do not contain the ingredients historically associated with Clinique La Prairie's famous anti-aging Cellular Therapy and spa services." (*Id.* ¶ 33).

7

- CLP compares its products with La Prairie's products, stating that while CLP uses "true state-of-the-art cellular extract deriving from sheep cells," the La Prairie products sold at Ritz Carlton are "knock-off[s.]" (*Id.* ¶ 51).

Tellingly, CLP alleges that, at the center of this dispute is the fact that the marks "La Prairie" and "Clinique La Prairie" are confusingly similar, such that consumers are unaware that the two are distinct and unrelated entities.

> The confusion stems from the fact that the names "La Prairie" and "Clinique La Prairie" are so similar that it cannot be seriously disputed that the use of the name "La Prairie" for health and fitness services, such as spa and cellular treatment services, is likely to cause confusion, or to cause mistake or to deceive by creating the erroneous impression that the spa and cellular treatment services under the name of "La Prairie" originate with Clinique La Prairie, or that the services are authorized, sanctioned, franchised, licensed or endorsed by Clinique La Prairie.

(*Id.* ¶ 37). CLP then goes on to disparage La Prairie's product line: "The confusion is highlighted by complaints about rashes from consumers of the La Prairie products. Consumers have sent such complaints to Clinique La Prairie[.]" (*Id.* ¶ 39). By these allegations, CLP -- undermining the PTO's denial of its trademark application for use of the "Clinique La Prairie" mark for beauty salon services -- seeks an adjudication that beauty spa services are exclusively reserved for it under the 1995 Agreement. Indeed, in contravention of the PTO's findings, CLP alleges in the first paragraph of the Complaint that its service mark "has achieved the requisite fame in the United States to merit legal recognition." (*Id.* ¶ 1).

Finally, CLP argues that its would be prejudiced if La Prairie were permitted to intervene because it would be "essentially precluded from taking any action" against La Prairie's licensee, Ritz Carlton. (G. Mahfood Ltr. to the Court at 1, June 8, 2007). Not so. La Prairie is seeking to intervene and to stay this litigation so that the threshold issue, whether La Prairie had a right under the 1995 Agreement to open and to license beauty spas, can be adjudicated in the proper

forum. If this threshold issue is found in La Prairie's favor, then CLP's claims against Ritz-Carlton are moot. If this issue is found in CLP's favor, then following the conclusion of arbitration, CLP may pursue whatever claims it may have against Ritz-Carlton before this Court.

Accordingly, La Prairie has a direct and substantial interest in this lawsuit, which will certainly be impaired by an adverse disposition. CLP will not be unduly prejudiced if La Prairie intervenes. Accordingly, La Prairie should be permitted to intervene pursuant to Fed. R. Civ. P. § 24(a).

      (3)    <u>No Other Party Can Adequately Represent La Prairie in this Litigation</u>

The final element for intervention as of right, that no other party can represent La Prairie's interest, is a "minimal burden" that is easily satisfied here. *See LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). CLP argued to the Court that Ritz Carlton could adequately protect La Prairie's substantial interests in this litigation. (Hrg. Tr. at 9, 6/20/07). Not so. While Ritz-Carlton's and La Prairie's interests may be aligned, Ritz-Carlton has no knowledge concerning the negotiation, meaning and intent of the 1995 Agreement, and the effect of an adverse result in this litigation it will be much less pronounced than it would be upon La Prairie.

For the foregoing reasons, La Prairie is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a).

## II.    LA PRAIRIE IS ENTITLED TO PERMISSIVE INTERVENTION

Alternatively, La Prairie should be granted permission to intervene pursuant to Fed. R. Civ. P. 24(b), which provides for permissible intervention "[u]pon timely application … (2) when an applicant's claim or defense and the main action have a question of law and fact in common." "[T]he court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ.

P. 24(b)(2)," specifically the intevenor's interest in the underlying litigation, and whether those interest can be adequately represented by other parties in the action. *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). The requirements under Rule 24(b)(2) should be liberally construed. *See id.* (*citing Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006)); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

### III. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

Pursuant to Section 3, Federal Arbitration Act, 9 U.S.C. § 3, if La Prairie is permitted to intervene, this case, and all proceedings herein, should be stayed pending final resolution of arbitration in Zurich, Switzerland, between CLP and La Prairie, as required by Section 10.2 of the 1995 Agreement, which provides:

> Any controversy arising from this agreement on which the parties are unable to come to an amicable solution shall be settled by arbitration in accordance with the Zurich code of civil procedure. The number of arbitrators shall be three and the seat of the arbitration shall be Zurich.

The FAA, which governs all contracts involving interstate commerce, requires enforcement of this provision Section 2 provides:

> A written provision ...a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Given this strong policy in favor of arbitration, courts must "rigorously enforce" written arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985); *see also Southland Corp. v. Keating*, 465 U.S. 1,

10 (1984) (by enacting Section 2 of the FAA, "Congress has thus mandated the enforcement of arbitration agreements.").

In aid of arbitration, Section 3 of the FAA provides that a stay of judicial proceedings is mandatory where there is "any issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3 (emphasis added). In such instances, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 988 (2d Cir. 1942).

In this case, a stay should be granted because the 1995 Agreement is clear, and CLP unequivocally agreed to arbitrate any claims arising thereunder.

Moreover, all of CLP's causes of action against La Prairie's licensee, Ritz-Carlton, are governed by the 1995 Agreement, and are thus issues referable to arbitration. The arbitration clause encompasses any controversy concerning CLP and La Prairie's respective rights. The central issue here, whether and to what extent La Prairie may license the "La Prairie" name to Ritz-Carlton, falls squarely within the ambit of this agreement. CLP's three causes of action are predicated on the claim that the La Prairie Spa impermissibly advertises in its brochure and internet website that its products originated at the Clinique La Prairie in Switzerland, and uses a picture of the historical building of Clinique La Prairie. (*See* Compl. ¶¶ 26, 28). CLP alleged that, by these advertisements, Ritz-Carlton "wrongfully relies on the name, valuable good-will and international reputation of Clinique La Prairie" and that the "Ritz Carlton has built no reputation for massage and cellular treatment services under the name 'La Prairie.'" (*Id.* ¶¶ 27, 29).

11

All of these contested advertisements, however, are clearly provided for and permissible under the 1995 Agreement. Under this agreement, La Prairie had the right to state in its advertisements "that living-cell therapy was developed at the Clinique La Prairie . . . [and] to state that the experience with living-cell therapy at Clinique La Prairie leads to specific know-how for the extraction of cells." (1995 Agreement § 4.2). La Prairie also had the "right to refer to the name of Clinique La Prairie in advertising for cosmetic products sold under the name of La Prairie." (*Id.* § 4.2). Indeed, the La Prairie device mark includes the image of the CLP clinic in Switzerland. (*Id.* § 1(f)).

## CONCLUSION

La Prairie respectfully requests the Court to (1) grant its motion to intervene as a defendant in this action; and (2) stay the instant action pending arbitration.

Dated: New York, New York
       June 27, 2007

SONNENSCHEIN NATH & ROSENTHAL LLP

By: /s/ Martin R. Gold
    Martin R. Gold
    Monica Pa
    1221 Avenue of the Americas
    New York, New York 10020-1089
    (212) 768-6700

*Attorneys for La Prairie, Inc.*

12