UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CLINIQUE LA PRAIRIE, S.A.,                  :
                                            :
                        Plaintiff,          :
                                            :    Case No. 07 CV 4038-PAC
            v.                              :
                                            :
THE RITZ-CARLTON HOTEL COMPANY, LLC, :
                                            :
                        Defendant.          :

------------------------------------------------------------X

**PLAINTIFF CLINIQUE LA PRAIRIE, S.A.'S MEMORANDUM OF LAW
IN OPPOSITION TO LA PRAIRIE, INC.'S MOTION
TO INTERVENE AND TO STAY**

FERRELL LAW, P.A.
598 Madison Avenue
Second Floor
New York, New York 10022
(212)-813-9500

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 4

1.  La Prairie's Failure to Submit a Proposed Pleading that it Would Adopt as a Party
    to this Proceeding Contravenes Fed. R. Civ. P. 24(c) and Warrants the Denial of
    the Motion to Intervene. ........................................................................................... 4

2.  La Prairie Does Not Meet Rule 24(a)(2)'s Requirements for Intervention as of
    Right or for Permissive Intervention. ....................................................................... 7

    a.  The Ritz Carlton is an Adequate Representative of the Interests of La Prairie
        and Disposition of this Action Without La Prairie's Participation Will not
        Impair or Impede La Prairie's Ability to Protect its Interests......................... 8

    b.  Permissive Intervention Should Also Be Denied Because Of the Undue
        Prejudice and Delay That Will be Caused. ................................................... 10

CONCLUSION.................................................................................................................. 13

CERTIFICATE OF SERVICE ........................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Abramson v. Pennwood Inv. Corp.*,
   392 F.2d 759 (2d Cir. 1968)..................................................................................4

*AT & T Corp. v. Sprint Corp.*,
   407 F. 3d 560 (2nd Cir. 2005)..............................................................................10

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001)..................................................................................9

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*,
   42 F.R.D. 406 (S.D.N.Y. 1967) ............................................................................9

*CBS, Inc. v. Snyder*,
   136 F.R.D.364 (S.D.N.Y. 1991) ...........................................................................6

*Erdman Technologies Corp. v. US Sprint Communications Co.*,
   1997 WL 401669 (S.D.N.Y. July 16, 1997) .........................................................6

*G-I Holdings, Inc. v. Baron & Budd*
   2002 WL 1822929 (S.D.N.Y. Aug. 7, 2002) ........................................................6

*In re: Bank of New York Derivative Litigation*,
   320 F.3d 291 (2d Cir. 2003).................................................................................10

*Kamerman v. Steinberg*,
   681 F. Supp. 206, 211 (S.D.N.Y. 1988)................................................................5

*Lexington Ins. Co. v. Caleco, Inc.*,
   2003 WL 21652163, E.D. Pa. (Jan. 25, 2003) .....................................................6

*Mastercard International Inc. v. Visa International Assoc., Inc.*,
   471 F.3d 377 (2d Cir. 2006)..................................................................................8

*Natural Resources Defense Council, Inc. v. New York State Dept. of Env. Conserv.*,
   834 F.2d 60 (2d Cir. 1987)..................................................................................10

*New York News, Inc. v. Newspaper and Mail Deliverers' Union of New York*,
   139 F.R.D. 291 (S.D.N.Y. 1991) ..........................................................................6

*Providence Baptist Church v. Hillandale Committee, Ltd.*,
   425 F.3d 309 (6th Cir. 2005) ..............................................................................4

*Rosgoscirc v. Circus Show Corp.*,
   1993 WL 277333 (S.D.N.Y. July 16, 1993) .........................................................5

*Stinnes Interoil, Inc. v. Intercarbon Bermuda Ltd.*,
    1989 WL 11409 (S.D.N.Y. Feb. 8, 1989)..................................................................6

*U.S. Postal Service v. Brennan*,
    579 F.2d 188 (2d Cir. 1978)......................................................................................8

*Washington Elec. Coop., Inc. v. Massachusetts Municipal Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)........................................................................................8

## STATUTES, RULES, AND OTHER AUTHORITIES

Fed. R. Civ. P. 7(a) .......................................................................................... passim

Fed. R. Civ. P. 24............................................................................................. passim

Plaintiff Clinique La Prairie, S.A. ("Clinique La Prairie") hereby files its memorandum of law in opposition to proposed Intervener, La Prairie, Inc.'s, Motion to Intervene and to Stay, and states as follows:

## INTRODUCTION

Is it not curious that La Prairie, Inc. ("La Prairie") has not submitted to the Court its licensing agreement with defendant The Ritz Carlton Hotel Company, LLC ("The Ritz Carlton") in order to establish the necessity for its participation in this litigation?

Is it not curious that The Ritz Carlton Hotel has not moved to dismiss this action for plaintiff's failure to join its licensor, La Prairie, as a necessary and indispensable party?

La Prairie, having persuaded the Court to temporarily stay discovery pending the disposition of La Prairie's motion to intervene, coyly seeks to avoid discussing the scope of the Ritz Carlton's authority to defend its use of the trademark in question (which one would expect to be set out in its licensing agreement with The Ritz Carlton). The Ritz Carlton, for its part, has candidly admitted that it has a licensing agreement with La Prairie, and has not offered any defense or argument that it is not fully empowered to defend and capable of defending its interests (and those of La Prairie) in this action.

La Prairie has submitted the Declaration of its President, Lynne Florio in support of its motion to intervene. Ms. Florio admits that there is a licensing agreement between The Ritz Carlton and La Prairie. Florio Decl. ¶13. Ms. Florio does not, however, describe the interest and power conveyed by La Prairie to The Ritz Carlton in the licensing agreement for The Ritz Carlton to defend the scope of its allegedly licensed rights to the trade name "La Prairie". In the absence of any evidence that The Ritz Carlton is not fully empowered to defend its rights under

the licensing agreement to use the name La Prairie, La Prairie has not demonstrated that its interest in this litigation is not adequately protected by The Ritz Carlton.

Ms. Florio's declaration consists primarily of a recitation of La Prairie's view of its history with Clinique La Prairie and the various agreements that control the relationship between La Prairie and Clinique La Prairie.  Ms. Florio claims that La Prairie "purchased the right to use the name "La Prairie" for beauty and cosmetic products *and services*."  Florio Decl. ¶4, (emphasis supplied).  Yet, the only support she offers for the right to use the trade name "La Prairie" "for services" is the 1995 Agreement between Clinique La Prairie and La Prairie.  Florio Decl. ¶6, and Exhibit A.

It is clear from the 1995 Agreement, however, that La Prairie's trademark rights  to "La Prairie" are defined by paragraph 2 of that Agreement, and are limited to "cosmetics and related products."  The 1995 Agreement does not provide La Prairie with the right to use the trade name "La Prairie" for spa services.  Rather, the 1995 Agreement, paragraph 3.1, grants Clinique La Prairie the sole right to use the name "Clinique La Prairie" and the mark "CLP" in connection with "the operation of medical and health clinics;" and Paragraph 5.5 gives Clinique La Prairie the right to use the service mark "La Prairie" for "the operation of health clinics."  Additionally, assuming La Prairie has a valid service mark registered in the United States in 1991[1] for "beauty salon services" under the name "La Prairie," La Prairie is obligated to give Clinique La Prairie, as a service provider, an exclusive worldwide license to use the name "La Prairie" in connection

---

[1]    See Answer and Affirmative Defenses of The Ritz Carlton, Seventh Affirmative Defense, in which the Ritz Carlton asserts that its license agreement for Federal Trademark Registration No. 1,665,540 provides conclusive evidence of its right to use the La Prairie mark in commerce. That referenced Trademark was registered on November 19, 1991, and was issued for "beauty salon services."

with the operation of "beauty salons," and may not license that service mark to third parties such as The Ritz Carlton.  *See* 1995 Agreement ¶4.4.

Most importantly, nothing claimed by The Ritz Carlton or La Prairie gives either of them the right to use the name "La Prairie" in connection with providing health spa services.  Clinique La Prairie has been providing health spa services for decades, and owns U.S. Trademark No. 1,379,697, issued in 1986 for the purpose of "arranging medical and clinical treatment outside the country."

Perhaps seeking to avoid the scrutiny of a comparison of the scope of rights afforded it by the 1995 Agreement with the scope of rights it conveyed to The Ritz Carlton in the licensing agreement, La Prairie and Ms. Florio neglect to offer the Court any details of that licensing agreement.  More pointedly, La Prairie has clearly failed to offer any evidence that The Ritz Carton lacks sufficient interest to litigate its right to use the mark "La Prairie" in this proceeding. The fair conclusion to draw from La Prairie's failures is that it has indeed fully conveyed the right to defend the use of the mark "La Prairie" to The Ritz Carlton for purposes of the litigation before this Court.

The existence of an arbitration proceeding between Clinique La Prairie and La Prairie in Switzerland should have no bearing on the Court's consideration of the merits of La Prairie's motion to intervene.  The Ritz Carlton is not a party to that arbitration proceeding, cannot be forced to participate in that proceeding, has not agreed to participate in the arbitration, and will not agree to be bound by the outcome of the arbitration.  Irrespective of the outcome of the arbitration proceeding, Clinique La Prairie has statutory and common law claims against The Ritz Carlton that are not dependent on the outcome of the arbitration, namely that The Ritz

Carlton is interfering with its service mark "Clinique La Prairie" and its registered service mark "Clinic La Prairie" by operating a spa under the name "La Prairie" in New York.

La Prairie's sole interest in seeking to intervene is to delay this action to the detriment of Clinique La Prairie, while The Ritz Carlton remains free to continue to dilute and impair Clinique La Prairie's right to the trade mark "La Prairie" for health spa services. For the reasons set forth below, La Prairie's motion to intervene and to stay this action should be denied.

ARGUMENT

1. **La Prairie's Failure to Submit a Proposed Pleading that it Would Adopt as a Party to this Proceeding Contravenes Fed. R. Civ. P. 24(c) and Warrants the Denial of the Motion to Intervene.**

Rule 24(c) of the Federal Rules of Civil Procedure requires that a motion to intervene be "accompanied by a pleading setting forth the claim or defense for which intervention is sought." La Prairie seeks a stay of this proceeding. It has not filed a "pleading" setting forth the claim or defense it wishes to assert in this proceeding in order to protect whatever interests it may have. A motion to stay is not a pleading. *See* Rule 7(a) F.R.Civ. P.

The Court of Appeals for the Second Circuit has adopted a strict approach to the requirements for intervention set forth in Rule 24(c). *See Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005), citing, *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968). In *Abramson*, the Second Circuit affirmed the district court's denial of a motion to intervene where the moving party failed to file a pleading along with his motion. The Second Circuit noted that the failure to file a pleading was not "merely a technical lack of compliance with the rules," and that denial of the motion was justified. *Id*. at 761.

Rule 24 contemplates that a party seeking intervention to protect its interests in the litigation, as described in Rules 24(a) or 24(b), will join the action as a plaintiff or a defendant, and will assert its claims or defenses accordingly. If intervention is granted, the intervenor is to be treated as an original party to the action. *Kamerman v. Steinberg*, 681 F. Supp. 206, 211 (S.D.N.Y. 1988). Where a proposed intervenor seeks only to stay the pending action, as in *Kamerman*, the intervention is not sought to protect the intervenor's interest in the pending litigation, but is "in reality an application for some special status permitting them to press their motion for a stay." *Id.* Such a motion to intervene is defective and should be denied. *Id.*

The Judges of the Southern District of New York have generally adhered to the rule announced in *Kamerman*, and have strictly applied the Rule 24(c) procedural requirements for intervention as contemplated by *Abramson*. The case of *Rosgoscirc v. Circus Show Corp.*, 1993 WL 277333 (S.D.N.Y. July 16, 1993) has a number of striking similarities to the case at bar. In that case, Rosgoscirc, a Russian Federation entity, claimed rights to the trade name "MOSCOW CIRCUS," and sued Circus Show Corp. for trademark violations for use of the mark. Circus Show Corp. claimed to have been granted the right to use the name by Rosgoscirc's erstwhile partner, a company called Circus Productions, Inc. or "CPI." Rosgoscirc and CPI were arbitrating their respective rights to the name MOSCOW CIRCUS in an AAA proceeding in New York, and CPI sought to intervene in the suit against Circus Show Corp. to stay the suit pending the outcome of the arbitration proceeding. The Court denied the motion to intervene and stay pending arbitration because the moving party failed to comply with the requirements of Rule 24(c):

> CPI moves to intervene for the sole purpose of moving for a stay pending arbitration. Such a motion is not only unusual (if not unique), but in this instance is also procedurally improper. The procedure for making a motion to intervene is set forth in Fed. R. Civ. P. 24(c), which requires that the party seeking to

> intervene "shall serve a motion to intervene . . . accompanied by a pleading setting forth the claim or defense for which intervention is sought" upon the parties. There is no indication that CPI has served such papers; indeed, the scope of CPI's proposed intervention would imply that CPI does not at this time contemplate a claim or defense relating to this action. Accordingly, the motion to intervene is not properly before this Court.

*Id.* at *10. Other decisions of this Court underscore the need for compliance with Rule 24(c)'s requirements for a motion to intervene. *See G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1822929, *1 (S.D.N.Y. Aug. 7, 2002) (failure to file motion and a pleading sufficient to deny intervention); *Erdman Technologies Corp. v. US Sprint Communications Co.*, 1997 WL 401669, *2 (S.D.N.Y. July 16, 1997) (failure to file motion and a pleading sufficient to deny intervention); *New York News, Inc. v. Newspaper and Mail Deliverers' Union of New York*, 139 F.R.D. 291, 292-93 (S.D.N.Y. 1991) (Rule 24 does not allow "special status" intervenors for the purpose of filing a Rule 11 motion against an original party's counsel); *see also Lexington Ins. Co. v. Caleco, Inc.*, 2003 WL 21652163, *5-*7 (E.D. Pa. Jan. 25, 2003) (motion to intervene for purpose of asserting motion to stay proceedings denied for failure to comply with Rule 24(c)'s requirement to submit a pleading, and because Rule 24 does not allow "special status" intervenors).

La Prairie's reliance on *CBS, Inc. v. Snyder*, 136 F.R.D. 364 (S.D.N.Y. 1991) and *Stinnes Interoil, Inc. v. Intercarbon Bermuda Ltd.*, 1989 WL 11409 (S.D.N.Y. Feb. 8, 1989) is misplaced. Those cases involved statutory actions to avoid arbitration, *Snyder*, and to compel arbitration, *Stinnes*.[2] Accordingly, in *Snyder*, the motion by the Union to intervene proposed a motion to compel arbitration of the dispute. The motion to compel arbitration actually constituted the Union's pleading and the assertion of a defense to the merits of CBS's lawsuit to stay arbitration

---

[2] These statutory actions are commonly commenced by a motion, not by a complaint.

of the dispute.  Similarly, in *Stinnes*, the plaintiff filed suit under the U.S. Arbitration Act, 9

U.S.C. §§ 4 and 5 seeking to compel arbitration of two claims with the defendant.   The

defendant, Intercarbon Bermuda, argued that it was obligated to arbitrate one of the claims, but

not the second, because the second claim did not involve Intercarbon Bermuda, only its affiliate.

The affiliate, Intercarbon Limited, N.V., moved to intervene and moved to compel the plaintiff

Stinnes to arbitrate the second dispute with it, not Intercarbon Bermuda.  The intervenor actually

submitted its pleading on the merits, *i.e.*, a motion to compel arbitration with the correct party.  In

both *Snyder* and *Stinnes*, the merits of the actions involved the question of whether arbitration

was required and each proposed intervenor moved to compel arbitration.   Therefore, each

intervenor's motion constituted its "claim or defense" on the merits of each action.  *Snyder* and

*Stinnes* are thus clearly distinguishable, and indeed, inapplicable to the present case.

La Prairie seeks to be a "special status" intervenor for the sole purpose of moving to stay

this action.  It does not seek to assert a claim or a defense in this action, and has not offered the

required pleading.   La Prairie's motion to intervene for the purpose of seeking a stay of

proceedings pending the arbitration between it and plaintiff Clinique La Prairie should be denied

as this court has ruled in *Rosgoscirc,* and as the courts have ruled in *Kamerman* and *Caleco*

where stays were sought in favor of other pending litigation.

### 2.    La Prairie Does Not Meet Rule 24(a)(2)'s Requirements for Intervention as of Right or for Permissive Intervention.

A party seeking to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) must

establish four conditions: (1) the motion is timely; [3] (2) the moving party asserts an interest

relating to the property or the transaction that is the subject of the litigation; (3) the moving party

---

[3]    Plaintiff Clinique La Prairie does not contend that La Prairie's motion to intervene is untimely.

is so situated that without intervention, disposition of the action may as a practical matter, impair or impede the movant's ability to protect its interest; and (4) the moving party's interest is not adequately represented by the other parties.  *See Mastercard International Inc. v. Visa International Assoc., Inc*., 471 F.3d 377, 389 (2d Cir. 2006).

> **a.**    **The Ritz Carlton is an Adequate Representative of the Interests of La Prairie and Disposition of this Action Without La Prairie's Participation Will not Impair or Impede La Prairie's Ability to Protect its Interests.**

La Prairie argues that The Ritz Carlton is inadequate to represent its interests in this litigation because The Ritz Carlton does not have sufficient knowledge of the negotiations of the 1995 Agreement, and an adverse judgment would have less effect on The Ritz Carlton than on La Prairie.  *See* La Prairie's Memorandum at 9.  These arguments lack merit.

While the rule is that the burden of demonstrating inadequacy of representation is generally "minimal," the burden is more rigorous where the party seeking intervention and an existing party have the same ultimate objective.  *Washington Elec. Coop., Inc. v. Massachusetts Municipal Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990).  Where there is an identity of interests, the party seeking intervention must rebut the presumption of adequate representation by the party already in the action.  *U.S. Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).

It is clear from The Ritz Carlton's Answer and Affirmative Defenses, and from the moving papers of La Prairie, that there is a license agreement between them.  La Prairie has licensed to The Ritz Carlton the right to use the name "La Prairie" in connection with The Ritz Carlton's operation of a spa known as "La Prairie at the Ritz Carlton Spa."  *See* Answer and Affirmative Defenses, ¶24; Florio Decl. ¶13.  A trademark licensor and its licensee operating a business based on that mark have the same interest in preserving the integrity and enforceability

of the mark.  *See e.g. Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*, 42 F.R.D. 406, 407 (S.D.N.Y. 1967) (interests of licensor and licensee of trademark appear to be the same).

It is apparent that The Ritz Carlton has the same interest as La Prairie in establishing that La Prairie has the right to use the name La Prairie in connection with providing spa services in the United States.  It equally apparent that The Ritz Carlton has the same interest as La Prairie in defeating Clinique La Prairie's claim that The Ritz Carlton is infringing on Clinique La Prairie's exclusive right to use the name "La Prairie" in connection with providing spa services.  Indeed, La Prairie even concedes that its interest and those of The Ritz Carlton are "aligned."  *See* La Prairie's Memorandum at 9.

In *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001), the Second Circuit provided guidance as to what types of evidence could overcome the presumption of adequate representation.  The types of evidence cited by the *Butler* court include collusion, adversity of interest, nonfeasance, or incompetence.  *Id*. at 180.  La Prairie does not contend that there is collusion on the part of The Ritz Carlton and Clinique La Prairie, or that there is an adversity of interest between it and The Ritz Carlton.  The Ritz Carlton's lack of first hand knowledge of the negotiations for the 1995 Agreement,[4] is certainly not evidence of nonfeasance or of incompetence, particularly where La Prairie is fully willing to provide such evidence to The Ritz Carlton, and full discovery is available nonetheless.

In what appears to be an argument based on desperation, La Prairie argues that an adverse ruling in this case would have a "less pronounced" effect upon The Ritz Carlton than it would on La Prairie.  *Id*.  Again, this argument is without merit.  It is clear that an existing party's motivation to litigate need not be identical to that of the proposed intervenor.  "So long as

---

[4]        Clinique La Prairie assumes without conceding that evidence of negotiations is even relevant where a definitive agreement has been reached.

the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions," denial of intervention is appropriate on the basis that the interests of the intervenor are adequately represented. *Natural Resources Defense Council, Inc. v. New York State Dept. of Env. Conserv.*, 834 F.2d 60, 61-62 (2d Cir. 1987). The Ritz Carlton has certainly met this standard.

La Prairie has failed to carry its burden for establishment of intervention as of right, and its motion should be denied.

**b.    Permissive Intervention Should Also Be Denied Because Of the Undue Prejudice and Delay That Will be Caused.**

This Court should also deny permissive intervention. Courts consider sub-stantially the same factors for permissive intervention as for intervention as of right. *In re: Bank of New York Derivative Litigation*, 320 F.3d 291, 299-300, n. 5 (2d Cir. 2003). In addition, "[w]hen considering a request for permissive intervention, a district court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *AT & T Corp. v. Sprint Corp.*, 407 F. 3d 560, 561-62 (2nd Cir. 2005).

Clinique La Prairie initiated this action because the continuing use of the name "La Prairie" by The Ritz-Carlton for spa services is, as we write this, eroding and diminishing the renowned, distinctive, unique and effective service marks "Clinic La Prairie" and "Clinique La Prairie" for its health clinic providing spa services. Under New York statute, the remedy for this threat of irreparable harm is an injunction. Accordingly, to allow La Prairie to intervene in this case for the sole purpose of staying the action pending a foreign arbitration (without The Ritz-Carlton as a party) is to potentially allow the threat of irreparable harm to become a reality and irreversible.

La Prairie's conclusion that there would be no prejudice is based on its claim that the threshold issue is whether La Prairie had a right under the 1995 Agreement to operate and to license spas, an obvious service (and not a product), under the name "La Prairie." According to La Prairie, there would be no prejudice because if that issue were decided in favor of La Prairie, then this lawsuit would be moot; and if the issue were decided in favor of Clinique La Prairie, then, this lawsuit would continue. La Prairie's Memorandum at 8-9.

La Prairie's reasoning is faulty on two counts. First, if Clinique La Prairie prevails in the arbitration, it may be too late for it to have an effective adjudication and enforcement of its rights in this case. The Ritz Carlton will continue operating in New York City, and will have free reign to infringe Clinique La Prairie's commercial interests in the United States by allowing U.S. citizens and international visitors to believe that they are partaking in services provided by Clinique La Prairie based on its renowned Swiss Clinic's methods. Alternatively, the delay will allow The Ritz Carlton to promote its own interests in the U.S. while diluting Clinique La Prairie's internationally recognized and renowned spa services. It is to avoid this continuing evisceration of its rights that led Clinique La Prairie to initiate both this action against The Ritz-Carlton, a nonsignatory to the 1995 Agreement, and the arbitration proceeding against La Prairie, a signatory to the 1995 Agreement.[5]

The second problem is that, contrary to La Prairie's assertion, even if the so-called threshold issue in this case (whether the 1995 Agreement allowed La Prairie to license its name for the operation of a health spa) is decided in favor of La Prairie in the Swiss arbitration, the issues in this action would not be resolved. As alleged in the Complaint at ¶ 18, Clinique La

---

[5]    It is very telling that The Ritz-Carlton has not offered to arbitrate this action in Switzerland with Clinique La Prairie and La Prairie.

Prairie has a registered trademark in the United States for arranging medical and clinical treatment outside the country at its world-renowned facilities in Switzerland.[6]

Clinique La Prairie uses and has used its trademark in the United States for decades to solicit customers in the United States for its health clinic providing spa services in Switzerland. Clinique La Prairie has agents in the United States for this very purpose, and has a website, www.laprairie.ch, which attracts tens of thousands of visitors worldwide each month, including a significant number of U.S visitors. Clinique La Prairie's trademark[7] was registered in 1986, and obviously pre-dates the 1997[8] trademark claimed by La Prairie in its Memorandum at 3. Accordingly, the Complaint will be amended to raise additional claims, based on federal trademark law and New York statutory and common law, that are independent of the 1995 Agreement. Instead, the claims will be based on Clinique La Prairie's United States trademark, its continuous use, and Clinique La Prairie's commercial activities in the United States. Accordingly, allowing intervention simply to stay this action will unduly prejudice and delay Clinique La Prairie's right to protect its commercial interests in New York and the United States.

The undue prejudice and delay that would ensue from a stay of this action would be magnified if one accounts for the fact that La Prairie's so-called threshold issue is most likely to be determined in Clinique La Prairie's favor. The 1995 Agreement clarifies that Clinique La Prairie has the exclusive right to use the *service* mark "Clinique La Prairie" for medical clinics and health clinics (with the latter providing spa services). To avoid any confusion due to the

---

[6]    U.S. Trademark No. 1,379,697, issued January 21, 1986.

[7]    clinic la prairie

[8]    La Prairie's Trademark No. 1,665,540 was actually registered in 1991.

similarity of the trademark "La Prairie" and the service mark "Clinique La Prairie," La Prairie

agreed that Clinique La Prairie, and not La Prairie, would also have the right to use the

***trademark*** "La Prairie" for health clinics (and thus spa services).  *See* 1995 Agreement ¶ 5.5.

This is consistent with the fact that the 1995 Agreement was designed to settle, among other

things, the rights of the parties to the use of the "La Prairie" product trademark for cosmetic and

related ***products***, and the "Clinique La Prairie" ***service*** mark for operating medical and health

clinics (which historically included spa services). [9]

Accordingly, permissive intervention should be denied because the stay sought by La

Prairie will unduly delay and prejudice the adjudication of the rights of Clinique La Prairie.

## CONCLUSION

La Prairie has failed to satisfy the requirements of Fed.R.Civ.P. 24 for intervention as of

right and for permissive intervention.  Plaintiff, Clinique La Prairie respectfully requests that this

Honorable Court deny La Prairie's Motion to Intervene and to Stay.

---

[9]      In addition, under the 1995 Agreement, ¶4.4, Clinique La Prairie is entitled to an exclusive worldwide license of La Prairie's 1984 U.S. Registered Trademark No. 1,267,918 "Clinic La Prairie" with the image of Clinique La Prairie's historic clinic building:.



Respectfully submitted,

**FERRELL LAW, P.A.**


By:    s/ George G. Mahfood
       Milton M. Ferrell, Jr. (MF1826)
       George G. Mahfood (GM0578)

       598 Madison Avenue
       Second Floor
       New York, New York 10022
       Tel: 212-813-9500
       Fax: 212-813-1155
       gmahfood@ferrellworldwide.com

       *Attorneys for Clinique La Prairie, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that at true and correct copy of the foregoing was served by electronic mail on the following counsel for defendant: David Wynn, Arent Fox LLP, 1675 Broadway, New York, New York 10019, wynn.david@arentfox.com; and Barbara Wohl, Arent Fox LLP, 1050 Connecticut Avenue, N.W., Washington, D.C., 20036-5339, wahl.barbara@arentfox.com.

s/George G. Mahfood
George G. Mahfood (GM0578)