UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CLINIQUE LA PRAIRIE, S.A.,                :
                                          :   Civil Action No.:  07 Civ 4038
                   Plaintiff,             :
                                          :
     -against-                            :
                                          :
THE RITZ-CARLTON HOTEL COMPANY, LLC,      :
                                          :
                   Defendant.             :
------------------------------------------------------------------X

# LA PRAIRIE, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE AND TO STAY

SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 768-6700

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

    I.    La Prairie's Motion To Intervene Is Not Procedurally Defective ........................................ 2

    II.    CLP Concedes That Three Of The Four Factors Necessary For Intervention Are Satisfied .................................................................................................................................. 4

    III.    CLP's Argument That La Prairie's Licensee, The Ritz Carlton, Can Adequately Represent In Its Worldwide Interest Its Name "La Prairie" Is Without Merit ................... 5

    IV.    CLP's Argument That La Prairie's Intervention Would Cause Undue Delay and Prejudice Is Without Merit ................................................................................................................... 6

CONCLUSION ................................................................................................................................. 8

# TABLE OF AUTHORITIES

## CASES

**Page**

*Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968) .................................. 2, 3

*Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) ..................................... 4, 5, 6

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ......................... 6

*CBS v. Snyder*, 136 F.R.D. 364 (S.D.N.Y. 1991) ............................................................ 4

*Erdman Techs. Corp. v. US Sprint Commc'n Co.*, No. 91 Civ. 7602 (PKL), 1997 WL 401669 (S.D.N.Y. July 16, 1997) ..................................................................... 3

*Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58 (2d Cir. 2005) ........................................... 8

*G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216 (RWS), 2002 WL 1822929 (S.D.N.Y. Aug. 7, 2002) ............................................................................ 3

*Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F.Supp. 175, 177 (S.D.N.Y. 1986) ............................................................................................................. 7

*Kupferman v. Consolidated Research and Mfg. Corp.*, 459 F.2d 1072 (2d Cir. 1972) ................................................................................................................................ 3

*MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006) ........................................... 3

*New York News, Inc. v. Newspaper and Mail Deliverers' Union of New York*, 139 F.R.D. 291 (S.D.N.Y. 1991) ....................................................................................... 3

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, No. 01 Civ. 8539 (RWS), 2003 WL 22790916 (S.D.N.Y. Nov. 25, 2003) ............................ 2

*Rosgoscirc v. Circus Show Corp., et al.*, No. 92 Civ. 8498 (JSM), 1993 WL 277333 (S.D.N.Y. July 16, 1993) ................................................................................. 3

*Ross v. Am. Express Co.*, 478 F.3d 96 (2d Cir. 2007) ....................................................... 7

*Spring Const. Co., Inc. v. Harris*, 614 F.2d 374 (4th Cir. 1980) ..................................... 2

*Stinnes Interoil, Inc. v. Intercarbon Bermuda Ltd.*, No. 87 Civ. 1371 (JFK), 1989 WL 11409 (S.D.N.Y. Feb. 8, 1989) ............................................................................. 4

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 92 S.Ct. 630 (1972) ................. 5

*Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870 (S.D.N.Y.1991) ........................................................................................... 2

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137 (2d Cir. 2005) ................. 6, 7

### OTHER AUTHORITIES

7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1914 (2007) .................................................................. 2, 3

17567756

## **PRELIMINARY STATEMENT**

Plaintiff Clinique La Prairie, S.A.'s ("CLP") opposition to La Prairie, Inc.'s ("La Prairie") motion to intervene contains three arguments: (1) that La Prairie's motion to intervene is procedurally defective because it fails to include a proposed pleading; (2) that La Prairie may not intervene as of right because Defendant The Ritz Carlton Hotel Company, LLC ("The Ritz Carlton"), pursuant to its licensing agreement with La Prairie, can protect La Prairie's interests in this action; and (3) that permissive intervention should be denied because the resulting stay pending arbitration would prejudice CLP if La Prairie is permitted to intervene.

These arguments are without merit. First, courts do not strictly enforce the requirement of submitting a proposed pleading, set forth in Rule 24(c), where, as here, it is clear what the proposed intervenor seeks to accomplish by intervention, and no prejudice will result from its omission. Nevertheless, La Prairie herewith submits a proposed answer to satisfy any technical requirement of Rule 24(c).

Next, CLP's argument concerning The Ritz Carlton's ability to represent La Prairie's interests are without merit. The Ritz Carlton cannot adequately defend La Prairie's worldwide rights in its "La Prairie" name. The basic dispute is governed by an agreement to which The Ritz Carlton is not a party, and concerning which it has little knowledge.

Finally, CLP complains about undue delay and prejudice, but fails to acknowledge the Swiss arbitration, which it initiated against La Prairie within weeks of filing the instant lawsuit, is proceeding without delay. Further, CLP omits the fact that, although it sent a cease and desist letter to La Prairie concerning the allegedly infringing spa in November 2005, it did not bring the instant lawsuit until April 11, 2007. Having sat on its rights, it cannot now complain about undue prejudice or delay when the true party in interest seeks to join this action. In any event, CLP concedes that the present motion is timely. Its complaint is based only on its assumption

17567756

that, if intervention is permitted, delay will result from the inevitable stay pending arbitration - which it does not oppose. CLP also does not dispute that this action is governed by the 1995 Agreement,[1] which contains a broad arbitration provision, and is thus an arbitral dispute.

## ARGUMENT

### I. La Prairie's Motion To Intervene Is Not Procedurally Defective

CLP argues that La Prairie's motion to intervene should be denied because it did not technically comply with the procedure for intervention set forth in Rule 24(c), which provides that a motion to intervene should be "accompanied by a pleading setting forth the claim or defense for which intervention is sought." For the reasons set forth below, it is not necessary for La Prairie to submit a proposed pleading. Nevertheless, in order to eliminate CLP's Rule 24(c) argument altogether, La Prairie submits herewith a proposed answer, which sets forth the affirmative defense that this action should be stayed pending arbitration.

The Second Circuit in *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761-62 (2d Cir. 1968) held that Rule 24(c) requires a motion to intervene to be accompanied by a proposed pleading. However, following the *Abramson* decision, numerous district courts from this circuit have held that a proposed pleading need not be submitted where, as here, it is plain what the intervenor seeks to accomplish by its intervention, and no prejudice will be caused by its omission. *See, e.g., Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, No. 01 Civ. 8539 (RWS), 2003 WL 22790916, at *4 (S.D.N.Y. Nov. 25, 2003); *Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991); *see also Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980) (citing to 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1914,

---

[1] This concession is significant. CLP's Complaint only alleges the previous 1982 Agreement, which did not contain an arbitration provision, and omits the fact that this agreement was superseded by the 1995 Agreement, which contains a broad arbitration provision.

at 413-16 (2007); *c.f. Kupferman v. Consolidated Research and Mfg. Corp.*, 459 F.2d 1072, 1074 n.1 (2d Cir. 1972).

None of the cases cited by CLP stand for the proposition that failure to strictly adhere to Rule 24(c) mandates an outright denial with prejudice. Indeed, some of CLP's cases say just the opposite. *See New York News, Inc. v. Newspaper and Mail Deliverers' Union of New York*, 139 F.R.D. 291, 293 (S.D.N.Y. 1991) (holding that "procedural defect alone does not defeat [the intervenor's] application[.]"); *G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216 (RWS), 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002) (denying motion to intervene until movant complied with Rule 24(c)). In CLP's other cases, the court found that, in addition to procedural defects, the intervenor's motion also lacked substantive merit. *See, e.g., Abramson*, 392 F.2d at 761-62; *Erdman Techs. Corp. v. US Sprint Commc'n Co.*, No. 91 Civ. 7602 (PKL), 1997 WL 401669, at *2 (S.D.N.Y. July 16, 1997). Finally, CLP's reliance on *Rosgoscirc v. Circus Show Corp., et al.*, No. 92 Civ. 8498 (JSM), 1993 WL 277333 (S.D.N.Y. July 16, 1993), is misplaced. This decision bears little resemblance to the case at bar. In *Rogoscirc*, the president of the proposed intervenor and the intervenor's sister company were both already defendants in that lawsuit. Further, the proposed intervenor sought to intervene only to stay the action, a motion which the defendants also made, and which was denied by the district court.[2]

---

[2] CLP does not rely on *Rosgoscirc* for the proposition that La Prairie's motion to stay should be denied. Nor could it. The court in *Rosgoscirc* denied the defendants' motion to stay the action pending arbitration on two grounds: (1) since defendants were not a party to the arbitration agreement, they lacked standing to seek a stay under Section 3 of the Federal Arbitration Act ("FAA"); and (2) the court would not exercise its inherent power to stay because defendants were not a party to the arbitration proceedings and would not be bound by the resulting arbitration award. Neither concerns apply here because La Prairie is a party to the 1995 Agreement, a party to the Swiss arbitration, and it would be bound by any resulting arbitration award. Moreover, it is axiomatic that the FAA, which "manifest a liberal federal policy favoring arbitration" requires federal courts to "stay its proceedings if it is satisfied that the issue before it is arbitrable." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). As set forth in

II. **CLP Concedes That Three Of The Four Factors Necessary For Intervention Are Satisfied**

As set forth in La Prairie's opening brief, courts consider the following four factors in determining whether to grant a motion to intervene as of right: "timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001). Significantly, CLP does not dispute that La Prairie's motion is timely, nor that it has substantial interests that may be impaired by an adverse adjudication in this action. Indeed, La Prairie's interest in this action are most significant. An adverse disposition of this action could undermine La Prairie's worldwide right to use its "La Prairie" name, or jeopardize its preexisting U.S. trademarks for beauty salon services, which CLP seeks to attack in this lawsuit.[3] (*See* Br. 6-7, Opp. Br. 12). Moreover, La Prairie has a substantial interest in enforcing its arbitration agreement. (*See* Br. 6).[4]

---

La Prairie's moving brief, because the issues before the Court plainly arise under the 1995 Agreement, these issues must be resolved by the Swiss arbitration. (Br. 10-11).

[3] CLP states in its opposition brief that it intends to plead additional trademark claims in this action. (Opp. Br. 12). It argues that its U.S. "trademark was registered in 1986, and obviously pre-dates [La Prairie's] 1997 [sic] trademark." (The La Prairie trademark referenced by CLP was actually registered in 1991, as acknowledged by CLP's footnote 8.) This claim can only be brought against La Prairie and not against The Ritz Carlton, which has no trademark interest in the "La Prairie" name.

In addition, it is notable that CLP, while chastising La Prairie for its purported failure to satisfy Rule 24(c), relies on facts that are not sworn to or otherwise supported by the record, such as facts concerning the status of its United States trademark, the number of U.S. visitors to its website, and CLP's history of commercial activities in the United States. (Opp. Br. 12). Because these facts are introduced in CLP's brief, and not made pursuant to a sworn statement, they are not properly before the Court.

[4] In its opening brief, La Prairie cited to *CBS v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991) and *Stinnes Interoil, Inc. v. Intercarbon Bermuda Ltd.*, No. 87 Civ. 1371 (JFK), 1989 WL 11409,

### III. CLP's Argument That La Prairie's Licensee, The Ritz Carlton, Can Adequately Represent In Its Worldwide Interest Its Name "La Prairie" Is Without Merit

CLP targets its opposition on the fourth factor, which the case law states is the most "minimal" -- whether The Ritz Carlton can adequately represent La Prairies' interests. CLP relies on the untenable and illogical speculation that The Ritz Carlton was authorized to represent the entirety of La Prairie's worldwide interests in its "La Prairie" name pursuant to its licensing agreement with La Prairie, which it claims was "curiously" omitted from La Prairie's motion papers. (Opp. Br. 1-3, 8-10). Plainly, the licensing agreement granting The Ritz Carlton the right to open a La Prairie Spa does not encompass The Ritz Carlton's right to litigate, enforce, or protect La Prairie's worldwide trademark interests. A copy of La Prairie's licensing agreement with The Ritz Carlton was not included because it is irrelevant. Indeed, the obvious conclusion to be drawn from CLP's fixation on La Prairie's licensing agreement is that it seeks to use this action to learn the confidential terms of its adversaries' spa licensing agreement in the United States.

Moreover, in order to satisfy the "minimal" burden of inadequate representation, the movant need only show that the representation "*may be*" inadequate. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10 (1972) (emphasis added) (rejecting argument that, because movant's interests were allegedly identical with other parties in the action, movant's interest must be adequately represented). All that is required is "sufficient doubt about the adequacy of representation" *id., see also Brennan*, 260 F.3d at 133 (the test is "whether the [parties'] interests [are] so similar to those of [the proposed intervenor] that

---

at *1 (S.D.N.Y. Feb. 8, 1989), for the proposition that "[a] court may permit a party to intervene as of right in order to protect its substantial interest in enforcing an arbitration agreement." (Br. 6) CLP attempts to distinguish these cases on the ground that, in both cases, the proposed intervenor sought to compel arbitration whereas, in this case, La Prairie merely seeks to stay the proceedings. (Opp. Br. 6-7). This distinction is of no moment. The thrust of both cases is that a party may intervene in order to ensure that its bargained-for right to arbitration is honored.

adequacy of representation [is] assured."). In this case, La Prairie certainly cannot be assured that its licensee will be able to represent its substantial interests in this litigation. To the contrary, The Ritz Carlton has no knowledge concerning the negotiation, meaning and intent of the 1995 Agreement, which long predate The Ritz Carlton's relationship with La Prairie.

While it is true that "[the Second Circuit] ha[s] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001), this presumption is not applicable here because La Prairie's and The Ritz Carlton's interests and their respective stakes in this litigation, while aligned, are certainly not identical. The Ritz Carlton's interest in this litigation is simply to continue the operation of a spa in its hotel. If it is barred from operating a La Prairie Spa, it could have another spa in its place. On the other hand, La Prairie's interest is the continued and worldwide use of its trade name for its extensive line of beauty products and services, which it has developed over the past twenty-five years at considerable cost and effort. (Florio Decl. ¶ 4); *see Brennan*, 260 F.3d at 132-33 (holding that differences between a party's and prospective intervenor's stake in litigation, and thus different incentives to settle, may demonstrate inadequate representation).

### IV. CLP's Argument That La Prairie's Intervention Would Cause Undue Delay and Prejudice Is Without Merit

In arguing that La Prairie's motion to intervene will cause undue delay, CLP makes much of the fact that the La Prairie Spa is presently "eroding and diminishing" the CLP mark, which entitles it to immediate injunctive relief and requires this action to proceed forthwith. (Opp. Br. 10). However, the Swiss arbitration, which CLP initiated within weeks of filing the instant lawsuit, is going forward with both parties' full participation. Moreover, CLP says nothing about the fact that on November 21, 2005, it sent a cease and desist letter to La Prairie

complaining about the spa, but it did not file the instant lawsuit until April 11, 2007. (Florio Decl. ¶ 11). Having sat on its rights, CLP cannot now claim undue delay merely because the true party in interest seeks to intervene in this action. *C.f. Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) (undue delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury") (internal citations and quotations omitted).

CLP further argues that it will suffer undue prejudice if La Prairie is permitted to intervene because, by intervening and staying this action, CLP cannot pursue its "statutory and common law claims against The Ritz Carlton that …The Ritz Carlton is interfering with its service mark 'Clinique La Prairie.'" (Opp. Br 3-4). However, in order to maintain any claim against The Ritz Carlton, CLP must first prevail on the broader threshold issue of whether La Prairie has the right to open or license beauty spas in the United States. This issue can only be resolved by arbitration, as expressly required by the 1995 Agreement. CLP cannot seek an end-run around this arbitration provision by adjudicating this issue against La Prairie's licensee. A stay is further advisable given that the Swiss arbitration and this action are proceeding simultaneously, which thereby wastes resources and creates a risk of inconsistent judgments. *See Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F.Supp. 175, 177 (S.D.N.Y. 1986) (granting stay pending arbitration where there were overlapping issues in both proceedings "making substantial duplication of efforts inevitable" and in light of "policy considerations of judicial economy and avoidance of confusion and possible inconsistent results").

As a final matter, CLP argues that "The Ritz Carlton is not a party to [the Swiss] arbitration proceeding, cannot be forced to participate in that proceeding, has not agreed to participate in the arbitration, and will not agree to be bound by the outcome of the arbitration."

17567756

(Opp. Br. 3). The Ritz Carlton's participation in the Swiss arbitration is unnecessary. The dispute is between La Prairie and CLP, and concerns the construction of the 1995 Agreement. Indeed, CLP's continued attacks against The Ritz Carlton serve only to disrupt La Prairie's business relationship with its licensee.[5]

## CONCLUSION

For the reasons set forth above and in La Prairie's moving brief, La Prairie respectfully requests the Court to (1) grant its motion to intervene as a defendant in this action; and (2) stay the instant action pending arbitration.

Dated: New York, New York
       July 30, 2007

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____Martin Gold/mp_____
    Martin R. Gold
    Monica Pa
    1221 Avenue of the Americas
    New York, New York  10020-1089
    (212) 768-6700

*Attorneys for La Prairie, Inc.*

---

[5] If it were necessary, the Ritz Carlton could be required to participate in the Swiss arbitration even though it is not a signatory of the 1995 Agreement because CLP's claims against The Ritz Carlton are "inexplicably intertwined" with this agreement. *See Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007) (referring non-signatories to arbitration where signatory and nonsignatory's issues were "inextricably intertwined"); *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (citing cases).

-8-

17567756