UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLINIQUE LA PRAIRIE, S.A., | ) |
| Plaintiff, | ) |
| -against- | ) Case No. 1:07-cv-04038-PAC |
| THE RITZ CARLTON HOTEL COMPANY, L.L.C., | ) |
| Defendant. | ) |

**REPLY OF DEFENDANT THE RITZ-CARLTON HOTEL COMPANY, L.L.C. IN SUPPORT OF THE MOTION TO INTERVENE AND TO STAY OF LA PRAIRIE, INC.**

ARENT FOX LLP
1675 Broadway
New York, New York 10019
Telephone No.: (212) 484-3900
Facsimile No.: (212) 484-3990

**Attorneys for Ritz-Carlton Hotel Company, L.L.C.**

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND ...................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    La Prairie Is Entitled to Intervene Because Ritz-Carlton Cannot Adequately Represent La Prairie's Interests ......................................................... 2

    B.    This Lawsuit Should Be Stayed Pending Completion of the CLP-La Prairie Arbitration. ............................................................................................... 4

CONCLUSION ............................................................................................................................. 9

Defendant The Ritz-Carlton Hotel Company, L.L.C. ("Ritz-Carlton"), by and through counsel, hereby responds to Clinique La Prairie, S.A.'s Memorandum of Law in Opposition to La Prairie, Inc.'s Motion to Intervene and to Stay ("CLP Opp."), and supports the Motion to Intervene and to Stay filed by La Prairie, Inc. ("La Prairie"), in which Ritz-Carlton joins.[1]

## FACTUAL BACKGROUND

In 2002, Ritz-Carlton entered into an agreement with La Prairie whereby Ritz-Carlton, among other things, obtained a license to use the mark LA PRAIRIE in connection with a spa at The Ritz-Carlton, New York, located at 50 Central Park South, New York, New York (the "License Agreement"). The License Agreement granted to Ritz-Carlton a non-exclusive, non-transferable license to use the LA PRAIRIE mark as part of the name of the hotel spa, which would be called La Prairie at The Ritz-Carlton Spa (the "Spa"), and to advertise and promote the Spa using that name. The Spa opened for business in 2002 and has continued to operate using the LA PRAIRIE mark continuously since 2002. At no time prior to the filing of the complaint in this case had Clinique La Prairie, S.A. ("CLP") complained to Ritz-Carlton about Ritz-Carlton's use of the LA PRAIRIE mark, nor had Ritz-Carlton otherwise learned that CLP objected to Ritz-Carlton's use of the mark.

In April 2007, CLP commenced this action, alleging in three separate but related state law claims that despite La Prairie's incontestable registration of the LA PRAIRIE mark, Ritz-Carlton's use of the mark violates CLP's rights in the mark CLINIQUE LA PRAIRIE. La Prairie is not named as a defendant in this suit. After the lawsuit was filed, Ritz-Carlton learned that there is a 1995 agreement between CLP and La Prairie pertaining to their respective rights in various marks, including the LA PRAIRIE mark (the "CLP-La Prairie Agreement"). Ritz-

---

[1] Ritz-Carlton incorporates by reference La Prairie's Memorandum of Law in Support of Motion to Intervene and to Stay ("La Prairie Mem.").

Carlton is not a party to the CLP-La Prairie Agreement, is not mentioned in that agreement and has no knowledge of its negotiation or the operation of its terms. The CLP-La Prairie Agreement provides that in the event of a dispute between CLP and La Prairie that cannot be settled amicably, CLP and La Prairie shall resolve their dispute by arbitration in accordance with the Zurich code of civil procedure. CLP-La Prairie Agreement at ¶ 10. Apparently arbitration in accordance with the terms of the CLP-La Prairie Agreement is now underway in Switzerland.

## ARGUMENT

Ritz-Carlton supports La Prairie's intervention in this case and a stay of the proceedings until completion of the arbitration between La Prairie and CLP. Determinations of the claims in this case are dependent upon the prior resolution of issues in the arbitration between La Prairie and CLP. Inconsistent results, confusion to the parties, duplicative efforts and a waste of the Court's and the parties' resources are the likely results if this case proceeds.

### A. La Prairie Is Entitled to Intervene Because Ritz-Carlton Cannot Adequately Represent La Prairie's Interests.

As recognized by CLP, intervention by a third party is permitted, if not mandated, where the defendant cannot adequately represent the interests of the third party. CLP Opp. at 8-9; *see also New York Pub. Int. Research Group, Inc. v. Regents of the Univ. of the State of New York,* 516 F.2d 350, 351 (2d Cir. 1975). CLP contends that La Prairie should not be allowed to intervene because Ritz-Carlton and La Prairie share an identity of interests. CLP Opp. at 8-10. This is not the case. Ritz-Carlton can not adequately represent La Prairie's interests. Ritz-Carlton's lack of knowledge about the CLP-La Prairie Agreement and La Prairie's other arrangements involving the LA PRAIRIE mark, as well as the potential adverse posture of La Prairie and Ritz-Carlton related to the mark, prevent Ritz-Carlton from being able to adequately represent La Prairie's interests in the litigation.

As CLP acknowledges, the burden of demonstrating inadequacy of representation is generally "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); CLP Opp. at 8. The intervenor's burden is met if he can demonstrate that the defendant's representation of his interest "**may be** inadequate ...." *Trbovich*, 404 U.S. at 538 n.10 (emphasis added). An intervenor's "somewhat different vantage point" may lead to differences in litigation strategy or vigor of presentation such that intervention is required. *New York Pub. Int. Research Group, Inc.*, 516 F.2d at 351. Differences between the party's and the prospective intervenor's stakes in the litigation, leading to divergent perspectives on settlement, may also demonstrate insufficient representation. *Brennan v. N.Y.C. Brd. of Ed.*, 260 F.3d 123, 132-33 (2d Cir. 2001). The possibility of a conflict of interest arising between a party and an intervenor compels intervention. *In the Matter of Oceana Int'l, Inc.*, 49 F.R.D. 329, 333 (S.D.N.Y. 1970). As CLP itself recognizes, adversity of interest is prima facie evidence that a party cannot adequately represent an intervenor. CLP Opp. at 9 (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001)). Each of these circumstances exists here.

La Prairie's and CLP's long and complex relationship, turbulent history, and contractual arrangements and disputes beyond the scope of this lawsuit imbue La Prairie with a different vantage point than that of Ritz-Carlton. La Prairie's rights will unquestionably be affected by the outcome of this litigation, as CLP itself concedes. *See* CLP Opp. at 9. Clearly La Prairie would be a better advocate for its interests than Ritz-Carlton can be. *See New York Pub. Int. Research Group, Inc.*, 516 F.2d at 351. Moreover, La Prairie and Ritz-Carlton have different stakes in the litigation. For Ritz-Carlton, only the use of the mark at the Spa is at issue here.[2] But this case could potentially affect a host of La Prairie's other licensing arrangements of which Ritz-Carlton

---

[2] Ritz-Carlton also has a La Prairie spa at the Ritz-Carlton, Beverly Hills, which is not at issue in this case, and is slated to open another La Prairie spa in California in 2008.

has no knowledge. Ritz-Carlton understands that the issues in this suit are a very small aspect of the ongoing disputes regarding the use of marks under the CLP-La Prairie Agreement. Ritz-Carlton is ignorant of their substance and scope. Thrust in to the middle of the ongoing war between CLP and La Prairie, Ritz-Carlton is in no position to adequately represent La Prairie's interests. *Bricklayers & Allied Craftsmen, Local Union No. 44 v. Corbetta Const. Co., Inc.*, 511 F. Supp. 1386, 1388 (S.D.N.Y. 1981). As a result, intervention by La Prairie is required.

Moreover, La Prairie and Ritz-Carlton are potentially adverse to each other in this case. Should there be a finding in CLP's favor, Ritz-Carlton will have claims against La Prairie. In addition, given La Prairie's and Ritz-Carlton's differing stakes in this case, their positions on settlement and the rigors and scope of discovery may be divergent. Their respective defenses on the merits are also likely to differ radically.[3] *See, e.g., Int'l Design Concepts, L.L.C. v. Saks, Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (interests of licensor and licensee were "sufficiently distinct" to warrant licensor's intervention). In sum, potential conflicts of interest, that could pit Ritz-Carlton against La Prairie, make Ritz-Carlton's representation of La Prairie's interests impossible.

### B. This Lawsuit Should Be Stayed Pending Completion of the CLP-La Prairie Arbitration.

Courts have the power to stay litigation pending arbitration among less than all of the parties to the litigation. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997). This power is grounded in the court's inherent ability to "control the disposition of the cases on its docket, with economy of time and effort for itself, for counsel and for litigants." *Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F. Supp. 175, 177 (S.D.N.Y. 1986)(quoting

---

[3] La Prairie and Ritz-Carlton may also have different positions with regard to the desirability of Ritz-Carlton participating in the CLP-La Prairie arbitration and the Court's ability to compel Ritz-Carlton to do so, further demonstrating Ritz-Carlton's and La Prairie's potential conflict of interest.

-4-

*Landis v. N. Am.*, 299 U.S. 248, 254-55 (1936)). A stay of litigation is particularly favored where it will avoid the possibility of inconsistent results. *See, e.g., Mann v. N.A.S.A. Int'l., Inc.*, No. 99 Civ. 11936 (AGS), 2000 WL 1182823, at *6 (S.D.N.Y. Aug. 21, 2000); *Hikers Indus., Inc.*, 640 F. Supp. at 178. When considering whether to stay a case pending arbitration, the court considers a number of additional factors. These include: (1) whether the arbitration will provide insight into the claims to be litigated or perhaps even resolve some or all of them, *Orange Chicken, L.L.C., v. Nambe Mills, Inc.*, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000); (2) whether the stay advances judicial economy, and reduces expense and inconvenience, *Hikers Indus., Inc.*, 640 F. Supp. at 178; and (3) whether the plaintiff will be prejudiced by the stay, *Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, No. 04 Civ 1859 (SHS), 2005 WL 1384055, at *6 (S.D.N.Y June 9, 2005).[4]

*Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd., supra,* illustrates this Court's recognition that a stay pending the conclusion of arbitration is appropriate in circumstances similar to those here. In *Hikers Industries, supra,* the plaintiff, Hikers, imported and sold fine menswear to retail merchants throughout the United States pursuant to a license from William Stuart Industries ("WSI"). *Id.* at 176. Hikers contended that in violation of the licensing agreement, WSI sold competing clothing bearing the mark to defendant Marshalls for resale in Hiker's exclusive sales area. *Id.* Hikers asserted claims of federal and New York trademark infringement, dilution of trademark rights under New York's general business statute

---

[4] Courts sometimes also look at whether the arbitrable and non-arbitrable claims arise out of the same facts. *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 319 (E.D.N.Y. 2001).. Here the issues being arbitrated between CLP and La Prairie evidently pertain to a range of subjects arising out of or related to their respective uses of the mark, world wide. See Exhibit B to the Declaration of Lynn Florio, annexed to the La Prairie Mem. The subject of this litigation is much more narrow, involving only Ritz-Carlton's entitlement to use the LA PRAIRIE mark in connection with the Spa, which is wholly derivative of La Prairie's rights to the mark. Thus, while the disputes in the arbitration are evidently broader, more numerous and more complex than those at issue here, the issues here entirely arise from and are related to those in the arbitration.

and common law unfair competition against both WSI and Marshalls. *Id.* Hikers and WSI agreed to arbitrate their dispute pursuant to the terms of their license agreement and to stay the litigation claims pertaining to WSI. *Id.* at 177. Defendant Marshalls, which was not party to the arbitration, moved the Court to dismiss the claims against it or alternatively to stay the action pending completion of the arbitration. *Id.* Hikers opposed a stay of its claims against Marshalls, claiming that those issues might not be addressed in the arbitration. *Id.* at 177-78. The Court found that a stay was compelled "[b]ecause the facts and issues would be substantially similar in both proceedings, making substantial duplication of effort inevitable...." *Id.* The Court further found that "[b]esides judicial economy and the desirability of avoiding confusion and possible inconsistent results" a stay was also warranted because "the arbitration will provide the court with insight into the issues of law and fact." *Id.* The Court was further persuaded that a stay was necessary because if the lawsuit went forward, the Court would be required to interpret the Hikers-WSI license agreement, which would "thwart the federal policy in favor of arbitration of disputes by rendering the arbitrator's interpretation of the License Agreement meaningless." *Id.* at 179.[5]

---

[5] The holding of *Hikers Industries, supra,* has been applied in numerous other cases with the same result. *See, e.g., Hughes, Hooker & Co.*, 2005 WL 1384055, at *6 (stay of case against non-arbitrating defendants furthered the "interests of fairness and judicial economy" where plaintiff's claims against the remaining defendants "center around and depend upon [plaintiff's] interpretation of the contractual agreement that is subject to arbitration"); *Provident Bank v. Kabas*, 141 F. Supp. 2d at 318-19 (action stayed against non-arbitrating defendants because the claims against them arose out of the same set of facts as those in arbitration and denial of the stay could lead to duplication of efforts and possible inconsistent determinations); *Commonwealth Ins. Co. v. Beneficial Corp.*, No. 87 Civ 5056 (CSH), 1987 WL 17951, at *3-4 (S.D.N.Y. Sept. 29, 1987) (stay granted with regard to claims of non-arbitrating defendants where the outcome of the arbitration would limit or narrow the issues in the litigation and could negate plaintiff's damages); *Ainbinder v. Wall Str. Clearing Co.*, No. 92 Civ. 7315 (SS), 1993 WL 106408, at *6-7 (S.D.N.Y. Apr. 7, 1993)(stay granted as to claims against non-arbitrating defendants while plaintiff arbitrated with one of the defendants because arbitration could be dispositive of issues in the litigation, leading to "orderly resolution" of plaintiff's claims); *Orange Chicken, L.L.C.*, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *8-9 (S.D.N.Y. Dec. 19, 2000)(stay of claims against non-arbitrating defendants was found to be particularly appropriate because claims in litigation arose out of the same series of alleged acts as those in arbitration, and arbitration of the claims would "provide significant insight into, if not actually resolve, the claims asserted" in the litigation).

Our circumstances similarly compel a stay of the entire litigation while CLP and La Prairie arbitrate their disputes in Switzerland.[6] As a threshold matter, if this litigation were to proceed at the same time as the arbitration, inconsistent results could ensue. For example, the arbitrators could find that La Prairie has no rights to the LA PRAIRIE mark for spa services, while a jury in the Southern District of New York finds that it does. Inconsistent rulings would confuse the parties and throw their future interactions into chaos. A single, world-wide resolution of the disputed rights of La Prairie and CLP is needed. This resolution should be provided through the Swiss arbitration, as La Prairie and CLP have agreed. CLP should not be permitted to circumvent its obligation to arbitrate by this lawsuit. *See Hikers Indus, Inc.*, 640 F. Supp. at 178.

The other factors routinely considered by this Court when determining whether a stay should be granted also warrant a stay of this case pending completion of the CLP-La Prairie arbitration. First, arbitration of the broad issues between CLP and La Prairie will provide the court and the parties with insight as to the issues in this litigation, if not resolve them completely. For example, CLP contends that La Prairie had no authority under the CLP-La Prairie Agreement to license the LA PRAIRIE mark to Ritz-Carlton. CLP Opp. at 2. Indeed, CLP contends that under the CLP-La Prairie Agreement, CLP is entitled to a fully paid up, world-wide and exclusive license to the LA PRAIRIE mark, *id.* at 2-3, which would preclude La Prairie from being able to license the mark to Ritz-Carlton. This same contention is one of the issues to be arbitrated by CLP and La Prairie in the Swiss arbitration. Any rights Ritz-Carlton has in the LA PRAIRIE mark are derivative of and wholly dependent upon the rights of La Prairie to the mark. Resolution of La Prairie's rights to the mark in the arbitration may be dispositive of

---

[6] Ritz-Carlton is not a signatory to the CLP-La Prairie Agreement and is not a participant in the Swiss arbitration.

CLP's claims against Ritz-Carlton here. If La Prairie is found to have rights to LA PRAIRIE as a service mark under the CLP-La Prairie Agreement, La Prairie's licensing of the mark to Ritz-Carlton for spa services would be valid and CLP's claims against Ritz-Carlton would fail. On the other hand, if the Swiss arbitrators find that La Prairie does not have rights to the LA PRAIRIE mark for spa services, La Prairie would not have had the authority to license the mark to Ritz-Carlton, which in turn would then be an unauthorized user of the mark. Thus the findings of the arbitrators will have a profound effect on this litigation and will certainly narrow, if not entirely resolve, the pending claims.

Second, judicial resources, as well as those of the parties, will be conserved if this case is stayed pending arbitration. While CLP and LA Prairie are arbitrating the broader disputes between them, this Court will not be burdened with discovery disputes and motions practice, none of which may ultimately be relevant to the disposition of the issues at bar, which hinge on the arbitration rulings. Similarly, Ritz-Carlton will not be forced to devote corporate attention and incur legal fees in defense of this case unless issues remain after resolution of the Swiss arbitration.

Third, there will be no prejudice to CLP if this case is stayed. CLP's principal argument in opposition to the stay is that it will delay this litigation and that delay will prejudice CLP by providing Ritz-Carlton with an opportunity to solidify its use of the mark in New York.[7] CLP Opp. at 11. This argument is without merit. CLP waited five years after Ritz-Carlton opened the Spa, during which time Ritz-Carlton has been continuously using the LA PRAIRIE mark, before

---

[7] In conclusory fashion, CLP also argues that the arbitration will not resolve all the issues in this case, without explanation of what issues would be remaining and why they would not be affected by a ruling in the arbitration. CLP Opp. at 11-12. Such conclusory arguments are an insufficient basis to deny a stay. *See, e.g., Hikers Indus., Inc.*, 640 F. Supp. at 178. Moreover, complete disposition of the issues in arbitration is not a requirement for the granting of a stay. *See, e.g., Mann v. N.A.S.A. Int'l, Inc.*, 2000 WL 1182823, at *6; *Commonwealth Ins. Co.*, 1987 WL 17951, at *4.

bringing this lawsuit. At no time over the last five years has CLP expressed concern to Ritz-Carlton over its use of the mark. Nor has CLP sought a temporary restraining order or a preliminary injunction to stop Ritz-Carlton's allegedly wrongful use of the mark. CLP has identified no witness testimony that will be lost, nor any evidence that will be compromised if this lawsuit is stayed pending the arbitration. Any alleged harm caused by delay would be compensable pursuant to CLP's claim for damages.

## CONCLUSION

La Prairie should be permitted to intervene in this action. Ritz-Carlton, which will not be a participant in the arbitration, cannot adequately represent La Prairie's interests in this case and may in fact be adverse to La Prairie. In addition, the Court should stay this case pending the Swiss arbitration between La Prairie and CLP because the resolution of issues in the arbitration may resolve, and certainly would streamline the litigation of, the claims here. Moreover, CLP will not be prejudiced by a stay pending resolution of the arbitration. For these reasons, La Prairie's motion to intervene and to stay should be granted.

Dated: July 30, 2007                          Respectfully submitted,


                                              /s/ David N. Wynn
                                              David N. Wynn (DW-8660)
                                              ARENT FOX LLP
                                              1675 Broadway
                                              New York, New York  10019
                                              Telephone No.: (212) 484-3900
                                              Facsimile No.: (212) 484-3990
                                              Email: wynn.david@arentfox.com

                                              **Attorneys for The Ritz-Carlton Hotel
                                                Company, L.L.C.**

OF COUNSEL:

Barbara S. Wahl
Leo M. Loughlin
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone No.: (202) 857-6415
Facsimile No.: (202) 857-6395
Email: <u>wahl.barbara@arentfox.com</u>