# EXHIBIT A

## DECLARATION UNDER 28 U.S.C. § 1746 of Salomé Hangartner

1. I am a citizen of the country of Switzerland and am over 18 years of age. I am not a party to this action.

2. I am a professional translator. I am self-employed with over 40 years of experience in translating documents. I have supplied translation services to business organizations, governmental authorities, and courts in Switzerland.

3. I am qualified to translate documents from German to English. I have 42 years of experience translating German to English. I am accredited by the Zurich Obergericht (higher and appellate court] for German to English translation.

4. Attached hereto as Exhibit A is a true, accurate and complete English translation of the German-language document "Agreement between Laboratoires La Prairie S.A., La Prairie Inc., and Armin Mattli," attached hereto as Exhibit B. I was responsible for the translation of this document.

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and ability.

Executed this 14th day of May, 2007

_____
Salomé Hangartner

# Agreement

between

Laboratoires La Prairie S.A., CH-1815 Clarens, [Switzerland],
La Prairie Inc., 10019 New York, NY, [USA]
hereinafter jointly referred to as "LP"

and

Armin Mattli, c/o Clinique La Prairie, CH-1815 Clarens, [Switzerland]
acting on his own behalf and on behalf of the companies owned by him, in particular
Clinique La Prairie S.A., CH-1815 Clarens, [Switzerland]
CT Holding, CH-2000 Neuchâtel, [Switzerland]
hereinafter referred to as "AM"

## RECITAL

Armin Mattli is the majority shareholder of Clinique La Prairie SA and of CT Holding. Clinique La Prairie SA operates Clinique La Prairie in Montreux. Laboratoires La Prairie SA and La Prairie Inc. are active in the field of manufacturing and distributing cosmetic products under the trademark "La Prairie." La Prairie Inc. purchased this business from Armin Mattli in the year 1982. This agreement shall regulate the further cooperation of the parties.

### 1. Subject of the agreement

In particular, this agreement shall regulate the mutual rights of the parties to the following trademarks:

a. "La Prairie" product trademark for cosmetic and related products (current list of LP trademark registrations in **Annex A**);

b. "La Prairie" product trademark for food, dietary products, and food supplements (current list of AM trademark registrations in **Annex B**);

c. "Clinique La Prairie" service trademark for operating medical and health clinics (current list of AM trademark registrations in **Annex C**);

d. "CLP" service trademark for medical and health clinics (current list of AM trademark registrations in **Annex D**);

e. "CLP" product trademark for cosmetic and related products (current list of LP trademark registrations in **Annex E**);

f.  device mark of the old Clinique La Prairie in the following versions:

 



for cosmetic and related products (current list of LP trademark registrations in **Annex F**);

g. "LP Cosmétique " product trademark for cosmetic and related products (current list of LP trademark registrations in **Annex G**).

## 2. LP trademarks

AM acknowledges LP's ownership in the product trademark "La Prairie" for cosmetic and related products according to Annex A; in the device mark of the old clinic for cosmetic and related products according to Annex F; and in the product trademark LP Cosmétique for cosmetic and related products according to Annex G. LP undertakes the obligation not to use the trademark LP Cosmétique according to Annex G without AM's consent.

## 3. AM trademarks

3.1  LP acknowledges AM's ownership in the product trademark "La Prairie" for food, dietary foods, and food supplements in accordance with Annex B as well as of the service trademark "Clinique La Prairie" and "CLP" for the operation of medical and health clinics according to Annexes C and D. AM shall delete "application, administration, and distribution of medical-cosmetic preparations" from the service list of the trademark "CLP".

3.2  LP undertakes the obligation to transfer the "CLP" product trademark for cosmetic and related products according to Annex E to AM. AM undertakes the obligation not to use this trademark for cosmetic products.

## 4. Mutual rights

4.1  Both parties shall make every effort, both individually as well as jointly, to defend and increase the prestige and the value of the La Prairie trademark in every way and not to jeopardize it by any means.

4.2   AM confirms LP's perpetual, worldwide, and exclusive right

- to refer to the name of Clinique La Prairie in advertising for cosmetic products sold under the name of La Prairie;

- to point to the fact that living-cell therapy was developed at the Clinique La Prairie;

- to state that La Prairie products for cosmetic purposes are being used at the Clinique La Prairie; and

- to state that the experience with living-cell therapy at Clinique La Prairie leads to specific know-how for the extraction of cells.

4.3   LP's rights pursuant to para 4.2 apply on condition that

- such references and statements are lawful and correspond to the facts;

- such references and statements do not impair the reputation of the Clinique La Prairie as a place of therapy and research;

- such references and statements do not establish any connection between the clinic La Prairie and beauty products (products of decorative cosmetics such as lipsticks, make-up, eye shadows etc.) or perfume. In general leaflets where beauty products are not in the foreground, reference to the Clinique La Prairie is admissible.

4.4   Insofar as according to a national or international list of goods and services both parties are entitled to the ownership to one of the trademarks covered by this Agreement, the trademark holder shall grant to the other party an unlimited, worldwide, and exclusive license free of license fee for the area appertaining to the other party.

## 5. Additional obligations

5.1   LP undertakes the obligation to supply to Clinique La Prairie, at the latter's request, La Prairie cosmetic products to be sold to clients of the clinics (but not for further retailing), at the same prices Laboratoires La Prairie S.A. grants its Dutch distributor.

5.2   AM will use La Prairie cosmetic products within the living-cell therapy offered at Clinique La Prairie. LP will supply the required products in quantities as in the past.

5.3   LP shall inform AM of any intended assignment of the "La Prairie" trademark to third parties (be it a direct transfer or a transfer of the controlling interest in the registered trademark holder) beforehand.

5.4   AM undertakes the obligation not to change the name of Clinique La Prairie. In case of discontinuing the operation of the Clinique La Prairie, the name and the goodwill of Clinique La Prairie shall be assigned to LP without compensation.

5.5 AM undertakes the obligation to use the trademark "La Prairie" or any similar or derivated trademark only insofar as he holds the rights thereto in accordance with the present agreement (in particular item 3), and in any case only in a manner that shall not diminish the value of the trademark "La Prairie" for LP or the quality of La Prairie products. Consequently, AM shall not use the trademark "La Prairie" for any products other than food, dietary food or food supplements, nor for other services except the operation of health clinics and shall insofar not oppose the registration and the use of the trademark La Prairie by LP.

AM's obligations pursuant to the above paragraph shall also apply with regard to any indirect use in the context of the distribution of any cosmetics other than those of LP. Specifically, as the holder of the rights to the name of Dr. Paul Niehans, AM untertakes to prevent the use of the latter's name in the marketing of other cosmetics if the activity of Dr. Paul Niehans at Clinique La Prairie were to be mentioned.

5.6 The provisions of this agreement shall not restrict the rights of the parties to sell other products or services, or to be involved in such activities, in any way, provided any direct or indirect reference to "La Prairie" or any designation that might be confounded with it, that would be in contradiction to this agreement, is excluded.

5.7 AM confirms LP's right of first refusal for the shares of Clinique La Prairie S.A., to be exercised on the terms offered by a third party within 60 days after communication of a third party offer.

## 6. Duration

6.1 This agreement is concluded for an indefinite period of time. It may be terminated upon 10 years' notice, but at the earliest with effect at 31 December 2015.

6.2 Termination of this agreement does not affect the parties' rights of ownership to the trademarks acknowledged herein. In case of termination, the parties shall come to an understanding regarding the distribution of ownership rights in the trademarks which belong to both parties according to this agreement, taking into account the circumstances of that time.

6.3 The obligations pursuant to Art. 4.2 and 5.5 shall remain in force even after a possible termination of this agreement.

## 7. Previous agreements

Insofar as they are still in effect, the following agreements shall be canceled by mutual consent:

a. Supply Agreement of 03 December 1982 between Armin Mattli and Laboratoires La Prairie S.A.,

b. Cooperation Agreement of 03 December 1982 between Clinique La Prairie S.A., Armin Mattli, and Aviatrix Corporation,

c. Trademark agreement of 03 December 1982 between Nichols N.V. and Aviatrix Corporation, and

d. Guarantee of 03 December 1982 between Armin Mattli and Aviatrix Corporation

## 8. Solidarity and area of application

8.1 Laboratoires La Prairie S.A. and La Prairie Inc. shall be jointly and severally liable for all commitments under this agreement.

8.2 Armin Mattli and the corporations owned by him listed on page 1 shall be jointly and severally liable for all commitments under this agreement.

8.3 This agreement shall be applicable worldwide.

8.4 The rights of LP under the present agreement may also be asserted by an affiliated company as long as it is controlled in the same way as LP. This agreement shall also be binding on AM's and LP's successors in title.

## 9. Applicable law

This agreement is governed by Swiss law.

## 10. Disputes

10.1 In case of disagreement, the parties hereto shall try to establish an amicable solution before initiating any legal proceedings. Before initiating any proceedings, the other party shall be notified in writing, indicating an adequate deadline for participating in a meeting or for remedying any complaints.

10.2 Any controversy arising from this agreement on which the parties are unable to come to an amicable solution shall be settled by an arbitral tribunal consisting of three arbitrators with seat in Zurich under the exclusion of the ordinary courts. For the proceedings the Zurich code of civil procedure shall apply.

Date: June 2, 1995

Laboratoires La Prairie S.A.                                  Armin Mattli

(signed by)                                                            (signed by)
as authorized attorney                                          as authorized attorney

La Prairie Inc.

(signed by)
as authorized attorney