# EXHIBIT D

**DECLARATION UNDER 28 U.S.C. § 1746 of Salomé Hangartner**

1.      I am a citizen of the country of Switzerland and am over 18 years of age.  I am not a party to this action.

2.      I am a professional translator.  I am self-employed with over 40 years of experience in translating documents.  I have supplied translation services to business organizations, governmental authorities, and courts in Switzerland and the USA.

3.      I am qualified to translate documents from German to English.  I have 42 years of experience translating German to English.  I am accredited by the Zurich Obergericht [higher and appellate court] for German to English translation.

4.      Attached hereto as Exhibit A is a true, accurate and complete English translation of the German-language document "Abschreibungsbeschluss vom 22. April 2008 (Resolution on the final closing of the arbitral procedure)," attached hereto as Exhibit B.  I was responsible for the translation of this document.

5.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and ability.

Executed this 17th day of June, 2008

*S. de Hangartner*
Salomé Hangartner

Final closing resolution (translation from German)
(Abschreibungsbeschluss)
of April 22, 2008

# THE AD-HOC COURT OF ARBITRATION

**Armin Mattli, Clinique La Prairie et al.**
**vs. Laboratoires La Prairie SA und La Prairie Inc.**

### made up of

**DR. BERNHARD F. MEYER**
MME - MEYER MÜLLER ECKERT PARTNER
KREUZSTRASSE 42
CH-8008 ZURICH/SWITZERLAND
TEL. +41 44 254 99 66
FAX +41 44 254 99 60
bernhard.meyer@mme-law.ch

### CHAIR

| | |
|---|---|
| **PROF. DR. PETER NOBEL** | **DR. MAGDA STREULI-YOUSSEF** |
| NOBEL & HUG RECHTSANWÄLTE | WALDER WYSS & PARTNER |
| DUFOURSTRASSE 29 | RECHTSANWÄLTE |
| POSTFACH 1372 | SEEFELDSTRASSE 123 |
| CH-8032 ZÜRICH | CH-8034 ZÜRICH |
| TEL. +41 44 262 22 12 | TEL. +41 44 498 98 98 |
| FAX. +41 44 262 00 92 | FAX. +41 44 498 98 99 |
| peter.nobel@nobel-hug.ch | mstreuli@wwp.ch |
| **COARBITRATOR** | **COARBITRATOR** |

### found on April 22, 2008

### in re

| | |
|---|---|
| 1. **Armin Mattli**, CH-1815 Clarens, | 1. **Laboratoires La Prairie S.A.**, CH-1815 Clarens |
| 2. **Clinique La Prairie S.A.**, CH-1815 Clarens | 2. **La Prairie Inc.**, New York, U.S.A. |
| 3. **CT Holding**, CH-2000 Neuchâtel | |

| Claimants | Respondents |
|---|---|
| all represented by | represented by |
| **Herrn RA Pierre Schifferli**, Schifferli Rechtsanwälte, | **Rechtsanwälte Dr. Martin Ammann und** |
| 8 Avenue Jules-Crosnier, CH-1206 Genève, | **Dr. Marcel Lustenberger**, Meyer Lustenberger |
| Tel. +41 22 839 88 50, Fax +41 22 839 88 51 | Rechtsanwälte, Forchstrasse 452, CH-8032 Zürich, |
| ps@schifferlilaw.ch | Tel. +41 44 396 91 91, Fax +41 44 396 91 92 |
| | martin.ammann@ml-law.ch |
| und | marcel.lustenberger@ml-law.ch |
| **Herrn RA Dr. Alexander Faber**, Neupert & Partner, | |
| Dufourstrasse 58, CH-8702 Zollikon-Zürich, | |
| Tel. +41 44 396 80 80, Fax +41 44 396 80 88 | |
| faber@nplaw.ch | |

Final closing resolution                          2 | 11
of April 22, 2008

concerning

# Claim

### A)   Background of the litigation

The parties in the present arbitration procedure are (1) Armin Mattli, (2) Clinique la Prairie S.A., and (3) CT-Holding S.A. as Claimants, as well as (1) Laboratoires La Prairie S.A. and (2) La Prairie Inc. as Respondents.

The background of the litigation is the delimitation of the areas of activity of the three Claimants and the two Respondents according to an Agreement dated June 2, 1995, in particular also with regard to the use of their respective trademarks.

The parties have proceeded with an ad-hoc arbitral procedure before a court of arbitration of three arbitrators in Zurich, Switzerland. The procedure was carried out in accordance with the provisions of the Zurich Code of Civil Procedure (ZPO).

### B)   Request for legal remedy of the parties

### 1.   Claimants' request for legal remedy

In their bill of indictment dated November 5, 2007 (p. 2 ff.), the Claimants raise the following requests for legal remedy:

> *"1.   That it be ascertained that the respondents have violated the provisions of the Agreement of 2 June 1995 concluded between the parties and are acting unlawfully by doing the following, either themselves or via third parties*
>
> > *1.1   by using the designation (name, brand, style, trade name or device [enseigne]) "La Prairie" or a designation derived from it or a similar name*
> >
> > > *(i)   providing services or assisting in having such services provided in spas, hotel spas, fitness and wellness centers, beauty parlors or in any other establishment or operation in the area of restitution, maintaining, and fostering health and the physical and mental well-being, including medical and paramedical services, of health consultation,*

*detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

(ii)    *(providing) establishments in the area of restitution, maintaining and fostering health and physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming-pools) and rooms for relaxing to consumers, or assisting in having such establishments and equipment provided to them;*

1.2    *by using the device mark of the old Clinique La Prairie in the following or a derivative or similar representation*


(device mark)


*or assisting in having it used for*

(i)    *services in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

(ii)    *installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

Final closing resolution                            4 | 11
of April 22, 2008

    1.3   *by establishing a direct or indirect tie (or by assisting in establishing this tie) between Clinique La Prairie and the following services offered by the respondent or third parties*

        (i)   *services in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

        (ii)   *installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

2.   *That the respondents be enjoined from offering, either by themselves or through third parties*

    2.1   *by using the designation (name, brand, style, trade name or device [enseigne]) "La Prairie" or a designation derived from it or a similar name*

        (i)   *(to provide) services or assist in having such services provided in spas, hotel spas, fitness and wellness centers, beauty parlors or in other installations and operations in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

        (ii)   *installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing; or to assist in having them made available;*

Final closing resolution                          5 | 11
of April 22, 2008

2.2   from using the device mark of the old Clinique La Prairie in the following or a derivative or
      similar representation


      (device mark)




or to assist in having it used for

      (i)    Services in the area of restitution, maintaining and fostering health and the physical and
             mental well-being, inclusive of medical and paramedical services, of health
             consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of
             any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training,
             transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments,
             dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin
             analysis, water and steam treatments (thalassic therapy, hamams, saunas), image
             consulting and similar services, and/or

      (ii)   installations made available by the respondents or third parties in the field of restitution,
             maintaining and fostering health and the physical and mental well-being such as spas,
             wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas,
             hamams, swimming pools), beauty parlors and rooms for relaxing;


2.3   of establishing a direct or indirect tie (or being involved in establishing such a tie) between
      Clinique La Prairie and the following offered by the respondents or third parties:

      (i)    Services offered in the area of restitution, maintaining and fostering health and the
             physical and mental well-being, inclusive of medical and paramedical services, of
             health consultations, detoxification, purification and weight-reducing cures, of
             physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of
             mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging
             treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic

Final closing resolution                                6 | 11
of April 22, 2008

*drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

(ii) *installations made available in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

3. *That the respondents be held jointly and severally liable to restitute to claimant 2 the profits in an amount to be set by a court of arbitration, but minimum CHF 10,000,000.00, plus interest at 5% p.a. as of the 06 November 2007 which the respondents as well as the companies being controlled by the same entity as the respondent have achieved overall since 01 July 2002 by their unlawful actions violating the Agreement of 02. June 1995, which are to be ascertained and enjoined in accordance with items 1 and 2 of the request for legal remedy.*

## REQUEST FOR ORDERING PRECAUTIONARY MEASURES

4. *That the respondents, for the purposes of precautionary measures, be enjoined for the duration of the present arbitration procedure until its definite, final settlement, and at once from themselves or via third parties*

4.1 *newly using, or assisting that it be used, the designation (name, brand, style, trade mark or enseigne) "La Prairie" or any designation derived thereof or similar to it for*

(i) *Services provided in spas, hotel spas, fitness and wellness centers, beauty parlors, or in any other establishments and operation by the respondents or by third parties in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

(ii) *installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

Final closing resolution                    7 | 11
of April 22, 2008

4.2    *to newly use the device mark of the old Clinique La Prairie in the following representation or*
     *one derived from it or a similar representation*

    (device mark)

    *or to assist in having it used for*

    (i)   *services in the area of restitution, maintaining and fostering health and the physical and*
        *mental well-being, inclusive of medical and paramedical services, of health*
        *consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of*
        *any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training,*
        *transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments,*
        *dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin*
        *analysis, water and steam treatments (thalassic therapy, hamams, saunas), image*
        *consulting and similar services, and/or*

    (ii)  *installations made available by the respondents or third parties in the field of restitution,*
        *maintaining and fostering health and the physical and mental well-being such as spas,*
        *wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas,*
        *hamams, swimming pools), beauty parlors and rooms for relaxing;*

4.3    *newly establish a direct or indirect link (or to assist in the establishment of such a link)*
     *between Clinique La Prairie and the following offered by the respondents or third parties*

    (i)   *services in the area of restitution, maintaining and fostering health and the physical and*
        *mental well-being, inclusive of medical and paramedical services, of health*
        *consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of*
        *any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training,*
        *transcendental meditation, fitness, yoga, anti-aging treatments, dermatology, beauty,*
        *anti-stress, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water*
        *and steam treatments (thalassic therapy, hamams, saunas), image consulting and*
        *similar services, and/or*

Final closing resolution                                    8 | 11
of April 22, 2008

> (ii) *installations made available (by the respondents or third parties) in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

Everything with consequential costs and compensation to be imputed to and with joint and several liability of the respondents."

## 2. Respondents' request for legal remedy

In their statement of defense and counterclaim of December 19, 2007 (p. 3 ff.), the Respondents file the following request for legal remedy

> "1.  *That the Claimants' request for arbitration be dismissed in full;*
> 2.  *That the Claimants' request for ordering precautionary measures be dismissed in full;*
> 3.  *All with consequential costs and compensation to be imputed to and with joint and several liability of the Claimants;"*

At the same time, the Respondents filed the following counterclaim:

> "1.  *That the Claimants be forbidden to market and advertise, either themselves or through third parties, any cosmetic products with reference to the trademark LA PRAIRIE, or to any trademark containing the brand name LA PRAIRIE, in particular the trademark CLINIQUE LA PRAIRIE;*
>
> 2.  *All with consequential costs and compensation to be imputed to and with joint and several liability of the Claimants."*

## C)  Chronology of the procedure

*[Remark of the translator:*

*This section only contains the chronology of the procedural steps in the arbitration procedure and is therefore not translated.]*

Final closing resolution                     9 | 11
of April 22, 2008

**D)    Place of jurisdiction / applicable law**

Applicability of the arbitration clause and the competence of the court of arbitration agreed in Art.
10.2 of the Agreement dated June 2, 1995 was not in dispute:

> *"Disputes arising from this Agreement on which the parties are unable to come to terms shall be
> submitted for an award to a court of arbitration of three with domicile in Zurich, without recourse to
> formal legal proceedings. The procedure shall be based on the Zurich Code of Civil Procedure." (The
> German original is transcribed verbatim, with possible typographical errors.)*

(Remainder of the page empty on purpose)

Final closing resolution                    10 | 11
of April 22, 2008

Against this backdrop, and in application of § 188 sections 2 & 3 and § 191 section 2 ZPO,

as well as in agreement with the parties, on today's date the court of arbitration issues the
following

## Resolution on the final closing of the arbitral procedure:

1) At the conciliation hearing on April 8, 2008, the parties agreed on and signed the arrange-
   ment as described in Enclosure 1. The arrangement is admissible and clear (§ 188 III
   ZPO).

2) Based on this arrangement, the parties are obliged to meet all obligations defined in Enclo-
   sure 1 and accepted by them in each case. The present resolution on the final closing of
   the arbitration procedure, inclusive of the arrangement in Enclosure 1, is final and binding
   on both parties.

3) Except for the rights and obligations assumed in the arrangement, all claims and counter-
   claims are to be deemed as withdrawn with prejudice and the arbitral procedure is herewith
   terminated.

4) The arbitration fees to be paid by the parties are calculated as follows:

   | | |
   |---|---:|
   | - arbitration fees (inclusive of cash disbursements and keeper of the records) | CHF 500,000.- |
   | - less prepaid cost advances | - CHF 200,000.- |
   | - amount not covered by cost advances | CHF 300,000.- |

The parties shall pay the arbitration fee by moieties. The parties are bound to pay in the
remaining amount of CHF 150,000.- each within 30 days to the following account:

**Dr. Bernhard F. Meyer**
**Account No. 1.648.130-135**
**Swift Code RAHNCHZZ**
**Clearing No. 8779**
**IBAN Code CH7608779001648130135**
**Caption: AM/LP**
**With Rahn & Bodmer Banquiers**
**Talstrasse 15, 8001 Zurich/Switzerland**

Final closing resolution                    11 | 11
of April 22, 2008

5) Note is taken of the waiver of procedural compensations and also of the fact that each party will bear its own party's costs.

6) This resolution on the formal closing of the arbitration procedure shall initially be transmitted by facsimile transmission to the parties' attorneys and thereafter by mail as follows:

- to the attorneys of the claimants and the respondents, each in duplicate (one for the attorneys and one for the attention of their clients), by registered mail with return receipt;
- to the two coarbitrators, by simple first-class mail;
- to the secretary of the court of arbitration in duplicate for the secretary and to the attention of the chair.

Issued in 8 copies

THE COURT OF ARBITRATION:

| | | |
|---|---|---|
| _____ | _____ | _____ |
| DR. MAGDA STREULI-YOUSSEF | DR. BERNHARD. F. MEYER | PROF. DR. RER. PUBL. PETER NOBEL |
| COARBITRATOR | CHAIR | COARBITRATOR |

Abschreibungsbeschluss
vom
22. April 2008

# DAS AD-HOC SCHIEDSGERICHT

**Armin Mattli, Clinique La Prairie et al.**
**vs. Laboratoires La Prairie SA und La Prairie Inc.**

**bestehend aus**

DR. BERNHARD F. MEYER
MME - MEYER MÜLLER ECKERT PARTNER
KREUZSTRASSE 42
CH-8008 ZURICH/SWITZERLAND
TEL. +41 44 254 99 66
FAX +41 44 254 99 60
bernhard.meyer@mme-law.ch

**VORSITZENDER**

| | |
|---|---|
| PROF. DR. PETER NOBEL | DR. MAGDA STREULI-YOUSSEF |
| NOBEL & HUG RECHTSANWÄLTE | WALDER WYSS & PARTNER |
| DUFOURSTRASSE 29 | RECHTSANWÄLTE |
| POSTFACH 1372 | SEEFELDSTRASSE 123 |
| CH-8032 ZÜRICH | CH-8034 ZÜRICH |
| TEL. +41 44 262 22 12 | TEL. +41 44 498 98 98 |
| FAX. +41 44 262 00 92 | FAX. +41 44 498 98 99 |
| peter.nobel@nobel-hug.ch | mstreuli@wwp.ch |
| **MITSCHIEDSRICHTER** | **MITSCHIEDSRICHTERIN** |

**hat am 22. April 2008 in Sachen**

1. **Armin Mattli,** CH-1815 Clarens,
2. **Clinique La Prairie S.A.,** CH-1815 Clarens
3. **CT Holding,** CH-2000 Neuchâtel

1. **Laboratoires La Prairie S.A.,** CH-1815 Clarens
2. **La Prairie Inc.,** New York, U.S.A.

**Kläger**

alle vertreten durch

**Beklagte**

vertreten durch

**Herrn RA Pierre Schifferli,** Schifferli Rechtsanwälte,
8 Avenue Jules-Crosnier, CH-1206 Genève,
Tel. +41 22 839 88 50, Fax +41 22 839 88 51
ps@schifferlilaw.ch

und

**Herrn RA Dr. Alexander Faber,** Neupert & Partner,
Dufourstrasse 58, CH-8702 Zollikon-Zürich,
Tel. +41 44 396 80 80, Fax +41 44 396 80 88
faber@nplaw.ch

**Rechtsanwälte Dr. Martin Ammann und**
**Dr. Marcel Lustenberger,** Meyer Lustenberger
Rechtsanwälte, Forchstrasse 452, CH-8032 Zürich,
Tel. +41 44 396 91 91, Fax +41 44 396 91 92
martin.ammann@ml-law.ch
marcel.lustenberger@ml-law.ch

Abschreibungsbeschluss    2 | 13
vom
22. April 2008

betreffend

## Forderung

**festgestellt:**

## A)    Hintergrund des Streits

Die Parteien im vorliegenden Schiedsverfahren sind (1) Armin Mattli, (2) Clinique la Prairie S.A. und (3) CT-Holding S.A. als Kläger, sowie (1) Laboratoires La Prairie S.A. und (2) La Prairie, Inc. als Beklagte.

Hintergrund der Streitigkeit ist die Abgrenzung der Tätigkeitsbereiche der drei Kläger und der zwei Beklagten gemäss einer Vereinbarung vom 2. Juni 1995, insbesondere auch mit Bezug auf den Gebrauch ihrer jeweiligen Marken.

Die Parteien haben in Zürich, Schweiz, ein Ad-Hoc Schiedsverfahren vor einem Dreierschieds-gericht in Zürich abgewickelt. Das Verfahren wurde gemäss den Bestimmungen der Zürcherischen Zivilprozessordnung (ZPO) durchgeführt.

## B)    Rechtsbegehren der Parteien

## 1.    Rechtsbegehren der Kläger

Die Kläger stellten in ihrer Klageschrift vom 5. November 2007 (S. 2 ff.) folgende Rechtsbegehren:

> „1.    *Es sei festzustellen, dass die Beklagten gegen die Bestimmungen der zwischen den Par-teien geschlossenen Vereinbarung vom 2. Juni 1995 verstossen und widerrechtlich han-deln, indem sie selbst oder durch Dritte*
>
>    1.1    *unter oder durch Verwendung der Bezeichnung (Name, Marke, Firma, Geschäfts-bezeichnung oder Enseigne) „La Prairie" oder einer davon abgeleiteten oder ähn-lichen Bezeichnung*
>
>       (i)    *Dienstleistungen erbringen oder daran mitwirken, dass diese Dienstleistun-gen erbracht werden in Spas, Hotel Spas, Fitness- und Wellness-Centers, Schönheitssalons oder in anderen Einrichtungen und Betrieben dies auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesund-heit und des physischen und psychischen Wohlbefindens einschliesslich von medizinischen und paramedizinischen Leistungen, von Gesundheitsbe-ratung, Entgiftungs-, Entschlackungs- und Abmagerungskuren, von Physio-therapie, von jeder Form von Körpermassage, Shiatsu, Qi gong, Akupunk-*

Abschreibungsbeschluss                    3 | 13
vom
22. April 2008

> tur, von mentalem Training, transzendentaler Meditation, Fitness, Yoga, von
> Anti-stress-, Anti-Aging Behandlungen, Dermatologie, Schönheits- , Anti-
> Cellulitis- und UV-Behandlungen, Lymphdrainage, Hautanalyse, Wasser-
> und Dampfbehandlungen (Thalassotherapie, Hamam, Saunas), Image-
> Beratung und dergleichen mehr, und/oder

(ii)    Einrichtungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förde-
rung der Gesundheit und des physischen und psychischen Wohlbefindens
wie Spas, Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte,
Bäder (Saunas, Hamams, Schwimmbäder) und Räume zur Entspannung
den Konsumenten zur Verfügung stellen oder daran mitwirken, dass sie zu
deren Verfügung gestellt werden;

1.2    die Bildmarke der alten Clinique La Prairie in der folgenden oder in einer abgelei-
teten oder ähnlichen Darstellung

  

verwenden oder daran mitwirken, dass sie verwendet wird für

(i)    Dienstleistungen auf dem Gebiet der Wiederherstellung, Erhaltung und För-
derung der Gesundheit und des physischen und psychischen Wohlbefin-
dens einschliesslich von medizinischen und paramedizinischen Leistungen,
von Gesundheitsberatung, Entgiftungs-, Entschlackungs- und Abmage-
rungskuren, von Physiotherapie, von jeder Form von Körpermassage, Shi-
atsu, Qi gong, Akupunktur, von mentalem Training, transzendentaler Medi-
tation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlungen, Dermato-
logie, Schönheits-, Anti-Cellulitis- und UV-Behandlungen, Lymphdrainage,
Hautanalyse, Wasser- und Dampfbehandlungen (Thalassotherapie, Ha-
mam, Saunas), Image-Beratung und dergleichen und / oder

(ii)    von den Beklagten oder von Dritten zur Verfügung gestellten Einrichtungen
auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Ge-
sundheit und des physischen und psychischen Wohlbefindens wie Spas,
Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte, Bäder
(Saunas, Hamams, Schwimmbäder), Schönheitssalons und Räume zur
Entspannung;

Abschreibungsbeschluss                          4 | 13
vom
22. April 2008

  1.3 *eine direkte oder indirekte Verbindung herstellen (oder bei der Herstellung dieser Verbindung mitwirken) zwischen der Clinique La Prairie und von den Beklagten oder Dritten*

    (i) *angebotenen Dienstleistungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens einschliesslich von medizinischen und paramedizinischen Leistungen, von Gesundheitsberatung, Entgiftungs-, Entschlackungs- und Abmagerungskuren, von Physiotherapie, von jeder Form von Körpermassage, Shiatsu, Qi gong, Akupunktur, von mentalem Training, transzendentaler Meditation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlungen, Dermatologie, Schönheits-, Anti-Cellulitis- und UV-Behandlungen, Lymphdrainage, Hautanalyse, Wasser- und Dampfbehandlungen (Thalassotherapie, Hamam, Saunas), Image-Beratung und dergleichen und / oder*

    (ii) *zur Verfügung gestellten Einrichtungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens wie Spas, Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte, Bäder (Saunas, Hamams, Schwimmbäder), Schönheitssalons und Räume zur Entspannung;*

 2. *Es sei den Beklagten zu verbieten, selbst oder durch Dritte*

  2.1 *unter oder durch Verwendung der Bezeichnung (Name, Marke, Firma, Geschäftsbezeichnung oder Enseigne) „La Prairie" oder einer davon abgeleiteten oder ähnlichen Bezeichnung*

    (i) *Dienstleistungen zu erbringen oder daran mitzuwirken, dass diese Dienstleistungen erbracht werden in Spas, Hotel Spas, Fitness- und Wellness-Centers, Schönheitssalons oder in anderen Einrichtungen und Betrieben dies auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens einschliesslich von medizinischen und paramedizinischen Leistungen, von Gesundheitsberatung, Entgiftungs-, Entschlackungs- und Abmagerungskuren, von Physiotherapie, von jeder Form von Körpermassage, Shiatsu, Qi gong, Akupunktur, von mentalem Training, transzendentaler Meditation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlungen, Dermatologie, Schönheits- , Anti-Cellulitis- und UV-Behandlungen, Lymphdrainage, Hautanalyse, Wasser- und Dampfbehandlungen (Thalassotherapie, Hamam, Saunas), Image-Beratung und dergleichen mehr, und/oder*

    (ii) *Einrichtungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens wie Spas, Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte, Bäder (Saunas, Hamams, Schwimmbäder) und Räume zur Entspannung*

Abschreibungsbeschluss
vom
22. April 2008

5 | 13

den Konsumenten zur Verfügung zu stellen oder daran mitzuwirken, dass
sie zu deren Verfügung gestellt werden;

2.2     die Bildmarke der alten Clinique La Prairie in der folgenden oder in einer abgelei-
teten oder ähnlichen Darstellung

 

zu verwenden oder daran mitzuwirken, dass sie verwendet wird für

(i)     Dienstleistungen auf dem Gebiet der Wiederherstellung, Erhaltung und För-
derung der Gesundheit und des physischen und psychischen Wohlbefin-
dens einschliesslich von medizinischen und paramedizinischen Leistungen,
von Gesundheitsberatung, Entgiftungs-, Entschlackungs- und Abmage-
rungskuren, von Physiotherapie, von jeder Form von Körpermassage, Shi-
atsu, Qi gong, Akupunktur, von mentalem Training, transzendentaler Medi-
tation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlungen, Dermato-
logie, Schönheits-, Anti-Cellulitis- und UV-Behandlungen, Lymphdrainage,
Hautanalyse, Wasser- und Dampfbehandlungen (Thalassotherapie, Ha-
mam, Saunas), Image-Beratung und dergleichen und / oder

(ii)     von den Beklagten oder von Dritten zur Verfügung gestellten Einrichtungen
auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Ge-
sundheit und des physischen und psychischen Wohlbefindens wie Spas,
Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte, Bäder
(Saunas, Hamams, Schwimmbäder), Schönheitssalons und Räume zur
Entspannung;

2.3     Eine direkte oder indirekte Verbindung herzustellen (oder bei der Herstellung die-
ser Verbindung mitzuwirken) zwischen der Clinique La Prairie und von den Be-
klagten oder Dritten

(i)     angebotenen Dienstleistungen auf dem Gebiet der Wiederherstellung, Er-
haltung und Förderung der Gesundheit und des physischen und psychi-
schen Wohlbefindens einschliesslich von medizinischen und paramedizini-
schen Leistungen, von Gesundheitsberatung, Entgiftungs-, Entschlackungs-
und Abmagerungskuren, von Physiotherapie, von jeder Form von Körper-
massage, Shiatsu, Qi gong, Akupunktur, von mentalem Training, transzen-
dentaler Meditation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlun-

gen, Dermatologie, Schönheits-, Anti-Cellulitis- und UV-Behandlungen,
Lymphdrainage, Hautanalyse, Wasser- und Dampfbehandlungen (Thalas-
sotherapie, Hamam, Saunas), Image-Beratung und dergleichen und / oder

(ii)     zur Verfügung gestellten Einrichtungen auf dem Gebiet der Wiederherstel-
         lung, Erhaltung und Förderung der Gesundheit und des physischen und
         psychischen Wohlbefindens wie Spas, Wellness-Centers, Fitness- und
         Gymnastikräume sowie -Geräte, Bäder (Saunas, Hamams, Schwimmbä-
         der), Schönheitssalons und Räume zur Entspannung;

3.     Es seien die Beklagten solidarisch zu verpflichten, der Klägerin 2 den Gewinn in einer
       vom Schiedsgericht festzusetzenden Höhe von mindestens aber CHF 10'000'000.00 zu-
       züglich Zinsen zu 5% p.a. ab 06.11.2007 herauszugeben, den die Beklagten sowie unter
       der gleichen Kontrolle wie die Beklagte stehende Unternehmen ab 01. Juli 2002 insge-
       samt durch die gegen die Vereinbarung vom 02.06.1995 verstossenden und widerrechtli-
       chen Handlungen, welche gemäss den Rechtsbegehren in Ziff. 1 und Ziff. 2 festzustellen
       und zu verbieten sind, erzielt haben.

### BEGEHREN UM ANORDNUNG VORSORGLICHER MASSNAHMEN

4.     Im Sinne von vorsorglichen Massnahmen sei den Beklagten für die Dauer des vorliegen-
       den Schiedsverfahrens bis zu dessen definitiven, rechtskräftigen Erledigung zu verbieten,
       ab sofort selbst oder durch Dritte

4.1     neu die Bezeichnung (Name, Marke, Firma, Geschäftsbezeichnung oder En-
        seigne) „La Prairie" oder eine davon abgeleitete oder ähnliche Bezeichnung zu
        verwenden oder daran mitzuwirken, dass sie verwendet wird für

(i)      Dienstleistungen, welche in Spas, Hotel Spas, Fitness- und Wellness-
         Centers, Schönheitssalons oder in anderen Einrichtungen und Betrieben
         von den Beklagten oder von Dritten erbracht werden, dies auf dem Gebiet
         der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des
         physischen und psychischen Wohlbefindens einschliesslich von medizini-
         schen und paramedizinischen Leistungen, von Gesundheitsberatung, Ent-
         giftungs-, Entschlackungs- und Abmagerungskuren, von Physiotherapie,
         von jeder Form von Körpermassage, Shiatsu, Qi gong, Akupunktur, von
         mentalem Training, transzendentaler Meditation, Fitness, Yoga, von Anti-
         stress-, Anti-Aging Behandlungen, Dermatologie, Schönheits-, Anti-
         Cellulitis- und UV-Behandlungen, Lymphdrainage, Hautanalyse, Wasser-
         und Dampfbehandlungen (Thalassotherapie, Hamam, Saunas), Image-
         Beratung und dergleichen mehr, und/oder

(ii)     Einrichtungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förde-
         rung der Gesundheit und des physischen und psychischen Wohlbefindens

Abschreibungsbeschluss
vom
22. April 2008

7 | 13

wie Spas, Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte, Bäder (Saunas, Hamams, Schwimmbäder) und Räume zur Entspannung;

4.2  neu die Bildmarke der alten Clinique La Prairie in der folgenden oder in einer abgeleiteten oder ähnlichen Darstellung

  

zu verwenden oder daran mitzuwirken, dass sie verwendet wird für

(i)  Dienstleistungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens einschliesslich von medizinischen und paramedizinischen Leistungen, von Gesundheitsberatung, Entgiftungs-, Entschlackungs- und Abmagerungskuren, von Physiotherapie, von jeder Form von Körpermassage, Shiatsu, Qi gong, Akupunktur, von mentalem Training, transzendentaler Meditation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlungen, Dermatologie, Schönheits-, Anti-Cellulitis- und UV-Behandlungen, Lymphdrainage, Hautanalyse, Wasser- und Dampfbehandlungen (Thalassotherapie, Hamam, Saunas), Image-Beratung und dergleichen und / oder

(ii)  von den Beklagten oder Dritten zur Verfügung gestellten Einrichtungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens wie Spas, Wellness-Centers, Fitness- und Gymnastikräume sowie -Geräte, Bäder (Saunas, Hamams, Schwimmbäder), Schönheitssalons und Räume zur Entspannung;

4.3  neu eine direkte oder indirekte Verbindung herzustellen (oder bei der Herstellung dieser Verbindung mitzuwirken) zwischen der Clinique La Prairie und von den Beklagten oder Dritten angebotenen

(i)  Dienstleistungen auf dem Gebiet der Wiederherstellung, Erhaltung und Förderung der Gesundheit und des physischen und psychischen Wohlbefindens einschliesslich von medizinischen und paramedizinischen Leistungen, von Gesundheitsberatung, Entgiftungs-, Entschlackungs- und Abmagerungskuren, von Physiotherapie, von jeder Form von Körpermassage, Shiatsu, Qi gong, Akupunktur, von mentalem Training, transzendentaler Medi-

Abschreibungsbeschluss                     8 | 13
vom
22. April 2008

> tation, Fitness, Yoga, von Anti-stress-, Anti-Aging Behandlungen, Dermato-
> logie, Schönheits-, Anti-Cellulitis- und UV-Behandlungen, Lymphdrainage,
> Hautanalyse, Wasser- und Dampfbehandlungen (Thalassotherapie, Ha-
> mam, Saunas), Image-Beratung und dergleichen und / oder

> (ii)   zur Verfügung gestellten Einrichtungen auf dem Gebiet der Wiederherstel-
> lung, Erhaltung und Förderung der Gesundheit und des physischen und
> psychischen Wohlbefindens wie Spas, Wellness-Centers, Fitness- und
> Gymnastikräume sowie -Geräte, Bäder (Saunas, Hamams, Schwimmbä-
> der), Schönheitssalons und Räume zur Entspannung.

Alles unter Kosten- und Entschädigungsfolgen zu Lasten und unter solidarischer Haftung der
Beklagten."

## 2.     Rechtsbegehren der Beklagten

Die Beklagten stellten in ihrer Klageantwort und Widerklage vom 19. Dezember 2007 (S. 3 ff.)
folgende Rechtsbegehren:

> „1.    Es sei die Schiedsklage der Kläger vollumfänglich abzuweisen;
> 2.    Es sei das Begehren der Kläger um Anordnung vorsorglicher Massnahmen vollumfänglich ab-
> zuweisen;
> 3.    Alles unter Kosten- und Entschädigungsfolgen zu Lasten der Kläger unter solidarischer
> Haftung;"

Die Beklagten reichten gleichzeitig folgende Widerklage ein:

> „1.    Es sei den Klägern zu verbieten, selber oder durch Dritte kosmetische Produkte unter Bezug-
> nahme auf die Marke LA PRAIRIE oder auf eine die Marke LA PRAIRIE enthaltende Marke, ins-
> besondere die Marke CLINIQUE LA PRAIRIE, in den Verkehr zu bringen und zu bewerben;

> 2.    Alles unter Kosten- und Entschädigungsfolgen zu Lasten der Kläger unter solidarischer Haf-
> tung."

## C)     Verfahrenschronologie

Im Folgenden wir die Verfahrenschronologie kurz zusammengefasst:

| Datum | Beschreibung |
|---|---|
| 26.04.2007 | Mit Schreiben vom 26. April 2007 machen die Kläger gegenüber den Beklagten eine Vertragsverletzung geltend und äussern die Absicht, das in Art. 10.2 der Vereinbarung vom 2. Juni 1995 vorgesehene |

Abschreibungsbeschluss
vom
22. April 2008

9 | 13

| | |
|---|---|
| | Schiedsverfahren vor einem Dreierschiedsgericht mit Sitz in Zürich einzuleiten. |
| 14.05.2007 | Die Beklagten bestreiten die Vorwürfe der Vertragsverletzung in einem Antwortschreiben an die Kläger, bestätigen hingegen die Anwendbarkeit der Schiedsklausel von Art. 10.2 der Vereinbarung. |
| 14.05.2007 | Die Kläger ernennen Prof. Dr. Peter Nobel als Parteischiedsrichter. |
| 25.06.2007 | Die Beklagten ernennen Dr. Magda Streuli-Youssef als Parteischiedsrichterin. |
| 22.08.2007 | Die Parteischiedsrichter einigen sich auf Dr. Bernhard F. Meyer als Vorsitzenden, der die Ernennung akzeptiert. |
| 03.09.2007 | Das Schiedsgericht erlässt mit Verfügung Nr. 1/07 den Konstituierungsbeschluss und legt das weitere Verfahren fest. Im Konstituierungsbeschluss wird den Klägern Frist bis 15. Oktober 2007 angesetzt, um eine Klageschrift einzureichen. Den Beklagten wird Frist bis 28. November 2007 gewährt, um eine Klageantwort einzureichen. |
| 01.10.2007 | Die Kläger verlangen Fristerstreckung zur Einreichung der Klageschrift bis am 5. November 2007. |
| 02.10.2007 | Der Vorsitzende gewährt den Klägern die Fristerstreckung und verschiebt den Termin der Beklagten zur Einreichung der Klageantwort entsprechend auf den 19. Dezember 2007. |
| 05.11.2007 | Die Kläger reichen eine vollständige Klageschrift ein, beantragen unter anderem die Anordnung von vorsorglichen Massnahmen und stellen ein Editionsbegehren. |
| 12.11.2007 | Das Schiedsgericht räumt den Beklagten Gelegenheit ein, bis 26. November 2007 zum klägerischen Begehren um vorsorgliche Massnahmen Stellung zu nehmen. |
| 22.11.2007 | Die Beklagten beantragen eine Fristerstreckung bis zum 19. Dezember 2007. |
| 23.11.2007 | Die Kläger reichen unaufgefordert eine weitere Stellungnahme zur Frage der vorsorglichen Massnahmen ein. |
| 26.11.2007 | Das Schiedsgericht gibt den Beklagten aus Gründen der Gleichbehandlung nochmals Gelegenheit, die klägerische Stellungnahme vom 23. November 2007 bis zum 3. Dezember 2007 zu beantworten. |
| 12.12.2007 | Das Schiedsgericht gewährt den Beklagten eine Fristerstreckung bis zum 19. Dezember 2007, um zum klägerischen Begehren um Anordnung vorsorglicher Massnahmen Stellung zu nehmen. |
| 19.12.2007 | Die Beklagten reichen eine vollständige Klageantwort ein, beantragen |

Abschreibungsbeschluss                    10 | 13
vom
22. April 2008

| | |
|---|---|
| | die vollumfängliche Abweisung der Klage und des Begehrens um Anordnung vorsorglicher Massnahmen, und sie erheben gleichzeitig eine Widerklage. |
| 25.01.2008 | Am 25. Januar 2008 findet eine Referentenaudienz und erste Vergleichsverhandlung vor dem Schiedsgericht statt, nachdem das Schiedsgericht vorgängig und im Einvernehmen mit den Parteien seine vorläufige Ansicht zu wesentlichen Streitpunkten detailliert geäussert hat. Anlässlich dieser Verhandlung konnte zwischen den Parteien keine Einigung erzielt werden. Die Parteien kommen indes überein, dem Schiedsgericht eine „Inventarliste" mit den ihnen wichtig scheinenden Punkten für eine Vergleichsvereinbarung einreichen. Das Schiedsgericht erklärt sich bereit, den Parteien anschliessend, in Berücksichtigung dieser Inventarliste, einen schriftlichen Vergleichsvorschlag zu unterbreiten, der in einer neuen Vergleichsrunde diskutiert werden soll. |
| 29.01.2008 | Das Schiedsgericht erlässt die Verfügung No. 2/08 und verpflichtet die Beklagten zur Edition eines Teils der von den Klägern verlangten Unterlagen. Für die Zeit der Vergleichsanstrengungen wird der Vollzug der Aktenedition indessen ausgesetzt. |
| 30.01.2008 | Das Schiedsgericht erlässt Verfügung No. 3/08. In dieser Verfügung legt das Schiedsgericht in einem mit den Parteien abgesprochenen Provisorischen Zeitplan das weitere Verfahren fest und lädt die Parteien zu einer zweiten Vergleichsrunde am 28. Februar 2008 in Zürich vor. |
| 01.02.2008 | Beide Parteien reichen die erwähnte „Inventarliste" ein, welche Basis für die Ausarbeitung einer Vergleichsvereinbarung durch das Schiedsgericht bildet. |
| 22.02.2008 | Das Schiedsgericht unterbreitet den Parteien einen ausformulierten Vorschlag für eine Vergleichsvereinbarung, die unter Berücksichtigung der „Inventarlisten" der Parteien ausgearbeitet wurde. |
| 27.02.2008 | Beide Parteien reichen eine schriftliche Stellungnahme zum Vergleichsvorschlag des Schiedsgerichts ein. |
| 28.01.2008 | Am 28. Februar 2008 findet die zweite Vergleichsrunde vor dem Schiedsgericht in Zürich statt. Anlässlich dieser Vergleichsverhandlung stellte sich heraus, dass die Vergleichsgespräche mehr Zeit in Anspruch nehmen, so dass eine dritte Vergleichsrunde nötig wird. Im Einvernehmen mit den Parteien wird der 8. April 2008 für die dritte Vergleichsrunde in Zürich reserviert. |
| 05.03.2008 | Das Schiedsgericht erlässt Verfügung No. 4/08. In Anbetracht der am 8. April 2008 anberaumten dritten Vergleichsrunde nimmt es den Parteien die Frist zur Aktenedition und die Frist zur Kostenvorschusszahlung einstweilen ab. Das Schiedsgericht nimmt den Klägern überdies die Frist zur Einreichung der Replik und |

Abschreibungsbeschluss                    11 | 13
vom
22. April 2008

|            | Widerklageantwort vom 25. März 2008 ab. |
|------------|------------------------------------------|
| 08.04.2008 | Am 8. April 2008 findet eine dritte Vergleichsverhandlung vor dem Schiedsgericht in Zürich statt. Sie ist erfolgreich und die Parteien unterschreiben gleichentags die diesem Abschreibungsbeschluss als <u>Beilage 1</u> angefügte Vergleichsvereinbarung. Gestützt darauf wird das Ad-Hoc Schiedsgerichtsverfahren abgeschrieben. |

**D)    Gerichtsstand / Anwendbares Recht**

Die Anwendbarkeit der in Art. 10.2 der Vereinbarung vom 2. Juni 1995 festgehaltenen
Schiedsklausel und der Zuständigkeit des Schiedsgerichts war nicht streitig:

> *„Streitigkeiten aus diesem Vertrag, über welche sich die Parteien nicht zu einigen vermögen, werden unter Ausschluss der ordentlichen Gericht einem Dreierschiedsgericht mit Sitz in Zürich zur Entscheidung unterbreitet. Für das Verfahren gilt die Zürcherische Zivilprozessordnung."* (wörtliches Transkript, einschliesslich allfällige Schreibfehler)

(Rest der Seite absichtlich leer)

Abschreibungsbeschluss                    12 | 13
vom
22. April 2008


Vor diesem Hintergrund, und in Anwendung von §188 Abs. 2 & 3 und §191 Abs. 2 ZPO,

sowie im Einverständnis mit den Parteien erlässt das Schiedsgericht heute den folgenden

# Abschreibungsbeschluss:

1) Die Parteien haben an der Vergleichsverhandlung vom 8. April 2008 in Zürich den in <u>Beilage 1</u> wiedergegebenen Vergleich abgeschlossen und unterzeichnet. Der Vergleich ist zulässig und klar (§ 188 III ZPO).

2) Gestützt auf diesen Vergleich werden die Parteien verpflichtet, sämtliche in <u>Beilage 1</u> definierten und von Ihnen jeweils übernommenen Pflichten zu erfüllen. Der vorliegende Abschreibungsbeschluss, inklusive Vergleich in <u>Beilage 1</u>, sind endgültig und verbindlich für beide Parteien.

3) Mit Ausnahme der im Vergleich übernommenen Rechte und Pflichten gelten sämtliche Klagen und Widerklagen mit präjudizieller Wirkung als zurückgezogen und das Schiedsverfahren ist beendet.

4) Die von den Parteien zu bezahlende Schiedsgebühr berechnet sich wie folgt:

- Schiedsgebühr (inklusive Barauslagen und Gerichtssekretärin)        CHF 500'000.-
- Abzüglich bereits geleistete Kostenvorschüsse                        - CHF 200'000.-

- Nicht durch die Kostenvorschüsse gedeckter Betrag                    CHF 300'000.-

Die Parteien tragen die Schiedsgebühr je zur Hälfte. Die Parteien sind verpflichtet, den noch offenen Betrag von je CHF 150'000.- innert 30 Tagen auf das folgende Konto einzuzahlen:

**Dr. Bernhard F. Meyer**
**Konto-Nummer 1.648.130-135**
**Swift Code RAHNCHZZ**
**Clearing No. 8779**
**IBAN-Code CH7608779001648130135**
**Rubrik: AM/LP**
**Bei Rahn & Bodmer Banquiers**
**Talstrasse 15, 8001 Zürich/Schweiz**

Abschreibungsbeschluss                    13 | 13
vom
22. April 2008

5)  Der Verzicht auf Prozessentschädigungen wird vorgemerkt, ebenso der Umstand, dass jede
    Partei ihre Parteikosten selbst trägt.

6)  Dieser Abschreibungsbeschluss wird den Parteivertretern vorab per Fax zugestellt und
    danach per Post wie folgt versandt:

    •   an die Parteivertreter der Kläger und der Beklagten je im Doppel (für sich und zu Handen
        ihrer Klientschaft), Einschreiben gegen Rückschein;

    •   an die beiden Mitschiedrichter, per einfacher Briefpost;

    •   an die Sekretärin des Schiedsgerichts im Doppel für sich und zuhanden des
        Vorsitzenden.

                                                            Ausgefertigt in 8 Exemplaren

DAS SCHIEDSGERICHT:


PROF. DR. PETER NOBEL          DR. BERNHARD. F. MEYER          DR. MAGDA STREULI-YOUSSEF
MITSCHIEDSRICHTER                  VORSITZENDER                  MITSCHIEDSRICHTERIN

## Anhang zur Vereinbarung vom 2. Juni 1995

zwischen

**Laboratoires La Prairie S.A.**, CH-1815 Clarens,
**La Prairie Inc.**, 10019 New York, N.Y.

nachstehend gemeinsam als "LP" bezeichnet

vertreten durch Rechtsanwälte Dr. Martin Ammann und Dr. Marcel Lustenberger,
Meyer Lustenberger Rechtsanwälte, Forchstrasse 452, CH-8032 Zürich

und

**Armin Mattli**, c/o Clinique La Prairie, CH-1815 Clarens,
handelnd für sich und die ihm gehörenden Gesellschaften, insbesondere
**Clinique La Prairie S.A.**, CH-1815 Clarens
**CT Holding**, CH-1796 Courgevaux

nachstehend als „AM" bezeichnet

alle vertreten durch Herrn RA Pierre Schifferli, Schifferli Rechtsanwälte,
8 Avenue Jules-Crosnier, CH-1206 Genève

sowie

Herrn RA Dr. Alexander Faber, Neupert & Partner, Dufourstrasse 58,
CH-8702 Zollikon-Zürich

### Präambel

Armin Mattli ist Alleinaktionär der CT-Holding, welche ihrerseits Alleinaktionärin der Clini-que La Prairie SA ist. Die Clinique La Prairie SA betreibt in Montreux die Clinique La Prairie.

Die Laboratoires La Prairie SA und die La Prairie Inc. beschäftigen sich insbesondere mit Herstellung und dem Vertrieb von kosmetischen Produkten unter der Marke "La Prairie". Im Jahre 1982 hat Armin Mattli diesen Geschäftsbetrieb an La Prairie Inc. verkauft. Die Zusammenarbeit der Parteien wurde im Laufe der Zeit (nacheinander) durch verschiede-ne Vereinbarungen geregelt, zuletzt mit einer Vereinbarung vom 2. Juni 1995.

Zwischen den Parteien sind über die Auslegung und die Anwendung der Vereinbarung vom 2. Juni 1995 einige Differenzen aufgetaucht, insbesondere über den Begriff "Klinik", über die Befugnis von AM, Kosmetika zu vertreiben, über die Frage, ob LP unter der

1/6

Marke "La Prairie" Dienstleistungen erbringen und wer unter der Marke "La Prairie" Mineralwasser vertreiben darf. Gestützt auf Ziffer 10.2 der Vereinbarung vom 2. Juni 1995 haben die Parteien die Streitigkeit einem Ad hoc Schiedsgericht mit Sitz in Zürich unterbreitet; am 5. November 2007 haben AM Klage und am 19. Dezember 2007 LP Widerklage beim Schiedsgericht anhängig gemacht.

Mit diesem Anhang zur Vereinbarung vom 2. Juni 1995 („der Anhang") sollen die aufgetauchten Differenzen bereinigt und das Ad hoc Schiedsgerichtsverfahren und weitere Verfahren erledigt werden. Dabei soll die Vereinbarung vom 2. Juni 1995 bestehen bleiben.

## I.    GEGENSTAND DIESES ANHANGS

1.    Gegenstand der vorliegenden Anhangs bildet die Klärung strittiger Punkte zwischen den Parteien sowie die Erledigung der zwischen den Parteien und weiteren Beteiligten hängigen Verfahren.

## II.    MARKENRECHTE

2.    In Ergänzung zur Vereinbarung vom 2. Juni 1995 verpflichten sich die Parteien, die Marken, welche Gegenstand der Vereinbarung vom 2. Juni 1995 bilden, aufrecht zu erhalten, insbesondere auf eigene Kosten sämtliche für die Aufrechterhaltung des Schutzes notwendigen Handlungen vorzunehmen, wie etwa den Gebrauch der Marken - soweit vertraglich vereinbart -, Schutz und Abwehr vor Verletzungen, Erneuerungen der Markenregistrierungen usw. Im Weiteren verpflichten sich die Parteien gegenseitig, allfällig erforderliche Zustimmungserklärungen abzugeben.

## III.    MARKENABGRENZUNG

### A.    Gebrauch der Marken durch AM

3.    AM ist exklusiv berechtigt, die Marken „Clinique La Prairie" und „CLP" (als Wortmarken, Schriftzug oder Wortbildmarken) für die folgenden *Waren* zu gebrauchen: "Nahrungsmittel, Diätnahrungsmittel und Nahrungsmittelzusätze".

- Als *Nahrungsmittel* gelten alle zu Ess- oder Trinkzwecken hergestellte oder verwendete Substanzen, inklusive nicht-alkoholische Getränke, wie Säfte, Fruchtsäfte, Mineralwasser, etc.

4.    AM ist exklusiv berechtigt, die Marken „Clinique La Prairie" und „CLP" (als Wortmarken, Schriftzug oder Wortbildmarken) für die folgenden *Dienstleistungen* zu gebrauchen:

2/6

8. April 2008

- Für den Betrieb von Medizinischen und/oder Gesundheitskliniken und der darin erbrachten Dienstleistungen.

  Für die Zwecke des vorliegenden Anhangs gilt als *Klinik* jede medizinische und/oder gesundheitsfördernde Einrichtung, die effektiv unter ärztlicher Aufsicht bzw. Verantwortung steht, wo ärztliche Dienstleistungen erbracht werden, und die in der Werbung und nach aussen als Medizinische und/oder Gesundheitsklinik auftritt.

  Als Medizinische und/oder Gesundheitskliniken im Sinne dieses Anhangs gelten auch Zentren und Residenzen, die mit einer Einrichtung für ärztliche Dienstleistungen verbunden werden und deren Attraktivität insbesondere auf einer Medizinischen und/oder Gesundheitsklinik im Sinne dieses Anhangs beruht. Dafür dürfen auch die Wortbildmarken „Clinique La Prairie" und „CLP" verwendet und durch AM (insbesondere heutige Klasse 36) registriert werden.

5.   AM ist nicht berechtigt, die Marken "Clinique La Prairie" und "CLP" oder damit verwechselbare, ähnliche oder anlehnende Marken für andere Waren, als die in Ziff. 3 vorstehend erwähnten und andere Dienstleistungen, als die in Ziff. 4 vorstehend erwähnten zu verwenden.

6.   AM ist insbesondere nicht berechtigt, unter den Marken "Clinique La Prairie", "CLP" oder damit verwechselbaren, ähnlichen oder anlehnenden Marken Kosmetika zu vertreiben. AM darf jedoch Kosmetika unter andern Marken vertreiben, soweit dabei nicht direkt oder indirekt ein Bezug auf die Clinique La Prairie (insbesondere auf deren Heritage) sowie die obgenannten Marken hergestellt wird. Dies gilt insbesondere auch für die unter der Marke "Swiss Perfection" vertriebenen Produkte. Diese Beschränkung gilt auch für Werbung, Warenpräsentation und PR-Aktivitäten.

  AM verpflichtet sich, den Inhalt der Website „www.swissperfection.com" diesem Anhang anzupassen.

  AM darf jedoch in Medizinischen und/oder Gesundheitskliniken gemäss Ziff. 4 auf die Anwendung von Produkten anderer Marken, insbesondere „Swiss Perfection", hinweisen und diese dort auch verkaufen. Der Hinweis auf die von solchen Kliniken verwendeten Produkte darf auch in Prospekten sowie auf den Websites dieser Kliniken enthalten sein.

7.   AM ist nicht berechtigt, die Marke „La Prairie" zu verwenden. Dies gilt auch für damit verwechselbare, ähnliche oder anlehnende Marken unter Vorbehalt der Ziff. 3 und 4 vorstehend.

**B.   Gebrauch der Marken durch LP**

8.   LP ist exklusiv berechtigt, die Marke "La Prairie" (als Wortmarken, Schriftzug oder Wortbildmarken) für alle anderen als die in Ziff. 3 genannten *Waren* zu gebrauchen, insbesondere auch:

3/6

8. April 2008

- für "Kosmetische Produkte, wie Haut- und Körperpflegeprodukte, Parfümerien, dekorative Kosmetik", etc.

9. LP ist exklusiv berechtigt, die Marke "La Prairie" (als Wortmarken, Schriftzug oder Wortbildmarken) für alle andern als die in Ziff. 4 genannten *Dienstleistungen* zu gebrauchen, insbesondere auch:

   - für den Vertrieb, Verkauf und Anwendungen mit kosmetischen Produkten, insbesondere Haut- und Körperpflegeprodukten, Parfümerien, dekorative Kosmetik.

   - für den Betrieb von Schönheitssalons und Einrichtungen, in denen Dienstleistungen angeboten werden, wobei solche Einrichtungen nicht den Charakter einer Medizinischen und Gesundheitsklinik in dem in Ziff. 4 umschriebenen Sinn haben dürfen.

     Dass in einer Einrichtung neben kosmetischen Anwendungen auch ärztliche Dienstleistungen durch Dritte (nicht mit LP verbunden) erbracht werden, schliesst die Berechtigung von LP nicht aus, selbst oder durch Vierte in dieser Einrichtung kosmetische Anwendungen unter der Marke „La Prairie" (als Wortmarke, Schriftzug oder Wortbildmarke) zu erbringen, sofern diese Einrichtung als Ganzes nicht unter der Marke „La Prairie" betrieben wird oder erscheint. Die betreffenden ärztlichen Dienstleistungen dürfen nicht unter Bezug auf die Marke „La Prairie" erbracht oder mit ihr in Verbindung gebracht werden.

     Allein dadurch, dass die Gesetzgebung die Verfügbarkeit eines Arztes vorschreibt, wird die Einrichtung nicht zur Medizinischen und/oder Gesundheitsklinik. Jedenfalls dürfen von LP keine ärztlichen Dienstleistungen erbracht und kein Bezug zwischen den ärztlichen Dienstleistungen und der Marke „La Prairie" hergestellt werden.

10. LP ist nicht berechtigt, die Marke "La Prairie" oder damit verwechselbare, ähnliche oder anlehnende Marken für Waren gemäss Ziff. 3 vorstehend sowie für Dienstleistungen gemäss Ziff. 4 vorstehend zu verwenden.

11. LP ist nicht berechtigt, die Marken "Clinique La Prairie" und "CLP" zu verwenden. Die Ziff. 4.2 der Vereinbarung vom 2. Juni 1995 bleibt vorbehalten.

## IV.   GEGENSEITIGER RÜCKZUG ALLER PENDENTEN VERFAHREN

12. AM verpflichtet sich, innert zehn (10) Tagen nach gegenseitiger Unterzeichnung dieses Anhangs die Klage in den USA gegen Ritz Carlton zurück zu ziehen.

13. AM verpflichtet sich, innert zehn (10) Tagen nach gegenseitiger Unterzeichnung dieses Anhangs im Internet sämtliche Veröffentlichungen über LP und ihre Vertragspartner, insbesondere über Ritz Carlton, auf eigene Kosten zu entfernen.

14. LP verpflichtet sich, innert zehn (10) Tagen nach gegenseitiger Unterzeichnung dieses Anhangs die Widersprüche in den Widerspruchsverfahren Nr. 08974-08976, 08977-08978 und 9273 beim Eidgenössischen Institut für Geistiges Eigentum in Bern IGE zurück zu ziehen.

4/6

15.  Mit Unterzeichnung dieses Anhangs gelten die Klage vom 5. November 2007 sowie die Widerklage vom 19. Dezember 2007 als zurückgezogen.

16.  Die Parteien tragen die Gerichtskosten des Schiedsgerichtes in der Höhe von CHF 500'000 (inklusive Barauslagen und Gerichtssekretärin) je zur Hälfte und verzichten gegenseitig auf Prozessentschädigung.

17.  Das Schiedsgericht wird für den nicht durch den Kostenvorschuss gedeckten Betrag separat Rechnung stellen.

## V.  DAUER

18.  Die Dauer dieses Anhangs entspricht Ziffer 6 der Vereinbarung vom 2. Juni 1995.

## VI.  WEITERDAUER DER VEREINBARUNG VON 1995

19.  Durch diesen Anhang wird die Vereinbarung der Parteien vom 2. Juni 1995, mit Ausnahme der Ziffern 5.1 und 5.2, nicht aufgehoben. Bei Widersprüchen geht der vorliegende Anhang zur Vereinbarung vom 2. Juni 1995 letzterer vor.

## VII.  WELTWEITE GELTUNG ALLER RECHTE UND PFLICHTEN

20.  Dieser Anhang gilt weltweit.

## VIII.  GELTUNG DIESES ANHANGS FÜR PARTEIEN UND RECHTSNACHFOLGER

21.  Dieser Anhang zur Vereinbarung ist für die Parteien und für sämtliche mit ihnen verbundenen Gesellschaften sowie für allfällige Rechtsnachfolger der Parteien verbindlich. Die Parteien verpflichten sich, bei einem allfälligen Verkauf der Marken die Verpflichtungen dieses Anhangs auf die Käuferschaft zu übertragen.

## IX.  ANWENDBARES RECHT UND GERICHTSSTAND, SCHIEDSKLAUSEL

22.  Ziffer 10 der Vereinbarung vom 2. Juni 1995 gilt auch für diesen Anhang.

23.  Die Parteien akzeptieren sowohl für die Vereinbarung vom 2. Juni 1995 als auch für diesen Anhang folgende neue Schiedsklausel:

Falls Streitigkeiten, Meinungsverschiedenheiten oder Ansprüche nicht einvernehmlich gelöst werden können, sind sie durch ein Schiedsverfahren gemäss der Internationalen Schiedsordnung der Schweizerischen Handelskammern zu regeln. Es gilt die zur Zeit der Zustellung der Einleitungsanzeige in Kraft stehende Fassung der Schiedsordnung. Das Schiedsgericht besteht aus drei Schiedsrichtern. Der Sitz des Schiedsgerichts ist Zürich. Die Sprache des Schiedsverfahrens ist deutsch.

8. April 2008

Ausgefertigt am 8. April 2008 in Zürich in acht Originalen, wobei ein Original dem Schiedsgericht zugestellt werden soll.


Zürich, 8. April 2008                                    Zürich, 8. April 2008


Laboratoires La Prairie S.A.                            Armin Mattli

La Prairie Inc.                                          Clinique La Prairie S.A.

                                                         CT-Holding SA




RA Dr. Martin Ammann                                    Me. Pierre Schifferli


RA Dr. Marcel Lustenberger                              RA Dr. Alexander Faber