# EXHIBIT 1

TRANSLATION FROM GERMAN:
Ref. 2008114
April 8, 2008

Amendment to the Agreement of June 2, 1995

between

**Laboratoires La Prairie S.A., CH-1815 Clarens**
**La Prairie Inc., 10019 New York, N.Y.**

hereinafter jointly referred to as "LP",

represented by Messrs Dr. Martin Ammann, Esq., and Dr. Marcel Lustenberger, Esq., attorneys-at-law, Lawfirm Meyer Lustenberger, Forchstrasse 452, CH-8032 Zurich,

and

**Armin Mattli**, c/o Clinique La Prairie, CH-1815 Clarens,
acting on his own behalf as well as on behalf of the companies he owns, in particular
**Clinique La Prairie S.A., CH-1815 Clarens,**
**CT Holding, CH-1796 Courgevaux**

hereinafter referred to as **"AM"**

represented by Mr. Pierre Schifferli, Esq., Schifferli Attorneys-at-law,
8, avenue Jules-Crosnier, CH-1206 Geneva

as well as by

Dr. Alexander Faber, Esq., Neupert & Partner, Dufourstrasse 58, CH-8702 Zollikon-Zurich

**Preliminary Statement**

Armin Mattli is the sole shareholder of CT-Holding which, in turn, is the sole shareholder of Clinique La Prairie SA. Clinique La Prairie SA runs the Clinique La Prairie in Montreux.

The Laboratoires La Prairie SA and La Prairie Inc. namely deal with the manufacturing and the marketing of cosmetic products under the brand name "La Prairie". In 1982, Armin Mattli sold this operation to La Prairie Inc. Over the years, the parties' cooperation was defined (successively) within several agreements, the latest of which is dated June 2, 1995.

Some disagreements arose between the parties regarding the interpretation and the application of the Agreement of June 2, 1995, in particular related to the term "Clinic", regarding AM's right to sell Cosmetics, regarding the question whether LP was allowed to provide services under the brand name "La Prairie", and regarding who was allowed to sell mineral water under the brand name "La Prairie".

Certified true and correct translation:
Etienne SOLTERMANN, att

TRANSLATION FROM GERMAN:
Ref 2008114
April 8, 2008

Based on point 10.2 of the Agreement of June 2, 1995, the parties submitted the quarrel to an Ad Hoc Arbitration Court sitting in Zurich. On November 5, 2007 AM filed his claim, and on December 19, 2007 LP filed a counter-claim before the Arbitration Court

The purpose of this Amendment to the Agreement of June 2, 1995 ("The Amendment") is to settle the differences that arose as well as the Ad Hoc Arbitration proceeding and any other proceedings. Thereby, the Agreement of June 2, 1995 shall remain valid.

## I.     SUBJECT OF THIS AMENDMENT

1.     The purpose of this amendment is the settlement of litigious points between the parties as well as the settlement of the proceedings pending between the parties and other participants.

## II.    BRAND RIGHTS

2.     In addition to the Agreement of June 2, 1995, the parties undertake to maintain the brands which are the subject of the Agreement of June 2, 1995 and, in particular, to take the necessary steps, at their own cost, to maintain the protection thereof, such as the use of the brands -- inasmuch as this is contractually agreed -- the protection and the defense against violations, renewals of brand registrations, etc. Furthermore, the parties undertake to mutually provide to each other any statements of approval that may be necessary.

## III.   DELIMITATION OF BRANDS

## A.    Use of the Brands by AM

3.     AM has the exclusive right to use the brands "Clinique La Prairie" and "CLP" (as name brands, logos or image brands) for the following *products*:  "food products, diet food products and food additives".

   • Shall be considered as *food products* any substances produced or used for the purpose of being eaten or drunk, including non-alcoholic beverages such as juices, fruit-juices, mineral water, etc.

4.     AM is solely authorized to use the brands "Clinique La Prairie" and "CLP" (as name brands, logos or image brands) for the following *services*:

- For the operation of medical and/or health clinics as well as for the services provided therein.

  For the purposes of this Amendment, the term *Clinic* refers to any medical and/or health establishment which is actually placed under medical supervision, respectively responsibility, where medical services are provided, and which, in the advertising and towards third parties, appears as a medical and/or health clinic.

  In the sense of this Amendment, shall also be considered as medical and/or health clinics any centers or residences linked to an establishment providing medical services and whose attractiveness is based namely on the existence of a medical and/or health clinic in the sense of this Amendment. For this purpose, AM may also use and register the word and image brands "Clinique La Prairie" and "CLP" (in particular the present class 36).

5. AM is not entitled to use the brands "Clinique La Prairie" and "CLP" or any similar, comparable brands or any brands that might be confused therewith, for any other products than the ones mentioned under point 3 hereinabove or for any services other than those mentioned under point 4 hereinabove

6. In particular, AM is not entitled to distribute any cosmetic products under the brand names "Clinique La Prairie", "CLP" or under any similar, comparable brands or any brands that might be confused therewith. However, AM may distribute cosmetic products under different brand names, at the condition that by doing so, there is no direct or indirect relation established with the Clinique La Prairie (in particular its heritage) or with the above-mentioned brands. This also applies namely to the products distributed under the brand "Swiss Perfection". This restriction shall also apply to advertisement, product presentations and PR-activities.

   AM undertakes to adapt the contents of the website "www.swissperfection.com" to the terms of this Amendment.

   However, in medical and/or health clinics as described under point 4 hereinabove, AM may refer to the use of products of other brands, such as "Swiss Perfection" and may also sell them on the premises There may be a reference to the products used in such clinics within the brochures and on the websites of these clinics.

7. AM is not entitled to use the brand "La Prairie". This applies to any similar, comparable brands as well as to any brands that might be confused therewith Points 3 and 4 hereinabove remain reserved.

**B.    Use of the Brands by LP**

8. LP has the exclusive right to use the brand "La Prairie" (as name brand, logo or image brand) for all *products* others than those mentioned under point 3 hereinabove, i.e. namely the following:

TRANSLATION FROM GERMAN:
Ref 2008114
April 8, 2008

- for any cosmetic products such as skin and body care products, perfumeries, decorative cosmetics, etc

9. LP has the exclusive right to use the brand "La Prairie" (as name brand, logo or image brand) for all *services* others than the ones mentioned under point 4 hereinabove, i.e., in particular for the following:

- for the distribution, the sale and the application with cosmetic products, in particular skin and body care products, perfumeries, decorative cosmetics.

- for the operation of beauty parlors and establishments where services are provided, whereby such establishments may not present the characteristics of a medical and health clinic in the sens of point 4 hereinabove.

   The fact that in an establishment, aside of cosmetic applications, there are also medical services provided by third parties (not related to LP) does not preclude LP from providing in that establishment, itself or through third parties, any cosmetic applications under the brand name "La Prairie" (as name brand, logo or image brand), as long as the said establishment is not run as a whole nor appears to be run under the brand name "La Prairie". The concerned medical services must not be provided with any reference to the brand "La Prairie" nor put into relation therewith.

   The sole fact that the law may require the availability of a physician does not turn the establishment into a medical and/or health clinic. However, LP may not provide any medical services, and no relation must be established between medical services and the brand "La Prairie".

10. LP is not entitled to use the brand "La Prairie" or any similar, comparable brands or any brands that might be confused therewith for any products as mentioned under point 3 hereinabove or for any services as mentioned under point 4 hereinabove

11. LP is not entitled to use the brands "Clinique La Prairie" and "CLP". Point 4.2 of the Agreement of June 2, 1995 remains reserved.

## IV. RECIPROCAL WITHDRAWAL OF ALL PENDING PROCEEDINGS

12. AM undertakes to withdraw the claim filed in the USA against Ritz Carlton within ten (10) days after the mutual signing of this Amendment.

13 AM undertakes to remove, at his own cost, any and all Internet publications on LP and its contracting partners, in particular Ritz Carlton, within ten (10) days after the mutual signing of this Amendment.

14. LP undertakes to withdraw the oppositions in the opposition proceedings # 08974-08976, 08977-08973 and 8273 pending before the Swiss Federal Institute of Intellectual Property IGE in Bern.

TRANSLATION FROM GERMAN:
Ref 2008114
April 8, 2008

15. With the signature of this Amendment, the claim of November 5, 2007 as well as the counter claim of December 19, 2007 shall be considered to be withdrawn.

16. The parties shall each assume half of the costs of the Arbitration Court, amounting to CHF 500'000.00 (including cash expenses and Court secretary), and they shall mutually waive any claim on procedural damages.

17. The Arbitration Court will separately invoice any amounts not covered by the advance on fees.

## V.   DURATION

18. The duration of this Amendment shall correspond to point 6 of the Agreement of June 2, 1995

## VI.   CONTINUATION OF THE AGREEMENT OF 1995

19. This Amendment does not cancel the Agreement between the parties dated June 2, 1995, except points 5 1 and 5.2 thereof.   If there were any contradictions, this Amendment to the Agreement of June 2, 1995 shall prevail.

## VII.   WORLDWIDE APPLICATION OF ALL RIGHTS AND OBLIGATIONS

20. This Amendment shall apply worldwide.

## VIII.   APPLICABILITY OF THIS AMENDMENT TO THE PARTIES AND THEIR SUCCESSORS IN LAW

21. This Amendment to the Agreement shall be binding upon the parties and for all companies related to the parties as well as upon any possible successors. In the event of any sale of the brands, the parties undertake to transfer the obligations under this Amendment to the buyers.

## IX.   APPLICABLE LAW AND VENUE;   ARBITRATION CLAUSE

22. Point 10 of the Agreement of June 2, 1995 shall also apply to this Amendment.

23. The parties shall accept the following new arbitration clause both for the Agreement of June 2, 1995 and for this Amendment.

Any litigation, disagreements or claims that cannot be settled amicably are to be settled by an arbitration proceeding according to the International Arbitration Rules of the Swiss Chambers of Commerce. The applicable Arbitration Rules shall be the ones in force at the time of the filing of the request for arbitration. The Arbitration Court shall be composed of three Arbitrators. The Arbitration Court shall sit in Zurich The language of the Arbitration proceeding shall be German.

TRANSLATION FROM GERMAN:

Ref. 2008114

April 8, 2008

Established on April 8, 2008 in Zurich in eight master copies, one of which shall be forwarded to the Arbitration Court.

| | |
|---|---|
| Zurich, April 8, 2008 | Zurich, April 8, 2008 |
| Laboratoires La Prairie S.A | Armin Mattli |
| La Prairie Inc. | Clinique La Prairie S.A. |
| | CT-Holding SA |
| (signature) | |
| Dr. Martin Ammann, Esq. | Mr. Pierre Schifferli, Esq. |
| | (signature) |
| Dr. Marcel Lustenberger, Esq | Dr Alexander Faber, Esq. |
| (signature) | (signature) |

Certified true and correct translation:
Etienne SOLTERMANN, att

ETIENNE SOLTERMANN
Avocat
16, rue du Roveray
CH -1207 GENEVE

6/6

# EXHIBIT 2

Final closing resolution (translation from German)
(Abschreibungsbeschluss)
of April 22, 2008

# THE AD-HOC COURT OF ARBITRATION

**Armin Mattli, Clinique La Prairie et al.
vs. Laboratoires La Prairie SA und La Prairie Inc.**

**made up of**

**DR. BERNHARD F. MEYER**
MME - MEYER MÜLLER ECKERT PARTNER
KREUZSTRASSE 42
CH-8008 ZURICH/SWITZERLAND
TEL. +41 44 254 99 66
FAX +41 44 254 99 60
bernhard.meyer@mme-law.ch

**CHAIR**

| | |
|---|---|
| **PROF. DR. PETER NOBEL** | **DR. MAGDA STREULI-YOUSSEF** |
| NOBEL & HUG RECHTSANWÄLTE | WALDER WYSS & PARTNER |
| DUFOURSTRASSE 29 | RECHTSANWÄLTE |
| POSTFACH 1372 | SEEFELDSTRASSE 123 |
| CH-8032 ZÜRICH | CH-8034 ZÜRICH |
| TEL. +41 44 262 22 12 | TEL. +41 44 498 98 98 |
| FAX. +41 44 262 00 92 | FAX. +41 44 498 98 99 |
| peter.nobel@nobel-hug.ch | mstreuli@wwp.ch |
| **COARBITRATOR** | **COARBITRATOR** |

**found on April 22, 2008**

**in re**

| | |
|---|---|
| 1. **Armin Mattli**, CH-1815 Clarens, | 1. **Laboratoires La Prairie S.A.**, CH-1815 Clarens |
| 2. **Clinique La Prairie S.A.**, CH-1815 Clarens | 2. **La Prairie Inc.**, New York, U.S.A. |
| 3. **CT Holding**, CH-2000 Neuchâtel | |
| **Claimants** | **Respondents** |
| all represented by | represented by |
| **Herrn RA Pierre Schifferli**, Schifferli Rechtsanwälte, | **Rechtsanwälte Dr. Martin Ammann und** |
| 8 Avenue Jules-Crosnier, CH-1206 Genève, | **Dr. Marcel Lustenberger**, Meyer Lustenberger |
| Tel. +41 22 839 88 50, Fax +41 22 839 88 51 | Rechtsanwälte, Forchstrasse 452, CH-8032 Zürich, |
| ps@schifferlilaw.ch | Tel. +41 44 396 91 91, Fax +41 44 396 91 92 |
| | martin.ammann@ml-law.ch |
| und | marcel.lustenberger@ml-law.ch |
| **Herrn RA Dr. Alexander Faber**, Neupert & Partner, | |
| Dufourstrasse 58, CH-8702 Zollikon-Zürich, | |
| Tel. +41 44 396 80 80, Fax +41 44 396 80 88 | |
| faber@nplaw.ch | |

concerning

# Claim

### A)    Background of the litigation

The parties in the present arbitration procedure are (1) Armin Mattli, (2) Clinique la Prairie S.A., and (3) CT-Holding S.A. as Claimants, as well as (1) Laboratoires La Prairie S.A. and (2) La Prairie Inc. as Respondents.

The background of the litigation is the delimitation of the areas of activity of the three Claimants and the two Respondents according to an Agreement dated June 2, 1995, in particular also with regard to the use of their respective trademarks.

The parties have proceeded with an ad-hoc arbitral procedure before a court of arbitration of three arbitrators in Zurich, Switzerland. The procedure was carried out in accordance with the provisions of the Zurich Code of Civil Procedure (ZPO).

### B)    Request for legal remedy of the parties

### 1.    Claimants' request for legal remedy

In their bill of indictment dated November 5, 2007 (p. 2 ff.), the Claimants raise the following requests for legal remedy:

> "1.    *That it be ascertained that the respondents have violated the provisions of the Agreement of 2 June 1995 concluded between the parties and are acting unlawfully by doing the following, either themselves or via third parties*
>
> > 1.1    *by using the designation (name, brand, style, trade name or device [enseigne]) "La Prairie" or a designation derived from it or a similar name*
> >
> > > (i)    *providing services or assisting in having such services provided in spas, hotel spas, fitness and wellness centers, beauty parlors or in any other establishment or operation in the area of restitution, maintaining, and fostering health and the physical and mental well-being, including medical and paramedical services, of health consultation,*

*detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

(ii) *(providing) establishments in the area of restitution, maintaining and fostering health and physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming-pools) and rooms for relaxing to consumers, or assisting in having such establishments and equipment provided to them;*

1.2 *by using the device mark of the old Clinique La Prairie in the following or a derivative or similar representation*

**(device mark)**

*or assisting in having it used for*

(i) *services in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or*

(ii) *installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

1.3    by establishing a direct or indirect tie (or by assisting in establishing this tie) between Clinique La Prairie and the following services offered by the respondent or third parties

    (i)    services in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or

    (ii)    installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;

2.    That the respondents be enjoined from offering, either by themselves or through third parties

2.1    by using the designation (name, brand, style, trade name or device [enseigne]) "La Prairie" or a designation derived from it or a similar name

    (i)    (to provide) services or assist in having such services provided in spas, hotel spas, fitness and wellness centers, beauty parlors or in other installations and operations in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or

    (ii)    installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing; or to assist in having them made available;

2.2    from using the device mark of the old Clinique La Prairie in the following or a derivative or
similar representation

(device mark)

or to assist in having it used for

(i)    Services in the area of restitution, maintaining and fostering health and the physical and
mental well-being, inclusive of medical and paramedical services, of health
consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of
any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training,
transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments,
dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin
analysis, water and steam treatments (thalassic therapy, hamams, saunas), image
consulting and similar services, and/or

(ii)    installations made available by the respondents or third parties in the field of restitution,
maintaining and fostering health and the physical and mental well-being such as spas,
wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas,
hamams, swimming pools), beauty parlors and rooms for relaxing;

2.3    of establishing a direct or indirect tie (or being involved in establishing such a tie) between
Clinique La Prairie and the following offered by the respondents or third parties:

(i)    Services offered in the area of restitution, maintaining and fostering health and the
physical and mental well-being, inclusive of medical and paramedical services, of
health consultations, detoxification, purification and weight-reducing cures, of
physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of
mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging
treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic

drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or

(ii)   installations made available in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;

3.   That the respondents be held jointly and severally liable to restitute to claimant 2 the profits in an amount to be set by a court of arbitration, but minimum CHF 10,000,000.00, plus interest at 5% p.a. as of the 06 November 2007 which the respondents as well as the companies being controlled by the same entity as the respondent have achieved overall since 01 July 2002 by their unlawful actions violating the Agreement of 02. June 1995, which are to be ascertained and enjoined in accordance with items 1 and 2 of the request for legal remedy.

### REQUEST FOR ORDERING PRECAUTIONARY MEASURES

4.   That the respondents, for the purposes of precautionary measures, be enjoined for the duration of the present arbitration procedure until its definite, final settlement, and at once from themselves or via third parties

4.1   newly using, or assisting that it be used, the designation (name, brand, style, trade mark or enseigne) "La Prairie" or any designation derived thereof or similar to it for

(i)   Services provided in spas, hotel spas, fitness and wellness centers, beauty parlors, or in any other establishments and operation by the respondents or by third parties in the area of restitution, maintaining and fostering health and the physical and mental well-being, inclusive of medical and paramedical services, of health consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training, transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments, dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water and steam treatments (thalassic therapy, hamams, saunas), image consulting and similar services, and/or

(ii)   installations made available by the respondents or third parties in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;

4.2    to newly use the device mark of the old Clinique La Prairie in the following representation or
       one derived from it or a similar representation


       (device mark)



       or to assist in having it used for


       (i)    services in the area of restitution, maintaining and fostering health and the physical and
              mental well-being, inclusive of medical and paramedical services, of health
              consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of
              any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training,
              transcendental meditation, fitness, yoga, anti-stress, anti-aging treatments,
              dermatology, beauty, anti-cellulite, and UV treatments, lymphatic drainage, skin
              analysis, water and steam treatments (thalassic therapy, hamams, saunas), image
              consulting and similar services, and/or

       (ii)   installations made available by the respondents or third parties in the field of restitution,
              maintaining and fostering health and the physical and mental well-being such as spas,
              wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas,
              hamams, swimming pools), beauty parlors and rooms for relaxing;

4.3    newly establish a direct or indirect link (or to assist in the establishment of such a link)
       between Clinique La Prairie and the following offered by the respondents or third parties

       (i)    services in the area of restitution, maintaining and fostering health and the physical and
              mental well-being, inclusive of medical and paramedical services, of health
              consultations, detoxification, purification and weight-reducing cures, of physiotherapy, of
              any kind of body massage, Shiatsu, Qi gong, acupuncture, of mental training,
              transcendental meditation, fitness, yoga, anti-aging treatments, dermatology, beauty,
              anti-stress, anti-cellulite, and UV treatments, lymphatic drainage, skin analysis, water
              and steam treatments (thalassic therapy, hamams, saunas), image consulting and
              similar services, and/or

(ii) *installations made available (by the respondents or third parties) in the field of restitution, maintaining and fostering health and the physical and mental well-being such as spas, wellness centers, fitness and gymnastic rooms as well as equipment, baths (saunas, hamams, swimming pools), beauty parlors and rooms for relaxing;*

Everything with consequential costs and compensation to be imputed to and with joint and several liability of the respondents."

## 2. Respondents' request for legal remedy

In their statement of defense and counterclaim of December 19, 2007 (p. 3 ff.), the Respondents file the following request for legal remedy

"*1. That the Claimants' request for arbitration be dismissed in full;*
2. *That the Claimants' request for ordering precautionary measures be dismissed in full;*
3. *All with consequential costs and compensation to be imputed to and with joint and several liability of the Claimants;*"

At the same time, the Respondents filed the following counterclaim:

"*1. That the Claimants be forbidden to market and advertise, either themselves or through third parties, any cosmetic products with reference to the trademark LA PRAIRIE, or to any trademark containing the brand name LA PRAIRIE, in particular the trademark CLINIQUE LA PRAIRIE;*

2. *All with consequential costs and compensation to be imputed to and with joint and several liability of the Claimants."*

## C) Chronology of the procedure

*[Remark of the translator:*

*This section only contains the chronology of the procedural steps in the arbitration procedure and is therefore not translated.]*

Final closing resolution                              9 | 11
of April 22, 2008

**D)   Place of jurisdiction / applicable law**

Applicability of the arbitration clause and the competence of the court of arbitration agreed in Art. 10.2 of the Agreement dated June 2, 1995 was not in dispute:

> *"Disputes arising from this Agreement on which the parties are unable to come to terms shall be submitted for an award to a court of arbitration of three with domicile in Zurich, without recourse to formal legal proceedings. The procedure shall be based on the Zurich Code of Civil Procedure."* (The German original is transcribed verbatim, with possible typographical errors.)

(Remainder of the page empty on purpose)

Against this backdrop, and in application of § 188 sections 2 & 3 and § 191 section 2 ZPO,

as well as in agreement with the parties, on today's date the court of arbitration issues the following

## Resolution on the final closing of the arbitral procedure:

1) At the conciliation hearing on April 8, 2008, the parties agreed on and signed the arrangement as described in <u>Enclosure 1</u>. The arrangement is admissible and clear (§ 188 III ZPO).

2) Based on this arrangement, the parties are obliged to meet all obligations defined in <u>Enclosure 1</u> and accepted by them in each case. The present resolution on the final closing of the arbitration procedure, inclusive of the arrangement in <u>Enclosure 1</u>, is final and binding on both parties.

3) Except for the rights and obligations assumed in the arrangement, all claims and counterclaims are to be deemed as withdrawn with prejudice and the arbitral procedure is herewith terminated.

4) The arbitration fees to be paid by the parties are calculated as follows:

| | |
|---|---|
| - arbitration fees (inclusive of cash disbursements and keeper of the records) | CHF 500,000.- |
| - less prepaid cost advances | - <u>CHF 200,000.-</u> |
| - amount not covered by cost advances | <u>CHF 300,000.-</u> |

The parties shall pay the arbitration fee by moieties. The parties are bound to pay in the remaining amount of CHF 150,000.- each within 30 days to the following account:

**Dr. Bernhard F. Meyer**
**Account No. 1.648.130-135**
**Swift Code RAHNCHZZ**
**Clearing No. 8779**
**IBAN Code CH7608779001648130135**
**Caption: AM/LP**
**With Rahn & Bodmer Banquiers**
**Talstrasse 15, 8001 Zurich/Switzerland**

Final closing resolution                          11 | 11
of April 22, 2008

5) Note is taken of the waiver of procedural compensations and also of the fact that each party will bear its own party's costs.

6) This resolution on the formal closing of the arbitration procedure shall initially be transmitted by facsimile transmission to the parties' attorneys and thereafter by mail as follows:

   • to the attorneys of the claimants and the respondents, each in duplicate (one for the attorneys and one for the attention of their clients), by registered mail with return receipt;

   • to the two coarbitrators, by simple first-class mail;

   • to the secretary of the court of arbitration in duplicate for the secretary and to the attention of the chair.

Issued in 8 copies

THE COURT OF ARBITRATION:

_____          _____          _____
DR. MAGDA STREULI-                  DR. BERNHARD. F. MEYER              PROF. DR. RER. PUBL. PETER
YOUSSEF                                    CHAIR                                    NOBEL
COARBITATOR                                                                     COARBITRATOR

# EXHIBIT 3

**Registered**

RA Dr. Bernhard F. Meyer
MME – Meyer Müller Eckert Partner

RA Prof. Dr. Peter Nobel
Nobel & Hug Rechtsanwälte

RA Dr. Magda Streuli-Youssef
Walder Wyss & Partner

Zurich, 23. May 2008

**Dr. iur. Martin Ammann, lic.oec., LL.M.**      **Dr. Marcel Lustenberger**
martin.ammann@ml-law.ch                          marcel.lustenberger@ml-law.ch

**Ad-hoc arbitral procedure/**
**Request for explanatory statement**

Dear Chief Arbiter:
Dear Arbitrators:

In the matter

**Armin Mattli**
Rosenhof 4, 8808 Pfäffikon
                                   **Claimant 1 and cross-respondent 1**

**Clinique La Prairie S. A.**
Rue du Lac 101, 1815 Clarens
                                   **Claimant 2 and cross-respondent 2**

**CT-Holding SA**
Route Principale 25, 1796 Courgevaux
                                   **Claimant 3 and cross-respondent 3**

versus

**Laboratoires La Prairie S.A.**
c/o Fiduciaire Winkler, rue du Lac 101, 1815 Clarens
                                   **Respondent 1 and cross-claimant 1**

**La Prairie Inc.**
680 Fifth Avenue, New York, N.Y. 10019-5429, USA

**Respondent 2 and cross-claimant 2**

together hereinafter the Respondents

both represented by Dr. Martin Ammann and Dr. Marcel Lustenberger, attorneys-at-law, Meyer Lustenberger Rechtsanwälte, Forchstrasse 452, P.O. box 1432, 8032 Zürich

concerning

**Ascertainment, injunction, claim**

we refer to the resolution for formal closing of the arbitration procedure, dated April 22, 2008 and file in the name and on behalf of the Respondents the following

**Request for an explanatory statement**

*"The court of arbitration is asked to explain to the parties whether the commitment by AM pursuant to item 12 of the Arrangement of April 8, 2008 as well as item 2 of the Resolution for Formal Closing of the Arbitration Procedure covers the withdrawal of the case in the USA against Ritz Carlton "with prejudice" or "without prejudice"."*

## I.     Formal aspects

1       The arbitral procedure mentioned at the outset and thus also the decision referring to the formal closing of this arbitral procedure was subject to the Code of Civil Procedure of the Canton of Zurich according to item 10.2 of the relevant Agreement between the parties. It is thus to be assumed that the Zurich Rules of Civil Procedure are also applicable to the present request for an explanatory statement. The Zurich Code of Civil Procedure itself does not contain any provision regarding such explanation. However, reference may be made to § 162 ff of the Zurich Constitution of Courts Act in this context, which foresees the explanation of a decision upon request without time limit.

2       According to item 23 of the Appendix to the Arrangement concluded on the occasion of the conciliation hearing of April 8, 2008, differences of opinion between the parties are now newly governed by the International Rules of Arbitration of the Swiss Chambers of Commerce. Pursuant to Art. 35 of said Rules of Arbitration, any of the parties may request an interpretation of the arbitration award within 30 days after receipt of the arbitration award. The formal closing resolution of the court of arbitration was received by the Respondents on April 23, 2008. Thus, the 30-day respite would also be observed by today's petition if said Rules of Arbitration were to be applied.

## II.     Facts and circumstances

3     To date, that is, far past the expiration of the relevant 10-day delay according to item 12 of the Arrangement, the Claimants have not withdrawn the lawsuit in the USA against Ritz Carlton mentioned therein.

4     The Claimants are of the opinion that the above-mentioned withdrawal of the case is to take place "without prejudice" whereas the Respondents are of the opinion that this withdrawal of the action has to be "with prejudice."

EO:     E-mail correspondence between the attorneys of the parties
dated May 13, 2008                                                            Enclosure [1]

E-mail from Carolina Campeas on behalf of attorney Pierre
Schifferli to attorney Martin Ammann, dated May 14, 2008          Enclosure [2]

5     This is proof of the interest in the present request for an explanatory statement.

## III.     Legal aspects

6     In item 3 of the above-mentioned formal closing resolution, the court of arbitration expressly stated that "...all suits and countersuits are to be deemed as withdrawn with prejudice ..."

7     The court thereby expressed the understanding - which is probably the only reasonably acceptable one - that all pending lawsuits which had been a topic in the conciliation proceedings, were to be finally settled and that, in particular, it was to be assured that the same actions cannot be filed again.

8     Without doubt, this was also the parties' understanding with regard to the above-mentioned action by the Claimants in the USA against Ritz Carlton.

9     In this context it is to be emphasized that said action is the subject of a procedure in which the Respondents themselves are also involved as intervening party.

10     According to item 9 of the 1995 Agreement, Swiss procedural law is to be applied in the present case, not US law. Consequently, a withdrawal of the action has the result – with few exceptions which are not applicable in the present case – that a withdrawn action cannot be filed anew (cf. Guldener Max, Schweizer Zivilprozessrecht, Zürich 1979, p. 401).

11     In particular pursuant to § 107 item 3 of the Zurich Code of Civil Procedure, which is relevant in the present case, (cf. Rz. 1, above), an action cannot be withdrawn "under the proviso of a renewed filing ..." as a matter of principle.

---

13, 2008

12    In other words, the obligation of withdrawing an action also implies the obligation of withdrawing such action "with prejudice," i.e. without any proviso of filing such action again ("without prejudice").

13    It is of great importance for the business relationship between the Respondents and Ritz Carlton that the lawsuit filed by the Claimants in the USA against Ritz Carlton be definitely withdrawn once and for all.

14    The Court of Arbitration is therefore petitioned to clarify this issue in its explanatory statement.

With best regards, respectfully yours

MEYER LUSTENBERGER

Martin Ammann                    Marcel Lustenberger

Enclosures as per separate listing of enclosures

In duplicate to RA Dr. Bernhard F. Meyer
One original each to RA Prof. Dr. Peter Nobel and RA Dr. Magda Streuli-Youssef

cc     RA Pierre Schifferli and RA Dr. Alexander Faber

4 | 4

# EXHIBIT 4

Resolution of June 24, 2008

# THE AD-HOC COURT OF ARBITRATION

### Armin Mattil, Clinique La Prairie et al.
### vs. Laboratoires La Prairie SA und La Prairie Inc.

**made up of**

DR. BERNHARD F. MEYER
MME - MEYER MÜLLER ECKERT PARTNER
KREUZSTRASSE 42
CH-8008 ZURICH/SWITZERLAND
TEL. +41 44 254 99 66
FAX +41 44 254 99 60
bernhard.meyer@mme-law.ch

**CHAIR**

| PROF. DR. PETER NOBEL | DR. MAGDA STREULI-YOUSSEF |
|---|---|
| NOBEL & HUG RECHTSANWÄLTE | WALDER WYSS & PARTNER |
| DUFOURSTRASSE 29 | RECHTSANWÄLTE |
| POSTFACH 1372 | SEEFELDSTRASSE 123 |
| CH-8032 ZÜRICH | CH-8034 ZÜRICH |
| TEL. +41 44 262 22 12 | TEL. +41 44 498 98 98 |
| FAX. +41 44 262 00 92 | FAX. +41 44 498 98 99 |
| peter.nobel@nobel-hug.ch | mstreuli@wwp.ch |

**COARBITRATOR**                    **COARBITRATOR**

**found on June 24, 2008**

**in re**

| 1. Armin Mattil, CH-1815 Clarens, | 1. Laboratoires La Prairie S.A., CH-1815 Clarens |
| 2. Clinique La Prairie S.A., CH-1815 Clarens | 2. La Prairie Inc., New York, U.S.A. |
| 3. CT Holding, CH-2000 Neuchâtel | |

**Claimants**                    **Respondents**

all represented by                    represented by

Herrn RA Pierre Schifferli, Schifferli Rechtsanwälte,    Rechtsanwälte Dr. Martin Ammann und
8 Avenue Jules-Crosnier, CH-1206 Genève,    Dr. Marcel Lustenberger, Meyer Lustenberger
Tel. +41 22 839 86 50, Fax +41 22 839 86 51    Rechtsanwälte, Forchstrasse 452, CH-8032 Zürich,
ps@schifferlilaw.ch    Tel. +41 44 396 91 91, Fax +41 44 396 91 92
martin.ammann@ml-law.ch
and    marcel.lustenberger@ml-law.ch

Herrn RA Dr. Alexander Faber, Neupert & Partner,
Dufourstrasse 56, CH-8702 Zollikon-Zürich,
Tel. +41 44 396 60 60, Fax +41 44 396 60 66
faber@nplaw.ch

Case 1:07-cv-04038-PAC    Document 41-2    Filed 06/30/2008    Page 3 of 6

Resolution of June 24, 2008                    2 | 5

concerning

## Claim

### I.    Background

A.    On April 21, 2008, the Court of Arbitration issued a final closing resolution in this procedure after the parties had reached an arrangement with the assistance of the Court of Arbitration.

B.    On May 23, 2008, the Respondents filed the following request for an explanatory statement:

*"The court of arbitration is asked to explain to the parties whether the commitment by AM pursuant to Item 12 of the Arrangement of April 8, 2008 as well as Item 2 of the Resolution for Formal Closing of the Arbitration Procedure covers the withdrawal of the case in the USA against Ritz Carlton "with prejudice" or "without prejudice"."*

C.    In their request for an explanatory statement, the Respondents used as an argument that it had been the understanding of the parties that all pending procedures which had been a topic in the conciliation proceedings were to be finally settled. That this was also the understanding of the parties with regard to the lawsuit in the USA against the Ritz Carlton mentioned (in this context). That therefore only a withdrawal of the action with prejudice was to be applicable in the USA.

D.    By a facsimile transmission dated May 30, 2008, the Court of Arbitration set a deadline to June 19, 2008 for the Claimants to give their opinion concerning the Respondents' request for an explanatory statement.

E.    With a memorial dated June 12, 2008, the Claimants issued their provisional opinion concerning the request for an explanatory statement, with the following pleas:

*"1. That the Respondents' request for an explanation be dismissed as inadmissible;*

*2. Secondarily, in case the Court of Arbitration were to consider the request for an explanatory statement as formally admissible, to grant the Claimants an appropriate, additional respite to substantively comment on the Respondents' request for an explanation."*

F.    The Claimants argue that the Federal Rules of Civil Procedure (Rule 41) are applicable to the proceedings in the USA against the Ritz Carlton Hotel Company, LLC. Under said Rules, a unilateral withdrawal of the case (voluntary dismissal) is allegedly no longer

Resolution of June 24, 2008                    3 | 5

possible because the requirements (for such withdrawal) were missing. The remaining possibilities were (a) a petition for dismissal signed by all parties, or (b) a court decision, issued at the request of the claimant, both of which were without prejudice in the normal case. According to their statement, in the present case the settlement of the US procedure based on an arrangement between the parties had failed because the Respondents' attorneys insisted on a settlement with prejudice. That this was inacceptable for the Claimants because they would then be exposed to the arbitrariness of the Ritz Carlton Hotel Company. According to them, the attorney of Claimant 2 had therefore filed a request with the District Court of the Southern District of New York on May 30, 2008, for a settlement without prejudice by withdrawing the action. That this case was still pending at present, and that the issue was still, as before, whether the withdrawal was to be with prejudice or without prejudice. Furthermore, the Claimants argued that the request for an explanatory statement was inadmissible per se since the Zurich Code of Civil Procedure does not contain any provision concerning the explanation of an arrangement. The wording of GVG (Gerichtsverfassungsgesetz = Constitution of Courts Act) § 162 that such explanation was admissible only with regard to a decision issued by a court. An arrangement, even though reached with the involvement of a court, was not accessible to an explanation.

## II.    Applicable law

G.    The disagreement between the parties is the result of the Ad Hoc Arbitration Proceedings in Zurich. The subject of the request for an explanatory statement by the Respondents is Item 12 of the arrangement dated April 8, 2008 as well as Item 2 of the final closing resolution dated April 21, 2008. The present disagreement is therefore not a new arbitral proceeding initiated after closing the objective procedure. In accordance with the original Agreement between the parties, the Zurich Code of Civil Procedure continues to be applicable to the Respondents' request for an explanatory statement (cf. final closing resolution of April 21, 2008, lit. D), and not the International Rules of Arbitration of the Swiss Chambers of Commerce pursuant to Item 23 of the Arrangement (Appendix dated April 8, 2008 to the parties' Agreement dated June 2, 1995). The (US) Federal Rules of Civil Procedure are totally independent of the present procedure and are consequently not to be taken into account.

## III.    Considerations of the Court of Arbitration

H.    As correctly set forth by the Claimants, settlement decisions, which terminate a procedure solely on the basis of the parties' declaration (acknowledgement, withdrawal, arrangement),

Case 1:07-cv-04038-PAC    Document 41-2    Filed 06/30/2008    Page 5 of 6

Resolution of June 24, 2008                    4 | 5

are not accessible to an explanation. Explanations of this kind are not judicial instructions but party declarations.[1]

I.  In the present case, it is not the wording of the final closing resolution by the Court of Arbitration which is at issue, but item 12 of the Arrangement (Appendix dated April 8, 2008 to the Agreement of June 2, 1995), which represents an agreement between the parties. Consequently, the Respondents' request cannot be honored.

J.  But even if the request could be handled materially, this would not change the result in any way: According to § 162 GVG, an unclear or contradictory decision will be explained by the Court upon request or of the court's own motion (ex officio). Thus, not just any expression by the Court is accessible to an explanation, but only an unclear or contradictory decision.

K.  In its final closing resolution of April 21, 2008, the Court of Arbitration – in keeping with intense, previous negotiation discussions – bound the parties to fulfilling all obligations assumed by them in the arrangement. One of them, in particular, was the obligation of both parties to withdraw all pending lawsuits, including the action against Ritz Carlton in the USA (item 12 of the Arrangement). That this meant, in the opinion of the Court of Arbitration, a withdrawal with prejudice, exclusively, is evident from item 3 of the final closing resolution, which states with blunt clarity: "...all claims and counterclaims are to be deemed as withdrawn with prejudice..." (item 3 of the final closing resolution).

L.  Consequently, the wording of the final closing resolution (decision by the Court of Arbitration) of April 22, 2008 is neither unclear nor contradictory. It needs no further elucidation.

M.  That the withdrawal of a lawsuit has a precluding effect (with prejudice) also corresponds to the Zurich Rules of Civil Procedure applied by the Court of Arbitration. According to them, a withdrawal of an action is always with prejudice. This also results from § 107 section 3 as well as from § 191 section 2 of the Code of Civil Procedure (ZPO). According to § 107 section 3 ZPO the renewed filing of an action that was withdrawn after having achieved litispendence is excluded as a matter of principle.[2]

N.  Against this backdrop, the Court of Arbitration issues the following

# Resolution:

---

[1] Hauser / Schweri, Kommentar zum zürcherischen Gerichtsverfassungsgesetz, Zürich 2002, § 162 N. 12.

[2] Frank / Sträuli / Messmer, Kommentar zur zürcherischen Zivilprozessordnung, 3rd edition, Zurich 1997, § 107 ZPO, N 18; Guldener, Schweizerisches Zivilprozessrecht, 3rd edition, Zurich 1979, p. 237.

Case 1:07-cv-04038-PAC    Document 41-2    Filed 06/30/2008    Page 6 of 6

Resolution of June 24, 2008                    5 | 5

a.       The Respondents' request for an explanatory statement is non-suited.

b.       Granting an additional respite to the Claimants for their material comment is unnecessary.

c.       No additional costs are to be invoiced for this resolution.

d.       This resolution is passed jointly by the arbitrators, but signed only by the chairperson on behalf of the coarbitrators.

e.       This resolution is initially transmitted to the attorneys of the parties by facsimile and then sent by mail as follows:

- to the attorneys of the Claimants and the Respondents each in duplicate (for themselves and to the attention of their clients), by registered mail against return receipt;
- to the two coarbitrators, by simple first class mail;
- to the Secretary of the Court of Arbitration, in duplicate, for the Secretary and to the attention of the Chair.

Executed in 8 original copies

ON BEHALF OF THE COURT OF ARBITRATION:

(signed)

DR. BERNHARD F. MEYER
CHAIR