UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CLINIQUE LA PRAIRIE, S.A.,                         :
                                                   :
                              Plaintiff,           :        07 Civ. 4038 (PAC)
                                                   :
            - against -                            :
                                                   :        OPINION & ORDER
THE RITZ CARLTON HOTEL                             :
COMPANY, L.L.C.,                                   :
                                                   :
                              Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 27, 2009

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Clinique La Prairie, S.A. ("CLP") brings this action against Defendant Ritz Carlton Hotel Company, LLC ("Ritz Carlton") alleging injury to business reputation, unfair competition, and trademark infringement. CLP's claims stem from Ritz Carlton's operation of a spa called "La Prairie" at its hotel on Central Park South in Manhattan. On October 18, 2007, this Court allowed a third party, La Prairie, Inc. ("La Prairie"), to intervene as a defendant pursuant to Rule 24 of the Federal Rules of Civil Procedure.

There is a parallel Swiss arbitration proceeding between CLP and La Prairie. La Prairie claims that the arbitration panel's April 2008 decision settled the issue of each party's rights to use the name "La Prairie" and obliged CLP to terminate the instant proceedings against Ritz Carlton.

The Court is faced with four outstanding motions. For the reasons that follow, La Prairie's motion to stay the present proceedings pending clarification of the Swiss arbitration decision is DENIED as moot, and its motion to confirm the arbitration decision is GRANTED. Ritz Carlton's motion to dismiss the present action with prejudice is GRANTED, while CLP's motion to dismiss without prejudice is DENIED.

**BACKGROUND**

I.     **Facts**

Plaintiff CLP is a Swiss company offering spa, health, and fitness services. (Complaint ("Compl.") ¶¶ 1, 13.) In 1982, Defendant La Prairie, known at the time as Aviatrix Corporation, acquired the "La Prairie" cosmetics line from CLP. (Id. ¶ 20.) According to La Prairie, under the terms of this deal, La Prairie was entitled to use the "La Prairie" name in connection with cosmetics and beauty products and services, while CLP reserved the right to use the name "Clinique La Prairie" in connection with its medical and health spas, food stuffs, and supplements. (La Prairie Mem. of Law in Support of Motion to Stay and Intervene ("La Prairie Mem. to Intervene") at 2.)

Over the following decade, CLP and La Prairie disagreed over the use of the "La Prairie" name. Consequently, in 1995, they entered into a clarifying agreement (the "1995 Agreement") that included a stipulation that future disputes would be resolved by arbitration in Zurich, Switzerland. (See Decl. of Lynne Florio ("Florio Decl.") Ex. A (1995 Agreement).)

Defendant Ritz Carlton operates a La Prairie-licensed spa under the name "La Prairie" at the Ritz Carlton Hotel on Central Park South in Manhattan. (Compl. ¶¶ 23-24.) CLP complains that Ritz Carlton's use of the "La Prairie" name is unlawful because it creates the illusion of an affiliation between CLP's spa services and the Ritz Carlton spa. (Id. ¶ 25.) CLP further argues that the Ritz Carlton spa's promotional materials wrongfully trade on CLP's name, international reputation, and signature use of cellular spa therapies, leading to confusion on the part of customers who wrongly believe that CLP is responsible for La Prairie products. (Id. at ¶¶ 26-32, 37-39.)

On November 21, 2005, CLP sent a cease-and-desist letter to La Prairie, complaining, among other things, about the use of the "La Prairie" name in connection with the Ritz Carlton

spa.  (Florio Decl. Ex. B.)  CLP wrote that La Prairie's licensing of spas constituted a breach of the 1995 Agreement.  (Id.)  La Prairie responded in a letter dated December 7, 2005, arguing that nothing in the 1995 Agreement prevented La Prairie from being "present and active in spas." (Id. Ex. C.)

## II.    Procedural History

The procedural history relevant to the present motions is somewhat complicated, involving three parties in two separate proceedings on two continents.

CLP commenced the instant matter against Ritz Carlton in New York State Supreme Court on April 11, 2007.  Ritz Carlton removed the matter to this Court on May 23, 2007.

On May 25, 2007, CLP initiated arbitration proceedings against La Prairie in Switzerland.  Consequently, on June 27, 2007, La Prairie moved to intervene in the instant matter and asked the Court to stay proceedings pending the outcome of the Swiss arbitration. The Court permitted La Prairie to intervene and stayed the proceedings on October 18, 2007.

On April 8, 2008, following the conclusion of the Swiss arbitration but before the arbitration panel had issued its final written decision, CLP and La Prairie agreed to an appendix to their 1995 Agreement (the "2008 Appendix").  (Decl. of Benito Delfin ("Delfin Decl.") Ex. D.)  The 2008 Appendix further clarified the parties' rights with respect to the use of the "La Prairie" name; in particular, it held that La Prairie could use the "La Prairie" name "for operations of beauty salons and facilities" that were not of a medical nature.  (See id. Ex. D Section III ¶ 9.)  The spa at the Ritz Carlton Hotel in Manhattan is not of a medical nature.  CLP also agreed "to withdraw the action against Ritz Carlton in the United States within ten (10) days of the mutual signing of this Appendix."  (Id. Ex. D Section IV ¶ 12.)

On April 22, 2008, the Swiss arbitration panel issued its final decision (the "Swiss Arbitration Decision"), which, in terms of its substantive findings, incorporated the 2008 Appendix.  (Id. Ex. E at 10 ¶¶ 1-2.)  The Swiss Arbitration Decision further indicated that "[e]xcept for the rights and obligations assumed in the [2008 Appendix], all claims and counterclaims are deemed as withdrawn with prejudice and the arbitral procedure is herewith terminated."  (Id. Ex. E at 10 ¶ 3.)

On May 23, 2008, La Prairie wrote to the Swiss arbitration panel requesting clarification on the issue of whether the 2008 Appendix and Swiss Arbitration Decision mandated dismissal of the instant matter against Ritz Carlton either with prejudice or without prejudice.  (Id. Ex. F.) On June 2, 2008, before the Swiss arbitration panel responded to La Prairie's letter, CLP moved this Court to dismiss the present action without prejudice pursuant to Rule 41(a)(2).  On June 23, 2008, La Prairie opposed CLP's motion and filed its own motion to stay proceedings until the Swiss arbitration panel responded to the May 23, 2008 letter.

The Swiss arbitration panel responded to La Prairie's letter on June 24, 2008.  (CLP Reply Mem. in Support of Motion to Dismiss Without Prejudice ("CLP Reply Mem. MTD") Ex. 1.)  Although the panel determined that it could not issue a binding interpretation of the language at issue in the 2008 Appendix, it also held that it did not need to because the 2008 Appendix and Swiss Arbitration Decision, taken together, clearly required that CLP's action against Ritz Carlton be withdrawn with prejudice.  (Id. Ex. 1 ¶¶ H-K.)  Moreover, the panel held that under the Zurich Rules of Civil Procedure, which governed the arbitration, "withdrawal of an action is always with prejudice."  (Id. Ex. 1 ¶ M.)[1]

---

[1] On June 24, 2008, CLP asked the Swiss arbitration panel to reconsider its letter of June 24, 2008.  The panel denied CLP's request on July 8, 2008.  (Decl. of Martin Ammann ("Ammann Decl.") Ex. G.)

On August 25, 2008, La Prairie petitioned this Court to confirm the Swiss Arbitration Decision.  On the same day, Ritz Carlton moved to dismiss the instant matter with prejudice.

This Court is left with four motions: (1) La Prairie's June 19, 2008 motion to stay proceedings; (2) CLP's June 2, 2008 motion to dismiss without prejudice; (3) La Prairie's August 25, 2008 motion to confirm the Swiss Arbitration Decision; and (4) Ritz Carlton's August 25, 2008 motion to dismiss with prejudice.  The Court addresses each motion in turn.

## DISCUSSION

### IV.    La Prairie's Motion to Stay Proceedings

La Prairie's motion to stay proceedings pending the Swiss arbitration panel's response to La Prairie's May 23, 2008 letter is moot.  La Prairie filed its motion on June 23, 2008.  One day later, the Swiss arbitration panel held that the 2008 Appendix and Swiss Arbitration Decision required dismissal of the instant matter with prejudice.  For obvious reasons, the motion is denied as moot.

### V.    La Prairie's Motion to Confirm the Arbitration Award

#### A.    Standard for Confirming International Arbitration Awards

The parties do not dispute that judicial confirmation of international arbitration awards is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08, which incorporates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention").  See Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007); see also Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc., 198 F.3d 88, 92 n.4 (2d Cir. 1999) ("The Convention…shall be enforced in United States courts in accordance with" Section 201 of the FAA.).  The Convention:

> appl[ies] to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the

> recognition and enforcement of such awards are sought, and
> arising out of differences between persons, whether physical or
> legal.  It shall also apply to arbitral awards not considered as
> domestic awards in the State where their recognition and
> enforcement are sought.

Convention art. I(1).

A domestic court plays only a limited role in reviewing foreign arbitral awards under the Convention.  It must "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207. Article V(1) of the Convention enumerates five grounds for refusing to enforce a foreign arbitral award:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the
> said agreement is not valid under the law . . .; or
>
> (b) The party against whom the award is invoked was not given proper
> notice of the appointment of the arbitrator or of the arbitration proceedings
> . . .; or
>
> (c) The award deals with a difference not contemplated by or not falling
> within the terms of the submission to arbitration, or it contains decisions
> on matters beyond the scope of the submission to arbitration . . .; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was
> not in accordance with the agreement of the parties . . .; or
>
> (e) The award has not yet become binding on the parties, or has been set
> aside or suspended by a competent authority of the country in which, or
> under the law of which, that award was made.

Convention art. V(1).  A domestic court may also refuse to enforce a foreign award pursuant to Article V(2) of the Convention if "[t]he subject matter of the difference is not capable of settlement by arbitration," or "recognition or enforcement of the award would be contrary to the public policy" of the state in which enforcement or recognition is sought.  Convention art. V(2).

There is "considerable caselaw holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award." Yusuf Ahmen Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) (citations omitted). "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under [the Convention] applies." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005). "[T]he showing required to avoid summary confirmance is high." Yusuf Ahmen Alghanim, 126 F.3d at 23 (citing Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)).

**B.      CLP's Opposition to Confirmation of the Swiss Arbitration Decision**

CLP's opposition to confirmation of the Swiss Arbitration Decision is not grounded in the FAA, the Convention, or any other source of legal authority. Instead, it purports to rely upon "basic logical reasoning" to refute La Prairie's argument that confirmation is appropriate. (See CLP Mem. of Law in Opp. to Motion to Confirm ("CLP Opp.") at 4.) CLP argues that the phrase "except for the rights and obligations assumed" in the 2008 Appendix creates a carve-out exception to the Swiss Arbitration Decision requiring the dismissal of "claims and counterclaims" with prejudice. (Id. at 6-7.) It claims that the withdrawal of the instant action against Ritz Carlton, as required by paragraph 12 of the 2008 Appendix, is an "obligation" rather than a "claim or counterclaim" and therefore is not covered by the language of the Swiss Arbitration Decision. (Id.)

As a threshold matter, CLP makes no showing that this argument, even if true, constitutes one of the seven grounds for refusing to enforce a foreign arbitral award under Article V of the Convention. CLP appears to be conflating an argument in favor of dismissal without prejudice

with its arguments in opposition to confirmation.  In any event, the argument is wholly without merit.  Taken together, the language of the 2008 Appendix and the Swiss Arbitration Decision clearly contemplates settlement of the underlying disputes between CLP and La Prairie and, consequently, dismissal of the action against Ritz Carlton with prejudice.

CLP further claims that the Swiss Arbitration Decision was not a final award, and therefore should not be confirmed, because it was merely a procedural order to terminate arbitration proceedings rather than an award adjudicated on the merits.  The Second Circuit has held that "an arbitration award, to be final, must resolve all the issues submitted to arbitration, and…must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication."  Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998).  Prior to the issuance of the Swiss Arbitration Decision, the parties agreed to the 2008 Appendix.  The Swiss Arbitration Decision specifically indicates that "the parties are obliged to meet all obligations defined in [the 2008 Appendix] and accepted by them in each case.  The present resolution on the final closing of the arbitration procedure, inclusive of the arrangement in [the 2008 Appendix], is final and binding on both parties."  (Delfin Decl. Ex. E at 10 ¶ 2 (emphasis added).)  In other words, the Swiss Arbitration Decision adopts the 2008 Appendix as its substantive findings and makes them binding.  There are no applicable grounds for setting the arbitration award aside.  The Swiss Arbitration Decision constitutes a final award and accordingly the Court confirms the award.

## VI.    CLP's Motion to Dismiss without Prejudice and Ritz Carlton's Motion to Dismiss with Prejudice

Finally, having confirmed the Swiss Arbitration Decision, the Court must determine whether CLP's claims against Ritz Carlton should be dismissed with or without prejudice.  In

keeping with both the 2008 Appendix and the Swiss Arbitration Decision, the Court finds that the claims must be dismissed with prejudice.

In the 2008 Appendix, CLP undertook "to withdraw the action against Ritz Carlton in the United States within ten (10) days of the mutual signing of this Appendix." (Delfin Decl. Ex. D, Section IV ¶ 12). The Swiss Arbitration Decision incorporated the 2008 Appendix and specifically stated that "all claims and counterclaims are deemed as withdrawn with prejudice and the arbitral procedure is herewith terminated." (Id. Ex. E at 10 ¶ 3.) On June 24, 2008, the arbitration panel indicated that the language of the 2008 Appendix and Swiss Arbitration Decision clearly contemplated withdrawal of the present matter against Ritz Carlton with prejudice. (Id. ¶¶ H-K.) Having confirmed the Swiss Arbitration Decision, the Court accepts its provisions with respect to dismissal of the present matter against Ritz Carlton. (Delfin Decl. Exhibit D ¶¶ 8-9.) Accordingly, the Court grants Ritz Carlton's motion to dismiss with prejudice and denies CLP's motion to dismiss without prejudice.

## CONCLUSION

For the foregoing reasons, La Prairie's motion to stay the proceedings is DISMISSED, La Prairie's motion to confirm the arbitration award is GRANTED, CLP's motion to dismiss without prejudice is DENIED, and Ritz Carlton's motion to dismiss with prejudice is GRANTED. The Clerk of the Court is directed to enter judgment accordingly.

Dated: New York, New York
       March 27, 2009

SO ORDERED

PAUL A. CROTTY
United States District Judge

9